No. 25-_____

# United States Court of Appeals for the Federal Circuit

IN RE MOTOROLA SOLUTIONS, INC.,

*Petitioner.*

On Petition for a Writ of Mandamus to the
Director of the United States Patent and Trademark Office,
Patent Trial and Appeal Board Nos. IPR2024-01205, IPR2024-01206,
IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285,
IPR2024-01313 & IPR2024-01314

## PETITION FOR WRIT OF MANDAMUS

Tharan Gregory Lanier
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3941

John R. Boulé III
JONES DAY
555 South Flower Street,
Fiftieth Floor
Los Angeles, CA 90071
(213) 243-2251

Matthew J. Silveira
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5715

John A. Marlott
JONES DAY
110 North Wacker Drive,
Suite 4800
Chicago, IL 60606
(312) 269-4236

*Counsel for Petitioner Motorola
Solutions, Inc.*

June 23, 2025

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Petitioner Motorola Solutions, Inc. certifies the following:

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Motorola Solutions, Inc.

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None/Not Applicable

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None/Not Applicable

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Jones Day:  Joshua R. Nightingale, Hilda C. Galvan (no longer with firm), Christopher A. Buxton (no longer with firm)

**5. Related Cases** – Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes (separate Notice of Related Case Information filed)

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational

victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None/Not Applicable

Dated:  June 23, 2025

/s/ Matthew J. Silveira
Matthew J. Silveira
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5715

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES .................................................................. v

TABLE OF ABBREVIATIONS .............................................................. x

STATEMENT OF RELATED CASES .................................................. xii

INTRODUCTION .................................................................................. 1

RELIEF SOUGHT ................................................................................. 5

ISSUES PRESENTED ........................................................................... 5

BACKGROUND .................................................................................... 6

    A.    The USPTO's Discretionary Denial Rules ............................ 6

    B.    The Board's Institution Decisions .......................................... 9

    C.    The USPTO's Rescission of Its Discretionary Denial
        Rules ...................................................................................... 11

    D.    The Acting Director's Retroactive Application of the
        Rescission to Vacate the Institution Decisions .................. 12

STANDARD OF REVIEW ................................................................... 17

REASONS WHY THE WRIT SHOULD ISSUE .................................. 17

I.     Motorola Has No Other Adequate Means to Obtain Relief
      from the Agency's Retroactive Rule Change. ............................ 17

II.    Motorola's Right to Relief from the USPTO's Rescission of
      the June 2022 Memo Is Clear and Indisputable. ....................... 20

    A.    The USPTO violated the APA............................................. 20

        1.    The USPTO failed to engage in the notice-and-
            comment rulemaking required to change its
            existing discretionary denial rules. ........................... 21

        2.    The USPTO's retroactive application of the
            Rescission was impermissible.................................... 25

        3.    The USPTO's change in position was unlawful
            regardless of its retroactive effect.............................. 29

# TABLE OF CONTENTS
(continued)

**Page**

B.    The USPTO's retroactive application of the Rescission also violates due process. ..................................................... 33

III.    Mandamus Relief Is Appropriate Given the Nature of the USPTO's Related Statutory and Constitutional Violations. ........ 36

CONCLUSION ...................................................................................... 41

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
370 F. Supp. 3d 1 (D.D.C. 2019) ........................................................ 32

*Apple Inc. v. Stewart*,
No. 24-1864 (Fed. Cir.) ...................................................................... 25

*Apple Inc. v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) .......................................................... 19, 24

*Apple Inc. v. Vidal*,
2024 WL 1382465 (N.D. Cal. Mar. 31, 2024) .................................... 24

*AR Design Innovations LLC v. Ashley Furniture Indus., Inc.*,
2021 WL 6496714 (E.D. Tex. Jan. 11, 2021) ..................................... 10

*Batterton v. Marshall*,
648 F.2d 694 (D.C. Cir. 1980) ............................................................ 23

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) ...................................................................... 26, 27

*Celgene Corp. v. Peter*,
931 F.3d 1342 (Fed. Cir. 2019) ................................................... 18, 40

*Cemex Inc. v. Dep't of the Interior*,
560 F. Supp. 3d 268 (D.D.C. 2021) .................................................... 35

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ........................................................................... 17

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ........................................................................... 22

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*,
464 F.3d 1306 (Fed. Cir. 2006) .......................................................... 21

*Covey v. Hollydale Mobilehome Ests.*,
116 F.3d 830 (9th Cir. 1997) ............................................................. 35

*CropLife Am. v. EPA*,
329 F.3d 876 (D.C. Cir. 2003) .......................................................... 22

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) ............................................................... passim

*CyWee Grp. Ltd. v. Samsung Elecs. Co.*,
2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) ................................... 10

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
591 U.S. 1 (2020) ............................................................................... 31

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) ............................................................................... 40

*FDA v. Wages & White Lion Invs., L.L.C.*,
145 S. Ct. 898 (2025) ........................................................... 29, 30, 32

*Furlong v. Shalala*,
156 F.3d 384 (2d Cir. 1998) ............................................................. 34

*Gen. Elec. Co. v. EPA*,
290 F.3d 377 (D.C. Cir. 2002) ..................................................... 23, 25

*In re Chestek PLLC*,
92 F.4th 1105 (Fed. Cir. 2024) ......................................................... 23

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Palo Alto Networks, Inc.*,
44 F.4th 1369 (Fed. Cir. 2022)................................... 17, 18, 37

*In re Power Integrations, Inc.*,
899 F.3d 1316 (Fed. Cir. 2018) ........................................... 18

*Ingenico Inc. v. IOENGINE, LLC*,
136 F.4th 1354 (Fed. Cir. 2025)......................................... 14

*Kirwa v. U.S. Dep't of Def. (Kirwa I)*,
285 F. Supp. 3d 21 (D.D.C. 2017) ........................... 27, 29, 33

*Kirwa v. U.S. Dep't of Def. (Kirwa II)*,
285 F. Supp. 3d 257 (D.D.C. 2018) .................................... 35

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
127 F.4th 1376 (Fed. Cir. 2025).......................................... 9

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994).......................................................... 36

*Lincoln v. Vigil*,
508 U.S. 182 (1993).......................................................... 26

*Perry v. Sindermann*,
408 U.S. 593 (1972).......................................................... 34

*Pickus v. U.S. Bd. of Parole*,
507 F.2d 1107 (D.C. Cir. 1974) .......................................... 23

*Sec. People, Inc. v. Iancu*,
971 F.3d 1355 (Fed. Cir. 2020) .......................................... 40

# TABLE OF AUTHORITIES
## (continued)

Page

*Tafas v. Dudas,*
    511 F. Supp. 2d 652 (E.D. Va. 2007) ................................................. 27

*Tarpeh-Doe v. United States,*
    904 F.2d 719 (D.C. Cir. 1990) ............................................................ 34

**STATUTES**

5 U.S.C.
    § 552(a)(2)(ii) ........................................................................ 26
    § 552(a)(2)(B) ........................................................................ 25
    § 553 ...................................................................................... 25
    § 553(b) ................................................................................. 21
    § 706(2) ................................................................. 28, 29, 33
    § 706(2)(A) ............................................................................ 26
    § 706(2)(D) ................................................................... 24, 25

28 U.S.C.
    § 1295(a)(4) .......................................................................... 18
    § 1651 .................................................................................... 18
    § 1651(a) ............................................................................... 17

35 U.S.C.
    § 6(a) ..................................................................................... 28
    § 102 ............................................................................... 7, 14
    § 314(d) ........................................................................ passim
    § 315(b) ................................................................................... 9
    § 316(a) ................................................................................. 25
    § 316(a)(2) ............................................................................ 20
    § 316(a)(4) ..................................................................... 20, 37
    § 324(e) ................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

Page

**OTHER AUTHORITIES**

37 C.F.R. § 42.100-42.123 ............................................................... 6

88 Fed. Reg. 24,503 (Apr. 21, 2023) .................................................... 6, 20

89 Fed. Reg. 28,693 (Apr. 19, 2024) .................................................... 6, 20

*Apple Inc. v. Fintiv, Inc.*,
   IPR2020-00019, Paper 11, 2020 WL 2126495, at *2
   (P.T.A.B. Mar. 20, 2020) ............................................................ 7

*HP Inc. v. Universal Connectivity Techs., Inc.*,
   IPR2024-01428, Paper 12, 2025 WL 1040187 (P.T.A.B.
   Apr. 8, 2025) ................................................................... 22, 30

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*,
   IPR2018-00752, Paper 8, 2018 WL 4373643, at *7
   (P.T.A.B. Sept. 12, 2018) ............................................................ 7

*Sotera Wireless, Inc. v. Masimo Corp.*,
   IPR2020-01019, Paper 12, 2020 WL 7049373, at *7
   (P.T.A.B. Dec. 1, 2020) ............................................................ 7

*Patent Office Plans Rulemaking For New PTAB Denial
   Process*, Law360, https://www.law360.com/articles/
   2324147 (Apr. 17, 2025) ............................................................ 6

# TABLE OF ABBREVIATIONS

The following abbreviations are used in this brief.

***Terms***

| Abbreviation | Term |
|---|---|
| Acting Director's Memo | Memorandum from Coke Morgan Stewart, Acting USPTO Director, to PTAB, "Interim Processes for PTAB Workload Management" (March 26, 2025), Appx113-115 |
| APA | Administrative Procedure Act |
| APJ | Administrative Patent Judge |
| Board or PTAB | Patent Trial and Appeal Board |
| Chief APJ's Memo | Memorandum from Scott R. Boalick, Chief APJ, to PTAB, "Guidance on USPTO's Recission of 'Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation'" (March 24, 2025), Appx110-112 |
| IPR | Inter partes review |
| June 2022 Memo | Memorandum from Katherine K. Vidal, USPTO Director, to PTAB, "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation" (June 21, 2022), Appx99-107 |
| Motorola | Motorola Solutions, Inc. |
| Rescission | USPTO Notice, "USPTO Rescinds Memorandum Addressing Discretionary Denial Procedures" (February 28, 2025), Appx108-109 |
| Stellar | Stellar, LLC |

| Abbreviation | Term |
|---|---|
| USPTO | United States Patent and Trademark Office |

### *Citations*

| Abbreviation | Term |
|---|---|
| Appx___ | Appendix at page(s) ___ |

All emphasis is added throughout, and all internal quotation marks and citations omitted, unless otherwise indicated.

## **STATEMENT OF RELATED CASES**

No appeal in or from the same proceedings in the Patent Trial and Appeal Board was previously before this or any other appellate court.

The underlying IPR proceedings are related to *Stellar, LLC v. Motorola Solutions, Inc., et al.*, 4:23-cv-00750-SDJ (E.D. Tex.). The *Stellar* case has been stayed pending the Board's ultimate resolution of the IPR proceedings. An order granting the writ and directing reinstatement of the Board's institution decisions will directly affect the *Stellar* case to the extent that the stay will be maintained pending the Board's ultimate resolution of the IPR proceedings after final written decisions.

## **INTRODUCTION**

This petition challenges the USPTO's rescission of binding rules without notice and its Acting Director's retroactive application of that rule change to vacate the institution of IPRs, all in violation of the APA and the United States Constitution's due-process protections.

On June 21, 2022, the USPTO Director issued a memo establishing that the Board "*will not* discretionarily deny institution of an IPR … in view of parallel district court litigation where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition"—a so-called *Sotera* stipulation. Appx105-106.  The Director stated that this rule—which was phrased in absolute terms ("will not") and admitted of no exceptions—was "issued under the Director's authority to issue binding agency guidance." Appx101.  While the Director acknowledged notice-and-comment rulemaking might be warranted to issue regulations governing the relationship of IPR proceedings to parallel litigation, Appx100, the USPTO still has not adopted any such regulations.  Instead, on February 28, 2025, the USPTO posted a statement—without

explanation or advance notice—that it "rescinded the June 21, 2022, memorandum." Appx108. The Rescission, and the Acting Director's retroactive application of that Rescission to instituted IPR proceedings initiated by Motorola, violates both the APA and the Fifth Amendment's due-process clause.

Motorola is an American innovator that, among other things, designs, develops, and manufactures body-worn and in-car camera systems used to protect the public and federal, state, and local law-enforcement officers. Motorola, in July and August 2024, filed IPR petitions to challenge eight patents asserted against those vital public-safety products in the Eastern District of Texas. Aware that it had one opportunity to pursue IPRs, Motorola challenged all 160 claims of the eight patents in two sets of IPR petitions. And it presented *Sotera* stipulations for each set, altering its litigation strategy. It undertook this significant burden and expense knowing that, under the June 2022 Memo, the petitions would not be discretionarily denied based on the parallel litigation. Indeed, the Board instituted IPRs on the first set of petitions on February 13, 2025, citing the June 2022 Memo. The district court promptly stayed the litigation and later vacated the trial

date, citing both the IPR proceedings and the existence of multiple pending motions, which prevented it from "even begin[ning] to consider a trial date." Appx163. On March 18, 2025, the Board instituted IPRs on the second set. Yet—in March 28 and May 23, 2025 decisions—the Acting Director vacated those institution decisions by retroactively applying the Rescission of the June 2022 Memo.

Both the Rescission and its retroactive application violate the APA. After the Director adopted an absolute, "binding" rule restricting the Board's discretion to deny institution of IPR proceedings based on parallel district-court litigation, the Acting Director could not later simply rescind that rule without notice-and-comment rulemaking. And in no event could the Acting Director apply the Rescission retroactively and disregard petitioners' reliance on the June 2022 Memo without violating the APA's prohibition on arbitrary and capricious actions. Whether the Rescission is properly characterized as a binding, substantive rule (that the USPTO was prohibited from adopting absent notice-and-comment rulemaking) or mere guidance, the Rescission could not be applied retroactively to petitioners like Motorola that already filed IPR petitions in reliance on established rules.

Retroactively applying the Rescission also violated due process. The Director restricted her own discretion when issuing the June 2022 Memo. That restriction vested Motorola with a legitimate entitlement to have its filed IPR petitions considered on the merits upon presenting a *Sotera* stipulation, without the potential for discretionary denial based on parallel litigation. By summarily denying Motorola's right to that consideration, and then disregarding evidence and arguments post-dating the Acting Director's retroactive application of the Rescission, the USPTO violated the due-process clause.

Motorola has a clear and indisputable right to relief on multiple bases. Motorola has no other avenue to obtain that relief, as institution decisions are final and nonappealable. 35 U.S.C. §§ 314(d), 324(e). And mandamus is appropriate given the nature of the interests at stake and the importance of maintaining the integrity of the patent system by ensuring that the USPTO operates within statutory and constitutional constraints. Indeed, the USPTO has engaged in precisely the sort of "shenanigans" that the Supreme Court has deemed worthy of review. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016). This Court should grant Motorola's mandamus petition.

## RELIEF SOUGHT

Motorola respectfully asks the Court to grant this petition for a writ of mandamus and compel the USPTO to (1) vacate its Rescission of the June 2022 Memo and (2) reinstate institution of Motorola's petitions in accordance with the "binding" rule that applied before the Rescission.

## ISSUES PRESENTED

1.    Whether the USPTO violated the APA by:

   a.    rescinding its binding rule prohibiting discretionary denial of IPRs based on parallel litigation without notice-and-comment rulemaking;

   b.    retroactively applying the Rescission; and

   c.    failing to consider reliance interests arising from the June 2022 Memo.

2.    Whether the USPTO violated the Fifth Amendment's due-process clause by retroactively applying the Rescission to vacate the Board's institution decisions, and refusing to consider facts and arguments presented after the Rescission and vacatur.

## BACKGROUND

### A.    The USPTO's Discretionary Denial Rules

Consistent with Congress's direction, the USPTO has adopted

many regulations related to the IPR process. *See* 37 C.F.R.

§ 42.100-42.123. The USPTO has not, however, adopted any

regulations governing the relationship between IPR institution and

parallel litigation. That inaction is not for lack of initiative. Rather,

the USPTO initiated notice-and-comment rulemaking on this subject in

2023, consistent with the Director's intent to do so as stated in the June

2022 Memo, and in 2025 stated its intention to renew that effort. *See*

Appx100; 88 Fed. Reg. 24,503 (Apr. 21, 2023); 89 Fed. Reg. 28,693 (Apr.

19, 2024); Theresa Schliep, *Patent Office Plans Rulemaking For New*

*PTAB Denial Process*, Law360, https://www.law360.com/articles/

2324147 (Apr. 17, 2025).

However, in the June 2022 Memo, the Director exercised her

authority to restrict the Board's discretion to deny IPR institution based

on parallel litigation, building from several precedential decisions

governing the evaluation of IPR petitions in view of parallel district-

court litigation. Three such decisions are central to the June 2022

Memo.

First, in *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, the Board declared that it would treat the "advanced state" of a district court proceeding as a "factor that weighs in favor of denying" a timely IPR petition as a matter of discretion under § 314(a). IPR2018-00752, Paper 8, 2018 WL 4373643, at *7 (P.T.A.B. Sept. 12, 2018). Second, in *Apple Inc. v. Fintiv, Inc.*, the Board stated that it could deny institution of an otherwise meritorious petition based solely on the progress of a related district court action, setting out six factors to guide the Board's exercise of its discretion. IPR2020-00019, Paper 11, 2020 WL 2126495, at *2 (P.T.A.B. Mar. 20, 2020). Third, in *Sotera Wireless, Inc. v. Masimo Corp.*, the Board held that a petitioner's stipulation that it would not pursue in the district court litigation "the specific grounds in the instituted inter partes review petition, or on any other ground that was raised or could have been reasonably raised in an IPR (i.e., any ground that could be raised under §§ 102 or 103 on the basis of prior art patents or printed publications) … mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions." IPR2020-01019, Paper 12, 2020 WL 7049373, at *7 (P.T.A.B. Dec. 1, 2020).

After receiving "822 comments from a wide range of stakeholders" following a request for comments on the Board's approach to exercising its discretion to institute, the Director issued the June 2022 Memo. Appx100. Titled "Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation," Appx99, and adopted under the Director's authority to issue "binding agency guidance," the memo restricts the Board's exercise of discretion when accounting for the relationship between IPRs and parallel litigation. Appx101 (citing 35 U.S.C. § 3(a)(2)(A)).

While the Director noted that the USPTO planned notice-and-comment rulemaking, the June 2022 Memo established rules that would govern "[i]n the meantime." Appx100. Pertinent here, the Director established an absolute rule that "the PTAB *will not* discretionarily deny institution of an IPR … in view of parallel district court litigation where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition." Appx105. And the Director provided reasons for this rule: it "avoids inconsistent outcomes between the PTAB and the district court and

allows the PTAB to review grounds that the parallel district court litigation will not resolve." Appx105-106.

## B.    The Board's Institution Decisions

On August 21, 2023, Stellar sued Motorola in the Eastern District of Texas for alleged infringement of eight patents. All eight patents are from the same family and Stellar has asserted them against body-worn and in-vehicle camera systems, commonly used by law enforcement.

Stellar asserted 14 of 160 claims from the eight patents. However, because the suit triggered the one-year deadline for Motorola to file IPR petitions, *see* 35 U.S.C. § 315(b), and Stellar could later assert in litigation any claims omitted from the petitions, *see Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1381 (Fed. Cir. 2025), Motorola prepared challenges to all 160 claims. Motorola filed its IPR petitions on July 22, August 9, and August 15, 2024. In compliance with the June 2022 Memo, Motorola expressly notified the Board of its presentment of *Sotera* stipulations. Appx116-118; Appx120-121.

Meanwhile, the litigation proceeded before Judge Sean Jordan. Judge Jordan follows the Eastern District of Texas's "universal practice" to postpone ruling on or deny stay requests when the Board

has not yet acted on IPR petitions. *AR Design Innovations LLC v. Ashley Furniture Indus., Inc.*, 2021 WL 6496714, at *3 (E.D. Tex. Jan. 11, 2021) (Jordan, J.). Therefore, rather than filing a "pointless" stay motion, *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, 2019 WL 11023976, at *5 (E.D. Tex. Feb. 14, 2019), Motorola notified the court that it intended to seek a stay if the Board instituted IPR proceedings. Appx198-200.

On February 13, 2025, the Board instituted IPR on all patents on all claims in the first set of four petitions. Consistent with the June 2022 Memo, which it cited, the Board recognized Motorola's presentation of a *Sotera* stipulation and emphasized that Motorola's IPR "contentions have merit." *E.g.*, Appx68-69, Appx71.[1]

---

[1] The Board's discretionary analysis was substantially identical in each of the four petitions in the first set. *See* Appx67-71; IPR2024-01206, Paper 11, 2025 WL 491664, at *1-3 (P.T.A.B. Feb. 13, 2025); IPR2024-01207, Paper 11, 2025 WL 491897, at *1-3 (P.T.A.B. Feb. 13, 2025); IPR2024-01208, Paper 11, 2025 WL 490697, at *1-3 (P.T.A.B. Feb. 13, 2025). The same is true of its analysis of the four petitions in the second set. *See* Appx27-33; IPR2024-01285, Paper 12, 2025 WL 854643, at *2-5 (P.T.A.B. Mar. 18, 2025); IPR2024-01313, Paper 12, 2025 WL 856701, at *1-3 (P.T.A.B. Mar. 18, 2025); IPR2024-01314, Paper 12, 2025 WL 855944, at *2-3 (P.T.A.B. Mar. 18, 2025). Motorola includes a representative institution decision from each set in the appendix, Appx21-59; Appx60-98, and provides cross-references for the remainder here.

Based on the first set of institution decisions, the district court temporarily stayed the parallel litigation pending the Board's decision on the second set of IPR petitions.  Appx203.  On February 27, Stellar requested Director Review of the Board's institution of IPRs on the first set of petitions.  On March 18, the Board instituted IPRs on all patents on all claims in the second set, *see, e.g.*, Appx33, Appx58 (finding Motorola had "made a strong showing" on the merits "that the prior art references cited in the Petition teach or suggest all limitations of at least one challenged claim"), and Stellar subsequently sought Director Review of those institution decisions.

## C. The USPTO's Rescission of Its Discretionary Denial Rules

On February 28, 2025, in the period between the institution of the two sets of IPRs, and without any advance notice, the USPTO posted a terse statement on its website that it "rescinded the June 21, 2022, memorandum."  Appx108.  In contrast to the June 2022 Memo, the Rescission provided no explanation for the change and simply referred parties to guidance in effect before the June 2022 Memo.  Appx108.

On March 24, the Chief APJ issued a memo stating for the first time that the rescission would retroactively change the rules applicable

to petitions filed before the rescission, including in "any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending." Appx111. And, contrary to the June 2022 Memo's "binding agency guidance," the Chief APJ's Memo stated that "a timely-filed *Sotera* stipulation" would now be "highly relevant, but will not be dispositive by itself. Instead, the Board will consider such a stipulation as part of its holistic analysis under *Fintiv*." Appx111-112.

On March 26, the Acting Director issued a memo with Interim Processes for how "the Director will exercise her discretion on institution of AIA proceedings" prospectively, i.e., "where the deadline for the patent owner to file a preliminary response has not yet passed." Appx113, Appx115. The Acting Director's Memo neither references nor explains the Rescission.

### D.   The Acting Director's Retroactive Application of the Rescission to Vacate the Institution Decisions

On March 28, the Acting Director vacated the Board's institution decisions for the first set of Motorola IPR petitions based on what she described as her application of "the *Fintiv* factors as a whole." Appx19. The Acting Director did not treat Motorola's *Sotera* stipulation as

dispositive, as was required when the petitions were filed and the Board instituted these IPRs. Contrary to the June 2022 Memo, the Acting Director faulted the Board for giving "too much weight to Petitioner's *Sotera* stipulation." Appx17. Yet, before rescission, this precise stipulation was "dispositive by itself," Appx112, because the USPTO's rules provided that the stipulation precluded discretionary denial based on parallel litigation.

On April 28, Motorola requested rehearing of the Acting Director's decision, arguing that applying the rescission to vacate the Board's institution decisions raised APA and due process concerns. Appx147-152. Motorola also emphasized that the Acting Director's decision cannot be squared with the *Fintiv* factors because the district court had stayed the case, vacated the trial date, and stated that "neither the parties nor the Court *can even begin to consider* a trial date" until multiple pending motions are decided. Appx153 (quoting Appx163).

Motorola also offered to present an expanded *Sotera* stipulation, something it had no reason to believe would have been material before the Rescission of the June 2022 Memo that made its *Sotera* stipulation

dispositive. Appx157. In addition to stipulating not to pursue in court published prior art invalidity grounds raised or that could have reasonably been raised in its IPR petitions, consistent with *Sotera*, Motorola would stipulate to not pursue in court *any* grounds of prior-art invalidity. Appx165. That expanded stipulation has a significant effect given this Court's precedent: "IPR estoppel applies only to a petitioner's assertions in district court that the claimed invention is invalid under 35 U.S.C. §§ 102 or 103 because it was patented or described in a printed publication (or would have been obvious only on the basis of prior art patents or printed publications)." *Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1366 (Fed. Cir. 2025). And it squarely addressed the concern the Acting Director first raised in her post-rescission Director Review Decision that a standard *Sotera* stipulation created the potential for duplicative litigation in separate forums when an IPR petitioner in parallel litigation relies on system art combined with prior art presented in the IPR. *See* Appx18-19.

On May 23, the Acting Director issued decisions on both (1) Stellar's request for Director Review of the decisions instituting IPR on Motorola's second set of petitions (Appx8-15); and (2) Motorola's

request for rehearing of the Director Review Decision vacating institution of the first set of petitions (Appx1-7).

On Stellar's request for Director Review, the Acting Director vacated the decisions instituting IPR.  She rejected Motorola's arguments that retroactively applying the Rescission raised APA and due-process concerns, reasoning that the Director Review request meant there was "no final decision on institution" and the parties "had the opportunity to present, and [Motorola] did present, argument in view of the rescission," namely, in Motorola's five-page opposition to that request (five pages being the maximum allotted for such oppositions).  Appx12.  The Acting Director sua sponte supplemented the record on the second set of petitions to acknowledge that the district court had stayed the parallel litigation pending the "ultimate resolution" of the IPR proceedings.  Appx13.  However, she did not acknowledge that the court had also (a) vacated the trial date, and (b) stayed the parallel litigation for the additional reason that the many motions pending in the litigation  prevented the court from "even begin[ning] to consider a trial date."  Appx161, Appx163.  According to the Acting Director, "the efficiency and integrity of the system are best

served by denying institution in these cases for the same reasons as set forth in" her Director Review Decision in the first set of IPR petitions. Appx13.

The Acting Director took a different tack on Motorola's 15-page request for rehearing of the Director Review Decision in the first set of IPR petitions. There, the Acting Director refused to consider Motorola's fulsome retroactivity arguments, even though she had summarily rejected those arguments in the second set of petitions, faulting Motorola for focusing its five-page oppositions to Stellar's first set of Director Review requests on why the institution decisions were correct even in a post-rescission world, rather than arguing that the Acting Director *would* violate the APA and due process *if* she were to *vacate* the Board's institution decisions. *See* Appx5. And she held that the district court's "new stay order" and Motorola's expanded *Sotera* stipulation were not "proper" bases for rehearing even though those facts post-dated her vacatur of the first set of IPR petitions. Appx5. Thus, despite retroactively applying the Rescission to vacate the institution of eight meritorious IPR petitions, the Acting Director refused to consider facts and arguments that did not materialize until

after she issued her decisions vacating those IPRs based on the

Rescission.

## STANDARD OF REVIEW

A writ of mandamus under 28 U.S.C. § 1651(a) is one of the most

important procedural protections available to the judiciary. *Cheney v.*

*U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). It ensures, among

other things, that the executive branch complies with constitutional

limitations on its power. *In re Palo Alto Networks, Inc.*, 44 F.4th 1369,

1374 (Fed. Cir. 2022). To establish entitlement to mandamus relief, a

petitioner must demonstrate that (1) it has "no other adequate means to

attain the relief [it] desires"; (2) its right to relief is "clear and

indisputable"; and (3) "the writ is appropriate under the circumstances."

*Cheney*, 542 U.S. at 380-81. These requirements, while "demanding,

are not insuperable." *Id.* at 381.

## REASONS WHY THE WRIT SHOULD ISSUE

**I.    Motorola Has No Other Adequate Means to Obtain Relief
from the Agency's Retroactive Rule Change.**

The statute governing IPR institution decisions bars appeal. 35

U.S.C. § 314(d). "Given that there is no adequate remedy by way of

direct appeal of decisions denying institution," the Court has

"conclude[d] that judicial review is available in extraordinary circumstances by petition for mandamus in this court under 28 U.S.C. §§ 1295(a)(4), 1651." *Palo Alto Networks*, 44 F.4th at 1374 (cleaned up). Specifically, mandamus petitions filed "in response to action by the agency relating to the non-institution of inter partes review" are proper when they raise "constitutional issues, issues involving questions outside the scope of section 314(d), and actions by the agency beyond its statutory limits." *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2018). Motorola's petition raises all three bases for mandamus.

First, Motorola raises a "constitutional challenge" under the due-process clause. *Palo Alto Networks*, 44 F.4th at 1374. The Supreme Court has expressly recognized "a due process problem" as the type of error justifying review. *Cuozzo*, 579 U.S. at 275; *see also Celgene Corp. v. Peter*, 931 F.3d 1342, 1357 n.11 (Fed. Cir. 2019) (recognizing that discretionary denial of institution implicating constitutional retroactivity argument "would be unreviewable but for the possibility of mandamus").

Second, Motorola's APA and due-process challenges present questions outside the scope of § 314(d). Motorola does not "challenge

the content of the Director's institution instructions." *Apple Inc. v.*
*Vidal*, 63 F.4th 1, 11 (Fed. Cir. 2023).  Rather, Motorola challenges the
process by which the USPTO (1) rescinded "binding" rules; and
(2) retroactively applied that Rescission to instituted IPR proceedings.

Third, in *Cuozzo*, the Supreme Court characterized actions
"outside [the USPTO's] statutory limits" as "shenanigans" that "may be
properly reviewable … under the Administrative Procedure Act, which
enables reviewing courts to 'set aside agency action' that is 'contrary to
constitutional right,' 'in excess of statutory jurisdiction,' or 'arbitrary
[and] capricious.'"  579 U.S. at 275.  The USPTO's actions here are not
only contrary to constitutional right and in excess of statutory
authority, but also are arbitrary and capricious.

Moreover, an independent APA lawsuit untethered from the
institution decision would not allow Motorola to obtain meaningful
relief.  Motorola challenges both the Rescission *and* its retroactive
application to instituted IPR petitions.  Both actions were procedurally
improper.  Thus, Motorola is seeking an order compelling the USPTO to
vacate both the Rescission and the Acting Director's orders that

retroactively applied the Rescission to Motorola. Challenging the Rescission alone via an APA action would not remedy that harm.

## II.    Motorola's Right to Relief from the USPTO's Rescission of the June 2022 Memo Is Clear and Indisputable.

The USPTO clearly and indisputably violated multiple APA protections and the constitutional right to procedural due process. Any one of those violations justifies mandamus. Together, they compel the conclusion that mandamus relief is warranted.

### A.    The USPTO violated the APA.

Congress directed the USPTO to "prescribe regulations … setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a)" and "governing … the relationship of [inter partes] review to other proceedings." 35 U.S.C. § 316(a)(2), (4). The USPTO has not completed rulemaking on these subjects despite starting the process. *See, e.g.*, 88 Fed. Reg. 24,503 (Apr. 21, 2023); 89 Fed. Reg. 28,693 (Apr. 19, 2024). The Director did, however, issue the June 2022 Memo as "binding agency guidance" on the "application of *Fintiv* to discretionary institution where there is parallel litigation." Appx100-101. Regardless of how *Fintiv*, the June 2022 Memo, and the Rescission are characterized, the APA does not permit the USPTO to

rescind "binding" rules without notice and comment, and then to retroactively apply the Rescission to instituted IPR proceedings without considering serious reliance interests.

### 1.    The USPTO failed to engage in the notice-and-comment rulemaking required to change its existing discretionary denial rules.

The APA requires all rules to be adopted through notice-and-comment procedures, save for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b).  Regardless of how the agency characterizes it, an agency pronouncement is a "binding," substantive rule if it "effect[s] a change in existing law or policy or … affect[s] individual rights and obligations."  *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*, 464 F.3d 1306, 1317 (Fed. Cir. 2006).  The agency's Rescission did both, and thus required notice-and-comment rulemaking.

First, the Rescission effects a change in existing law or policy. Pre-rescission, the June 2022 Memo—which the Director adopted after receiving more than 800 comments from a wide range of stakeholders and which the Director herself described as "binding"—controlled. Appx100-101.  It created an absolute rule:  presenting a *Sotera*

stipulation was "dispositive by itself" of the Board's ability to discretionarily deny institution based on parallel district-court litigation. Appx111-112. Post-rescission, the opposite is true: a *Sotera* stipulation is deemed merely "relevant." Appx112; *see CropLife Am. v. EPA*, 329 F.3d 876, 883 (D.C. Cir. 2003) (rejecting agency's characterization of directive as mere statement of policy because "[t]he directive clearly establishes a substantive rule declaring that third-party human studies are now deemed immaterial in EPA regulatory decisionmaking"). Indeed, the Board itself has already acknowledged the Rescission as carrying the force of a "change of binding guidance." *E.g.*, *HP Inc. v. Universal Connectivity Techs., Inc.*, IPR2024-01428, Paper 12, 2025 WL 1040187, at *1 (P.T.A.B. Apr. 8, 2025).

Second, the Rescission affects individual rights and obligations. While the Board's acknowledgment that the Rescission "change[d]" a "binding" rule should end the matter, *id.*, the Supreme Court has recognized that an effect on individual rights and obligations "is an important touchstone for distinguishing those rules that may be 'binding' or have the 'force of law,'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979). The Rescission has that effect because it "grant[s]

rights, impose[s] obligations, or produce[s] other significant effects on private interests." *Batterton v. Marshall*, 648 F.2d 694, 701-702 (D.C. Cir. 1980). Indeed, this Court has recognized that binding rules "affect[ing] the substantive ... standards by which [the USPTO] examines a party's application" require notice and comment because they have the requisite effect on rights and interests. *In re Chestek PLLC*, 92 F.4th 1105, 1109 (Fed. Cir. 2024).

The Rescission plainly "alter[s] the substantive standards by which the USPTO evaluates" an IPR petition. *Id.* at 1110. Before the Rescission, petitioners like Motorola had a right to have their IPR petitions evaluated on the merits notwithstanding parallel litigation so long as they presented a *Sotera* stipulation. And the Board was bound by a *Sotera* stipulation, which prohibited it from denying institution based on parallel litigation. That is no longer the case. "This is sufficient to render the [Rescission] a legislative rule." *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 385 (D.C. Cir. 2002) (vacating EPA guidance document because it was promulgated without following the APA's rulemaking requirements); *see also Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1114 (D.C. Cir. 1974) (rejecting argument that notice-and-

comment exemption for "rules of agency procedure and practice" applied because the regulations were "likely to produce parole decisions different from those which alternatives would be likely to produce"). Motorola's private interests in the IPRs—on which it spent hundreds of thousands of dollars in institution fees alone to pursue, plus expert and legal fees—have not just been significantly affected by the rescission of the June 2022 Memo's "binding" rules; those interests have been extinguished by the decision to deny institution due to the Rescission.

This Court has already recognized that a challenge to the Director's failure to adopt IPR "institution instructions through notice-and-comment rulemaking procedures … may be pressed under the APA." *Apple*, 63 F.4th at 14.  In the *Apple* district court's view, the "*NHK/Fintiv* standard" that the Director adopted by designating Board decisions as precedential "is a general statement of policy, rather than a substantive or legislative rule," and thus "the Director was not required to conduct notice-and-comment rule making …, and the lack of such rule making does not render the *NHK-Fintiv* standard unlawful under the APA, 5 U.S.C. § 706(2)(D)." *Apple Inc. v. Vidal*, 2024 WL 1382465, at *13 (N.D. Cal. Mar. 31, 2024).  An appeal of that ruling is now fully

briefed. *See Apple Inc. v. Stewart*, No. 24-1864 (Fed. Cir.). But the Court need not decide *Apple* to find a clear and indisputable right to relief here. Motorola challenges not the adoption of rules through the designation of Board decisions as precedent—the issue in *Apple*—but rather the Rescission of an absolute rule the Director herself deemed "binding." *Gen. Elec. Co.*, 290 F.3d at 383 ("[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding.").

The Rescission is invalid because it was not adopted through notice-and-comment rulemaking. *See* 35 U.S.C. § 316(a); 5 U.S.C. §§ 553, 706(2)(D). That is reason enough to vacate the Rescission and the Acting Director's vacatur of the Board decisions instituting IPRs on Motorola's petitions based on the Rescission.

### 2.    The USPTO's retroactive application of the Rescission was impermissible.

Even if the Rescission were properly characterized as a "statement[] of policy," 5 U.S.C. § 552(a)(2)(B)—and not a substantive rule improperly adopted without notice and comment—the Acting Director's action cannot withstand APA scrutiny. Rather, retroactively

applying the Rescission to Motorola is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and therefore must be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2)(A).

"[G]eneral statements of policy … advise the public *prospectively* of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (cleaned up); *see also* 5 U.S.C. § 552(a)(2)(ii) (a "statement of policy … may be relied on … by an agency against a party … only if … the party has actual and timely notice of the terms thereof"). Thus, the Rescission cannot be applied retroactively, as it was here, when the Acting Director used the Rescission to vacate past institution decisions that accorded with the June 2022 Memo's directions. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 220 (1988) (Scalia, J., concurring) (explaining that, when the Secretary of Health and Human Services adopted a new rule that "prescribed" a formula for Medicare "costs reimbursable while the prior rule was in effect, she changed the *law* retroactively" and could not apply the formula to recoup money Medicare service providers already paid). Unlike policy statements, only substantive rules may ever be applied retroactively, and even they "will not be construed to have

retroactive effect unless their language *requires* this result." *Id.* at 208

("Retroactivity is not favored in the law."); *see also Kirwa v. U.S. Dep't*

*of Def. (Kirwa I)*, 285 F. Supp. 3d 21, 41 (D.D.C. 2017) (a "new rule" that

"effects a substantive change from the agency's prior regulation or

practice" "is impermissibly retroactive").

Had the Rescission been adopted through notice-and-comment

rulemaking, it still could not be given retroactive effect. To start,

"Congress did not expressly grant the PTO" "the power to promulgate

retroactive rules." *Tafas v. Dudas*, 511 F. Supp. 2d 652, 666 (E.D. Va.

2007). And the Rescission itself provides no indication it should be

applied retroactively. It never mentions any retroactive effect. Indeed,

it offers no guidance whatsoever about why the June 2022 Memo was

rescinded, so nothing of import can even be inferred from the

Rescission, much less anything about *retroactive* rescission.

Moreover, while the post hoc guidance provided in the Chief APJ's

Memo states that the Rescission will be applied retroactively, that

memo does not explain why applying the Rescission to pending

petitions—much less to IPR proceedings that had already been

instituted by the Board—was appropriate, let alone *required* by the

Rescission's language.  Meanwhile, the Acting Director's Memo expressly addresses how she will exercise her discretion *going forward*. Regardless of how the USPTO may characterize the Rescission, the Acting Director's retroactive application of the Rescission to Motorola was "not in accordance with law" under § 706(2).

To the extent the Acting Director were to argue that the June 2022 Memo bound only the Board and not the Director herself, the Patent Act provides otherwise.  The Director is part of the Board.  *See* 35 U.S.C. § 6(a).  As the Acting Director's Memo explaining how she "will exercise *her* discretion" going forward recognizes, establishing rules for the exercise of the Board's discretion properly restricts the Director's own discretion under 35 U.S.C. § 314(d).  Appx113.  Indeed, the Acting Director's Memo is intended to "promote consistent application of discretionary considerations in the institution of AIA proceedings," Appx115, which prevents the arbitrary and capricious exercise of discretion.  The same was true of the June 2022 Memo. While the Director "retain[ed] the right to deny institution for other reasons," Appx107, that did not give her the right to deny institution based on the existence of parallel litigation once a petitioner presented

a *Sotera* stipulation, as Motorola did here. Rescission of that "binding agency guidance" cannot be applied retroactively without violating the APA. *See Kirwa I*, 285 F. Supp. 3d at 41 (applying 5 U.S.C. § 706(2) to hold that if a "new rule 'effects a substantive change from the agency's prior regulation or practice,' then it is impermissibly retroactive" (quoting *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 14 (D.C. Cir. 2011))).

### 3. The USPTO's change in position was unlawful regardless of its retroactive effect.

The Acting Director's application of the Rescission to Motorola was unlawful for still another reason—she failed to consider serious reliance interests under the change-in-position doctrine. And that failure renders the Acting Director's action arbitrary and capricious regardless of whether she could retroactively apply the Rescission.

Under the change-in-position doctrine, agencies may not change their existing policies unless "they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 917 (2025) (cleaned up). Because there is no dispute that the "agency changed existing policy," the sole question presented by the doctrine here is: "Did the agency display awareness

that it is changing position and offer good reasons for the new policy," while being "cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account"? *Id.* at 918 (cleaned up).

The change-in-position doctrine applies "to an agency's divergence from a position articulated in nonbinding guidance documents," including in situations "when an agency altered a position first stated in a policy statement," where "the policy statement instituted 'a standardized review process' that 'effectively' resembled adjudication." *Id.* at 918 n.5 (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 18 (2020)). Even if the Court were to view the June 2022 Memo as "nonbinding"—contrary to the Director's own characterization—the June 2022 Memo provided (in unqualified terms) that "the PTAB will not discretionarily deny institution of an IPR ... in view of parallel district court litigation where a petitioner" presents a *Sotera* stipulation. Appx105-106. The USPTO then rescinded that rule after the Board had instituted IPR on the first set of Motorola's petitions. There could be no clearer indication of a change in position.

*See HP*, 2025 WL 1040187, at *1 (Board describing rescission as a "change of binding guidance").

To be sure, the USPTO acknowledged it was changing policy—after all, it "rescinded" the June 2022 Memo. Appx108. And, a month later, the Chief APJ's Memo offered "additional guidance" regarding the change. Appx110. But the Chief APJ's Memo simply explained the *effect* of the Rescission, including that it would apply "to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending," and that *Sotera* stipulations would no longer be "dispositive." Appx111-112. That memo did not offer any *reasons* for the change, much less reasons for applying the new guidance to petitions filed and IPRs instituted before the Rescission.

In any event, offering reasons for the new policy still would not have been enough. "When an agency changes course, as [the USPTO] did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Regents*, 591 U.S. at 30-31 (cleaned up). The June 2022 Memo did not just lead Motorola and other IPR petitioners "to believe" that the

presentation of a *Sotera* stipulation would preclude a discretionary denial based on parallel litigation. *Wages & White Lion*, 145 S. Ct. at 927. It expressly and unequivocally provided that "the PTAB *will not deny institution* of an IPR … under *Fintiv* … where a petitioner" presents a *Sotera* stipulation. Appx107. Moreover, the June 2022 Memo stated that the USPTO planned to engage in notice-and-comment rulemaking to address parallel litigation, with the June 2022 Memo's rules controlling "[i]n the meantime." Appx100.

Neither the Rescission itself nor the Chief APJ's Memo reflects any consideration of the reliance interests engendered by the June 2022 Memo. And the Acting Director's March 26, 2025 memo simply explains how the Director "will exercise her discretion" *prospectively*. Appx113. The Rescission cannot reasonably be applied to parties that prepared and filed petitions at considerable expense, presented *Sotera* stipulations, and altered their litigation strategies in accordance with those stipulations, all in reliance on the June 2022 Memo and before the Rescission. *See Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 33 (D.D.C. 2019) (granting summary judgment for plaintiffs claiming

that application of changed standards to deny relief was arbitrary and
capricious under 5 U.S.C. § 706(2)).

### B. The USPTO's retroactive application of the Rescission also violates due process.

The APA is not the only bar to retroactive application of the
Rescission: "'constitutional protections sounding in due process and
equal protection, as embodied in our longstanding traditions and
precedents addressing retroactivity in the law'" may also "constrain
retroactive application." *Kirwa I*, 285 F. Supp. 3d at 41 (quoting *De Niz
Robles v. Lynch*, 803 F.3d 1165, 1171–72 (10th Cir. 2015) (Gorsuch, J.)).
Here, applying Rescission of the June 2022 Memo retroactively violates
Motorola's due-process rights.

The June 2022 Memo prohibited the Board from discretionarily
denying review based on the existence of parallel litigation so long as
the petitioner presented a *Sotera* stipulation.  That "binding agency
guidance" did not optionally *permit* consideration of a *Sotera*
stipulation; it provided in absolute terms that "the PTAB *will not deny
institution* of an IPR … under *Fintiv* … where a petitioner stipulates
not to pursue in a parallel district court proceeding the same grounds as
in the petition or any grounds that could have reasonably been raised in

the petition." Appx107. As the USPTO recognized after rescinding the June 2022 Memo, a *Sotera* stipulation had been "dispositive by itself" pre-rescission. Appx111-112.

The June 2022 Memo thus "restrict[ed] the exercise of official discretion." *Tarpeh-Doe v. United States*, 904 F.2d 719, 722 (D.C. Cir. 1990). That restriction gave Motorola "a legitimate entitlement" to consideration of its petitions on the merits without risking discretionary denial based on parallel district court proceedings. *Id.* Put otherwise, the "explicitly mandatory language" adopted by the Director in the June 2022 Memo created a constitutionally protected interest. *Id.* at 723; *accord Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit."); *Furlong v. Shalala*, 156 F.3d 384, 395 (2d Cir. 1998) ("[P]roperty interests may be established through such diverse sources as unwritten common law and informal institutional policies and practices.").

The Rescission "as applied to" Motorola "summarily denie[d]" Motorola the right to consideration of its IPR petitions on the merits,

without the possibility of discretionary denial based on parallel litigation. *Kirwa v. U.S. Dep't of Def. (Kirwa II)*, 285 F. Supp. 3d 257, 274 (D.D.C. 2018).  And that was contrary to the June 2022 Memo that governed, and on which Motorola reasonably relied, when it filed the petitions and the Board instituted the first set of IPRs.  This denial of Motorola's rights "implicate[s] due-process concerns."  *Id.*; *see also Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 281 (D.D.C. 2021) ("When an agency's prior policy engendered serious reliance interests, due process considerations of fair notice and fundamental fairness demand a reasonable explanation for the agency's change in position." (cleaned up)).

Moreover, because the June 2022 Memo restricted the Director's discretion, too—consistent with the Acting Director's later recognition that the Director's own guidance controls how she "will exercise *her* discretion," Appx113—"all events necessary to establish" Motorola's rights had occurred before the Acting Director ruled on Stellar's request for Director Review, thereby precluding the retroactive application of the Rescission.  *Covey v. Hollydale Mobilehome Ests.*, 116 F.3d 830, 837-38 (9th Cir. 1997).  By applying the Rescission retroactively to deny

institution, the Acting Director clearly and indisputably violated

Motorola's due-process rights.

Finally, the Acting Director's refusal to consider the full context of

the district court's stay order and vacatur of the trial date, or Motorola's

proffering of an expanded *Sotera* stipulation after the Acting Director

first disapproved of a standard *Sotera* stipulation post-rescission,

underscores the extent of the due-process violation.  "Elementary

considerations of fairness dictate that individuals should have an

opportunity to know what the law is and to conform their conduct

accordingly."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

The Acting Director fundamentally denied Motorola that opportunity.

## III.   Mandamus Relief Is Appropriate Given the Nature of the USPTO's Related Statutory and Constitutional Violations.

Not only does Motorola have a clear and indisputable right to

relief that it has no other avenue to obtain, but mandamus relief is

"appropriate" for two reasons previously recognized by both this Court

and the Supreme Court.  First, by issuing and rescinding "binding

agency guidance" arbitrarily, the USPTO has unfairly subjected IPR

petitioners targeted by parallel litigation to ever changing rules—at

great expense to petitioners exercising their rights to challenge patents

under a procedure Congress designed to promote efficiency in the patent system. That amounts to the type of "shenanigans" that the Supreme Court has cautioned should not evade review. *Cuozzo*, 579 U.S. at 275. Second, while the Court can avoid a constitutional issue if it grants relief on APA grounds, this Court has expressly acknowledged that mandamus review is "appropriate" where a "constitutional challenge" has been presented. *See Palo Alto Networks*, 44 F.4th at 1374. Mandamus is appropriate to ensure that the USPTO's violation of statutory and constitutional rights does not go unremedied.

"Congress designed the America Invents Act (AIA) post-grant proceedings 'to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.'" Appx99 (quoting H.R. Rep. No. 112-98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69, and citing S. Rep. No. 110-259, at 20 (2008)). The actions challenged here do the opposite. By failing to adopt regulations to govern "the relationship of [inter partes] review to other proceedings," 35 U.S.C. § 316(a)(4), and instead relying on "binding" rules that the Acting Director claims she may unilaterally change at will, the USPTO has undermined the efficiency of

the patent system and created unnecessary and counterproductive litigation costs. And applying those changes retroactively to a narrow band of petitioners in cases "in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending," Appx111, subjects those petitioners—including Motorola—to an injury that far exceeds the generalized injury sustained by prospective petitioners.

Moreover, the Rescission has the effect of putting IPR petitioners facing parallel litigation in "rocket docket" courts between a rock and a hard place. Here, for example, Motorola was sued for infringement of eight different patents that collectively included 160 different patent claims. The Eastern District of Texas has a practice of setting early trial dates and refusing to stay litigation based on IPR proceedings until review is granted. By the time Motorola could file IPR petitions challenging all 160 claims of the 8 patents—Motorola's one shot at IPR—the litigation had naturally progressed in line with the early trial date, despite the district court deciding no substantive motions by the time of the Board's institution decisions. Nonetheless, the Acting Director relied on her misapprehension of the "advanced" state of the

district-court proceedings to vacate the institution decisions and instead

discretionarily deny the petitions.  Between the post-Rescission

USPTO's rules and the Eastern District of Texas's longstanding

practices, IPR petitioners facing parallel litigation in that district are

effectively being denied the IPR statutes' protections.

The circumstances are particularly extreme here.  At the time

Motorola requested rehearing of the Acting Director's decision in the

first set of IPRs, the district court had stayed the litigation, removed

the trial date from its calendar, and emphasized that "neither the

parties nor the Court can even begin to consider a trial date" before the

Court ruled on multiple pending motions—including a motion to amend

infringement contentions, two motions for summary judgment, and

multiple *Daubert* motions.  Appx163.  Thus, under the Acting Director's

rationale, it does not even matter if trial is near.  The district court's

setting of an *initial* trial date before the deadline for a final written

decision is enough for the Board to discretionarily deny a petitioner the

benefits of the IPR statutes.  Remedying the unjust consequences of the

USPTO's actions as applied to Motorola—which had obtained

institution decisions on all eight of its meritorious IPR petitions before

the Rescission—is an appropriate use of the Court's mandamus
authority.

Finally, the existence of both constitutional and non-constitutional
grounds for relief, all supported by Supreme Court precedent, makes
mandamus particularly appropriate. Challenges on "due process
grounds" are precisely the sort of constitutional arguments justifying
review of institution decisions notwithstanding § 314(d). *Cuozzo*, 579
U.S. at 275. Indeed Motorola's constitutional argument would be
unreviewable "but for the possibility of mandamus." *Celgene*, 931 F.3d
at 1357 n.11; *cf. Elgin v. Dep't of Treasury*, 567 U.S. 1, 16 n.5 (2012)
(claim that an "agency 'acted in an unconstitutional manner' will
generally be a claim that the statute authorizing the agency action was
unconstitutionally applied," which the agency cannot decide). Granting
mandamus based on Motorola's APA arguments would permit the court
to avoid that constitutional issue. *See Sec. People, Inc. v. Iancu*, 971
F.3d 1355, 1361 n.3 (Fed. Cir. 2020) ("If the appellant succeeds on the
merits of its non-constitutional arguments, the constitutional question
may become moot."). On the other hand, denying mandamus to avoid
reaching the constitutional issue presented here would subject the

public to the unfair actions of the USPTO, ignore IPR petitioners' reliance interests, and undermine Congress's intent in enacting the IPR statutes.

## <u>CONCLUSION</u>

The Court should grant Motorola's petition and direct the USPTO (1) to vacate its Rescission of the June 2022 Memo and (2) to reinstate the Board's institution of Motorola's IPR petitions in accordance with the June 2022 Memo.

Dated: June 23, 2025

Respectfully submitted,

/s/ *Matthew J. Silveira*

| | |
|---|---|
| Tharan Gregory Lanier | Matthew J. Silveira |
| JONES DAY | JONES DAY |
| 1755 Embarcadero Road | 555 California Street, 26th Floor |
| Palo Alto, CA 94303 | San Francisco, CA 9410451 |
| (650) 739-3941 | (415) 875-5715 |
| | |
| John R. Boulé III | John A. Marlott |
| JONES DAY | JONES DAY |
| 555 South Flower Street, | 110 North Wacker Drive, |
| Fiftieth Floor | Suite 4800 |
| Los Angeles, CA 90071 | Chicago, IL 60606 |
| (213) 489-3939 | (312) 269-4236 |

*Counsel for Petitioner Motorola Solutions, Inc.*

## **CERTIFICATE OF COMPLIANCE**

The foregoing filing complies with the relevant type-volume and typeface limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 7,747 words, excluding the portions exempted by rule.

Date: June 23, 2025        Signature: _/s/ Matthew J. Silveira_

Name:        Matthew J. Silveira

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on June 23, 2025.

I further certify that this document was emailed and sent by UPS on June 23, 2025, to lead counsel for Stellar, LLC at the following address:

> Jason M. Shapiro
> DEVLIN LAW FIRM LLC
> 1526 Gilpin Ave.
> Wilmington, DE 19806
> Telephone: (302) 449-9010
> jshapiro@devlinlawfirm.com

I further certify that courtesy copies of this document were emailed to the following additional counsel of record for Stellar, LLC, on June 23, 2025:

> Timothy Devlin, tdevlin@devlinlawfirm.com
> Jim Lennon, jlennon@devlinlawfirm.com

I further certify that this document was sent to efileSO@uspto.gov and also by UPS to the following address on June 23, 2025:

> Office of the Solicitor
> United States Patent and Trademark Office

Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450

Respectfully submitted,

*/s/ Matthew J. Silveira*
Matthew J. Silveira