No. 25-134

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

**In Re Motorola Solutions, Inc.,**
*Petitioner.*

---

On Petition for a Writ of Mandamus to the
Director of the United States Patent and Trademark Office,
Patent Trial and Appeal Board Nos. IPR2024-01205, IPR2024-01206,
IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285,
IPR2024-01313 & IPR2024-01314

---

## STELLAR, LLC'S RESPONSE TO
## PETITION FOR WRIT OF MANDAMUS

---

Timothy E. Grochocinski
C. Austin Ginnings
Nelson Bumgardner Conroy P.C.
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
Telephone: (708) 675-1974
tim@nelbum.com
austin@nelbum.com

*Attorneys for Respondent*
*Stellar, LLC*

Timothy Devlin
James M. Lennon
Robert Kiddie
Nadiia Loizides
Devlin Law Firm, LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com
jlennon@devlinlawfirm.com
rkiddie@devlinlawfirm.com
nloizides@devlinlawfirm.com

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Stellar, LLC certifies the following:

1. The full name of every entity represented by us is:

Stellar, LLC

2. The name of the real party in interest for the entity. Do not list the real party if it is the same as the entity:

Not applicable.

3. All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party or amicus curia represented by us are listed below:

Not applicable.

4. The names of all law firms, and the partners or associates that have not entered an appearance in the appeal, and (a) appeared for the entity in the lower tribunal; or (b) are expected to appear for the entity in this court:

Janson Westmoreland, Nelson Bumgardner Conroy P.C.

Taryn Trusty, Nelson Bumgardner Conroy P.C.

5. Other than the originating case number(s), any related or prior cases in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

*Stellar, LLC v. Motorola Solutions, Inc.*, *et al.*, 4:23-cv-00750-SDJ (E.D. Tex.)

6. All information required by Fed. R. App. P. 26.1(b) and (c) in criminal cases and bankruptcy cases.

Not applicable.

Dated: July 21, 2025

Respectfully submitted,

*/s/ Timothy E. Grochocinski*
Timothy E. Grochocinski
Nelson Bumgardner Conroy P.C.
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
Telephone: (708) 675-1974
tim@nelbum.com

*Counsel for Respondent Stellar, LLC*

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................1

STATEMENT OF JURISDICTION ........................................................3

STATEMENT OF THE CASE............................................................4

    I.    Precedent and Guidance on Discretionary Denial ................................4

    II.    Stellar's Lawsuit Against Motorola and Motorola's IPR Petitions.......8

ARGUMENT ......................................................................14

    I.    Motorola Has No Right to Mandamus Relief ....................................14

        A.    The USPTO's Statutory Discretion and *Mylan* Doom Motorola's Petition....................................................14

        B.    Motorola's Other Avenues of Relief Also Doom Its Petition ...............................................................16

    II.    The Rescission AND BOALICK MEMO ARE a Rule of Procedure, Not a Substantive Rule......................................18

    III.    The Rescission and Boalick Memo Were Not Applied Retroactively Here—In Fact, They Were Not Applied At All ............21

    IV.    The Rescission and Boalick Memo Were Reasoned and Accounted for Reliance Interests ........................................23

    V.    Motorola's DUE PROCESS Arguments Have No Merit....................27

    VI.    Motorola's Practical Arguments Also Have No Merit ........................29

CONCLUSION AND RELIEF SOUGHT .............................................31

# TABLE OF AUTHORITIES

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980)......................................................................15

*Am. Bar As'n v. U.S. Dep't of Educ.*,
  370 F. Supp. 3d 1 (D.D.C. 2019).................................................23

*Apple Inc. v. Fintiv, Inc.*,
  IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020)........................ 4, 5, 24

*Apple Inc. v. Vidal*,
  63 F.4th 1 (Fed. Cir. 2023).........................................................18

*Cemex Inc. v. Dep't of the Interior*,
  560 F. Supp. 3d 268 (D.D.C. 2021)..............................................28

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)...................................................................16

*Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*,
  464 F.3d 1306 (Fed. Cir. 2006)....................................................19

*Covey v. Hollydale Mobilehome Estates*,
  116 F.3d 830 (9th Cir. 1997).......................................................29

*CropLife America v. E.P.A.*,
  329 F.3d 876 (D.C. Cir. 2003) .....................................................20

*Cuozzo Speed Techs., LLC v. Lee*,
  579 U.S. 261 (2016)....................................................... 14, 19, 20

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016)...................................................................26

*Gen. Elec. Co. v. E.P.A.*,
  290 F.3d 377 (D.C. Cir. 2002) .....................................................18

*Harmonic Inc. v. Avid Tech., Inc.*,
    815 F.3d 1356 (Fed. Cir. 2016).......................................................... 14, 19, 20

*In re Palo Alto Networks, Inc.*,
    44 F.4th 1369 (Fed. Cir. 2022)................................................................1, 16

*In re Power Integrations, Inc.*,
    899 F.3d 1316 (Fed. Cir. 2018)................................................................ 15, 16

*Kirwa v. U.S. Dep't of Def.*,
    285 F. Supp. 3d 21 (D.D.C. 2017).....................................................27

*Kirwa v. U.S. Dep't of Def.*,
    285 F. Supp. 3d 257 (D.D.C. 2018)..................................................28

*Matthews v. Eldridge*,
    424 U.S. 319 (1976)..........................................................................28

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
    989 F.3d 1375 (Fed. Cir. 2021).............................................. *passim*

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*,
    IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) ........................................4

*Nokia of Am. Corp. v. Soto*,
    IPR2023-00680, Paper 30 (P.T.A.B. Dec. 3, 2024)........................................5

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015)...........................................................................21

*Qwest Servs. Corp. v. FCC*,
    509 F.3d 531 (D.C. Cir. 2007) ........................................................25

*Samsung Elecs. Co. v. Cal. Inst. of Tech.*,
    IPR2023-00131, Paper 10 (P.T.A.B. May 4, 2023)........................................5

*SAS Inst. Inc. v. Iancu*,
    584 U.S. 357 (2018)......................................................................... 14, 19, 20

*Sotera Wireless, Inc. v. Masimo Corp.*,
    IPR2020-01019, Paper 12 (P.T.A.B. Dec. 1, 2020)............................. 5, 6, 24

*Tarpeh-Doe v. United States*,
904 F.2d 719 (D.C. Cir. 1990) .......................................................27

*Will v. Calvert Fire Ins. Co.*,
437 U.S. 655 (1978).......................................................................15

## Statutes

28 U.S.C. § 1651(a) ............................................................................3

5 U.S.C. § 553(b)(A)..........................................................................21

## Other Authorities

Changes Under Consideration to Discretionary Institution Practices, Petition
Word-Count Limits, and Settlement Practices for America Invents Act
Trial Proceedings Before the Patent Trial and Appeal Board,
88 Fed. Reg. 24503 (Apr. 21, 2023) .........................................7, 25

*FAQs for Interim Processes for PTAB Workload Management*, USPTO.Gov,
*available at* https://www.uspto.gov/patents/ptab/faqs/interim-processes-
workload-management (last visited July 21, 2025)..........................8

H.R. Rep. No. 112-98 (2011), 2011 U.S.C.C.A.N. 67.............................30

Patent Trial and Appeal Board Consolidated Trial Practice Guide (Nov. 2019)
*available at* https://www.uspto.gov/sites/default/files/documents
/tpgnov.pdf?MURL=TrialPracticeGuideConsolidated.................................21

S. Rep. No. 110-259 (2008) ..................................................................30

## Regulations

37 C.F.R. § 42.75(c)(3) .........................................................................29

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

To obtain a writ of mandamus, Motorola bears a "demanding" burden. *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022). Motorola's Petition does not satisfy that burden for a host of reasons.

First, Motorola's Petition is foreclosed by this Court's decision in *Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*, in which this Court concluded that there is "no 'history [or] tradition' that supports a fundamental right to have the Board consider whether to institute one's IPR petition." 989 F.3d 1375, 1382 (Fed. Cir. 2021). And, even aside from *Mylan*'s conclusions, Motorola cannot meet the standard for mandamus relief in light of the USPTO's statutory discretion and the facts here.

Second, Motorola's arguments for mandamus are premised on the idea that the USPTO's rescission of the prior Director's interim guidance on discretionary denial was a substantive rule that required formal notice-and-comment rulemaking. Motorola conveniently ignores that the prior interim guidance it seeks to restore was itself not the product of notice-and-comment rulemaking—a fundamental flaw in Motorola's reasoning. Even setting aside that flaw, the USPTO's new guidance is a procedural rule which does not require notice-and-comment rulemaking. Motorola ignores not only that the prior Director explicitly labeled her guidance as interim, but also ignores that the USPTO's subsequent Advanced Notice of Proposed

Rulemaking contemplated changes to discretionary denial procedure similar to those in the Acting Director's new guidance.

Third, while Motorola complains that the USPTO was required to apply the prior Director's interim guidance and institute its IPR petitions, Motorola ignores that not only did the PTAB panel not apply that prior interim guidance in instituting Motorola's IPR petitions (in decisions that were later vacated by the Acting Director), but Motorola never asked the PTAB to institute its petitions based on that guidance. Motorola's petitions were completely silent as to discretionary denial, and even after Stellar raised discretionary denial arguments in its preliminary responses, Motorola did not ask for a reply brief to address those arguments. Likewise, the Acting Director did not apply the USPTO's new guidance in vacating the PTAB's institution decisions.

Fourth, while this Court need not even consider the issue of Motorola's reliance on the prior Director's interim guidance, consideration of that issue does not change the fact that Motorola's Petition should be denied. The USPTO's new guidance accounted for reliance interests by providing clear lines of demarcation as to which proceedings would be subject to its updated guidance and procedures. And, Motorola cannot genuinely compare the prior Director's interim guidance (which was only in effect for less than three years) to case law in its Petition in which interested parties relied on prior guidance for decades.

Fifth, Motorola's due process arguments have no merit. While Motorola attempts to wedge the facts here into a series of due process cases, each of those attempts misses the mark. The fact that the prior Director's guidance was interim and that the USPTO contemplated changes to that guidance in its Advanced Notice of Proposed Rulemaking undercuts Motorola's due process arguments here. Also, *Mylan* forecloses the idea that denying institution of an IPR constitutes a deprivation of life, liberty, or property sufficient to sustain a due process claim.

Sixth, Motorola's practical arguments also have no merit. Motorola has no explanation for why it delayed filing its IPR petitions for months after Stellar filed suit and Motorola provided invalidity contentions with the same art used in its IPR petitions. And, the Acting Director's decisions put Motorola to task for trying to have two bites at the invalidity apple by pursuing IPR petitions on the same art Motorola combines with system prior art in its invalidity contentions—theories which would not be foreclosed by its proffered stipulations.

Given the facts here, the USPTO's inherent statutory discretion to determine whether to institute IPR petitions, and the plethora of failures in Motorola's legal arguments, this Court should deny Motorola's Petition.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under the All Writs Act "to consider [a] request for mandamus" relief. *Mylan*, 989 F.3d at 1381; *see also* 28 U.S.C. § 1651(a).

## STATEMENT OF THE CASE

## I.     PRECEDENT AND GUIDANCE ON DISCRETIONARY DENIAL

As early as 2018, the PTAB (under Director Iancu) began issuing precedential decisions concerning its discretion to deny institution of IPR petitions.  In *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, the PTAB denied institution of an IPR petition when a parallel district court proceeding "in which Petitioner assert[ed] the same prior art and arguments, [was] nearing its final stages, with expert discovery ending on November 1, 2018, and a 5-day jury trial set to begin on March 25, 2019," whereas the IPR proceeding would not conclude until September 2019.  IPR2018-00752, Paper 8 at 19 (P.T.A.B. Sept. 12, 2018).

The PTAB reiterated and expounded on this issue in its precedential decision in *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020).  In that decision, the PTAB announced the six-factor analysis that has since governed discretionary denial decisions.  Those factors are: (1) whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted; (2) proximity of the court's trial date to the Board's projected statutory deadline for a final written decision; (3) investment in the parallel proceeding by the court and the parties; (4) overlap between issues raised in the petition and in the parallel proceeding; (5) whether the petitioner and the defendant in the parallel proceeding are the same party; and (6) other circumstances that impact the Board's exercise of

discretion, including the merits. *Id.* at 6. Importantly, the PTAB (and then-Director Vidal) has repeatedly emphasized that no single factor is dispositive, and it "takes a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Id.*; *see also, e.g.*, *Nokia of Am. Corp. v. Soto*, IPR2023-00680, Paper 30 at 14 (P.T.A.B. Dec. 3, 2024) (Director review decision); *Samsung Elecs. Co. v. Cal. Inst. of Tech.*, IPR2023-00131, Paper 10 at 24 (P.T.A.B. May 4, 2023).

With respect to factor 4 (the overlap between issues raised in the petition and in the parallel proceeding), the PTAB has concluded that certain stipulations made by petitioners may reduce the likelihood that this overlap could lead to inconsistent results and reduce the burden on tribunals and the parties. Of particular relevance here, in its precedential decision in *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (P.T.A.B. Dec. 1, 2020), the PTAB considered a petitioner's stipulation not to pursue in the parallel proceeding "the specific grounds [asserted in the IPR], or on any other ground . . . that was raised or could have been reasonably raised in an IPR (*i.e.*, any ground that could be raised under §§ 102 or 103 on the basis of prior art patent or printed publications)." *Id.* at 13-14. The PTAB concluded that "Petitioner's stipulation here mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions" and that "Petitioner's broad stipulation ensures that an *inter*

5

*partes* review is a 'true alternative' to the district court proceeding." *Id.* at 19. Notably, even though the PTAB found this factor to "weigh[] strongly in favor of not exercising discretion to deny institution" (*id.*), the PTAB still took "'a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review' when considering the six *Fintiv* factors" (*id.* at 20).

In June 2022, then-Director Vidal issued a memorandum (Appx99-107 ("Vidal Memo")) concerning discretionary denial practices. While the Vidal Memo followed a Request for Comments, no formal notice-and-comment rulemaking was performed before it issued. In relevant part to Motorola's Petition, the Vidal Memo stated that, "the PTAB will not discretionarily deny institution . . . where a petitioner presents a stipulation not to pursue in a parallel proceeding the same grounds or any grounds that could have reasonably been raised before the PTAB" (a so-called "*Sotera* stipulation"). Appx101. Notably, this self-described "interim guidance" was inconsistent with the PTAB's repeated emphasis that no single factor is dispositive in the discretionary denial analysis. The Vidal Memo also foreshadowed that the USPTO would soon issue an Advanced Notice of Proposed Rulemaking on this issue. Appx99-100, 107.

Potentially recognizing the inconsistency between the guidance in the Vidal Memo and the PTAB's precedential *Sotera* decision, the USPTO's subsequent Advanced Notice of Proposed Rulemaking ("ANPR") acknowledged that "Sections

314(a) and 324(a) of 35 U.S.C. provide the Director with discretion to deny a petition, even when meritorious."[1]  The ANPR also stated that the USPTO was considering "making a *Sotera* stipulation a necessary but not sufficient basis for institution," which meant that "the Petitioner would necessarily need to file a *Sotera* stipulation" but "would still need to meet the other criteria for institution in view of a parallel litigation."  *Id.* at 24516.  The USPTO never promulgated any rules after this ANPR.

On February 28, 2025, the Acting Director of the USPTO rescinded the Vidal Memo, directing participants in IPR proceedings instead to the PTAB's precedent, including *Fintiv* and *Sotera*, which as discussed above provide detailed guidance on the relevant factors and their application.  Appx108 ("Rescission").  The PTAB's Chief APJ then issued guidance (the "Boalick Memo") on how discretionary denial issues would be considered, in which he expressed that "[i]n the absence of rulemaking, the USPTO rescinded the [Vidal Memo] to restore policy in this area to the guidance in place before the [Vidal Memo], including the Board's precedential decisions in [*Fintiv*] and [*Sotera*]."[2]  Appx110.  The Boalick Memo indicated that a

---

[1] Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board, 88 Fed. Reg. 24503, 24504 (Apr. 21, 2023).

[2] The Acting Director also issued a memorandum and FAQs concerning a current, interim process for managing the PTAB's workload, which details a new briefing procedure for discretionary denial issues.  *See* Appx113-115 ("Stewart Memo");

"timely-filed *Sotera* stipulation" will continue to be "highly relevant, but will not be dispositive by itself." Appx112. "Instead, the Board will consider such a stipulation as part of its holistic analysis under *Fintiv*." *Id.*

## II.    STELLAR'S LAWSUIT AGAINST MOTOROLA AND MOTOROLA'S IPR PETITIONS

Stellar filed a complaint against Motorola in the Eastern District of Texas on August 21, 2023, asserting eight patents against Motorola and WatchGuard Video, Inc. ("WatchGuard"), a company Motorola acquired in 2019. SAppx319-349. As noted in Stellar's complaint, Motorola was aware of Stellar, Stellar's patents, and Stellar's research and development work as early as 2016, when Stellar presented its technology to Motorola. *E.g.*, SAppx326. Instead of pursuing a business relationship with Stellar and obtaining rights to Stellar's patents, Motorola opted to develop competing (but infringing) products through its acquisition of WatchGuard.

Motorola filed the eight IPR petitions that are the subject of its Petition shortly before its one-year statutory bar, even though the IPR petitions involved the same prior art references and theories it disclosed five months earlier in its district court invalidity contentions. Motorola's district court invalidity contentions further

---

*FAQs for Interim Processes for PTAB Workload Management*, USPTO.Gov, *available at* https://www.uspto.gov/patents/ptab/faqs/interim-processes-workload-management (last visited July 21, 2025) ("FAQs"). The procedures in the Stewart Memo and FAQs were not used in deciding Motorola's IPR petitions, nor does Stellar understand them to be the subject of the Petition.

included theories combining those same references with system prior art not presented in its IPR petitions. Appx19. Importantly, all eight IPR petitions were silent as to any of the *Fintiv* factors. SAppx2-4, 97-99.

The PTAB was scheduled to issue its first set of institution decisions in February 2025. At the time of Stellar's preliminary responses in that first set of proceedings, the district court had ordered trial to take place in March 2025—meaning that trial would be less than a month away at the time of the expected institution decisions, and eleven months before final written decisions would issue if Motorola's IPRs were instituted. SAppx202-207. While Motorola's petitions were awaiting the PTAB's institution decisions, Motorola bombarded the district court with summary judgment and *Daubert* motions, causing the district court to delay trial until July 2025—still seven months before any final written decisions would issue.

Shortly before Stellar filed its preliminary responses, Motorola sent Stellar letters purporting to make *Sotera* stipulations, *i.e.*, that if Motorola's IPR petitions were instituted, "Motorola will not pursue as to the challenged claims any ground raised or that reasonably could have been raised during the IPR in the" district court

litigation. Appx117. Motorola did not file that letter with the PTAB at the time, nor did Motorola ever submit anything to the district court.[3]

In its preliminary responses, Stellar demonstrated why the *Fintiv* factors favored denying institution of Motorola's IPR petitions, including because (1) the district court's trial date was several months ahead of any final written decisions, (2) there was essentially zero likelihood of a stay of the district court action, (3) the parties and district court had expended substantial effort and resources in the district court action, (4) Motorola's letters did not identify which invalidity theories it would not pursue in the district court (and it was thus unclear to what extent any overlap would be eliminated by Motorola's purported stipulations), (5) the overlap of the parties between the district court and IPR proceedings, and (6) the weak merits of Motorola's petitions. SAppx201-214, 257-270.

Motorola did not request authorization to file a reply brief in any of the eight IPRs to address Stellar's *Fintiv* arguments.

---

[3] In the first set of IPR proceedings, Motorola waited until after seeing Stellar's preliminary responses (including Stellar's arguments concerning the *Fintiv* factors) to commit to its *Sotera* position and request (and receive) leave to file its letters with the PTAB. *E.g.*, Appx168 (showing filing date of Ex. 1043 in IPR2024-01205). In the second set of IPRs, Stellar submitted both Motorola's *Sotera* letter concerning those IPR proceedings and Stellar's responsive letter, as the Board denied Stellar leave to file its response letter in the first set of IPR proceedings. Appx183 (showing Stellar's filing of Ex. 2015 (Motorola letter, Appx120-121) and Ex. 2016 (Stellar response letter, SAppx) with its preliminary response in IPR2024-01284).

The PTAB instituted the first four IPR proceedings on February 13, 2025. In those decisions, the PTAB agreed that certain *Fintiv* factors (those concerning the likelihood of a stay, the district court's trial date, and the identity of the parties) favored denying institution. Appx69-70. Despite that, the PTAB concluded that other factors (Motorola's *Sotera* letters, the remaining effort at the district court, and the potential reduction of issues) favored institution, and instituted the IPRs on that basis. Appx70-71.

After the first set of institution decisions, Motorola asked the district court to stay the case pending final disposition of the IPR proceedings, which (over Stellar's opposition) the district court agreed to do temporarily on February 24, 2025, pending the PTAB's institution decisions on Motorola's other four IPR petitions. Appx203-204.

Three days later (and a day before Director Stewart rescinded the Vidal Memo), Stellar requested Director review of those first four institution decisions, arguing that the PTAB had improperly weighed the *Fintiv* factors and ignored certain key facts in arriving at its institution decisions. In relevant part, Stellar noted that the advanced stage of the case and the district court's limited trial length contradicted the PTAB's concern about the remaining effort at the district court, and that Motorola's *Sotera* letter did not significantly reduce the issues at the district court because Motorola's district court invalidity theories combine the art from its IPR

petitions with system prior art.  SAppx309-315.  Stellar also urged the PTAB to

vacate in-part the Vidal Memo, arguing:

> Stipulations like those in *Sotera Wireless* are intended to address
> "concerns of duplicative efforts and potentially conflicting decisions"
> between the Board and the district court and "ensure[] that an *inter
> partes* review is a 'true alternative' to the district court proceeding."
> Simply stipulating not to raise grounds of invalidity that were raised or
> reasonably could have been raised in an IPR petition does not *per se*
> accomplish those goals. Where (as here) accused infringers and IPR
> petitioners hedge their invalidity bets by raising § 102 and/or § 103
> invalidity theories based on unpublished "system prior art" (particularly
> when such prior use "system" theories involve publications that could
> theoretically serve as the basis for an IPR petition themselves),
> duplicative efforts are not avoided, and the IPR petitioner is not
> approaching the IPR system as a "true alternative" to the district court.

SAppx315-317.  The Acting Director granted Director review on March 28, 2025,

vacating the first set of institution decisions and concluding that "[t]he Board's

analysis of factors 3 and 4, and overall weighing of the *Fintiv* factors was erroneous"

because "[t]he Board did not give enough weight to the investment in the parallel

proceeding and gave too much weight to Petitioner's *Sotera* stipulation . . . and its

potential to reduce overlap with the issues raised in the parallel proceeding."

Appx17.  As to the stipulation, the Acting Director noted that it "does not ensure that

these IPR proceedings would be a 'true alternative' to the district court proceeding"

because "Petitioner's invalidity arguments in the district court are more expansive

and include combinations of the prior art asserted in these proceedings with

unpublished system prior art, which Petitioner's stipulation is not likely to moot." Appx18-19.

Motorola requested rehearing of the Director's decision, making many of the same arguments it presents in its Petition here, including that the Director had retroactively applied her new guidance. Appx147. Motorola also for the first time offered to make an "expanded stipulation" in which it would agree not to pursue "unpublished system prior art in combination with prior art in [its] Petitions" "or any other prior art invalidity grounds in the district court, should the Director reverse her discretionary denial decision and reinstate the IPRs." Appx145. The Director denied Motorola's request, noting that the guidance had not been applied retroactively. Appx5. The Director also rejected Motorola's effort to expand its stipulation as improper new evidence. *Id.*

Motorola's second set of IPR petitions followed a substantially similar path. The PTAB instituted those IPRs on March 18, 2025, finding that the district court's intervening temporary stay weighed even more heavily in favor of not exercising discretion to deny institution. Appx28-33. Stellar petitioned for Director review, which the Director granted, again finding that the Board had improperly weighed factors 3 and 4, that the Director had not applied the Rescission retroactively because an institution decision had not issued by the date of the Rescission, and that the district court's stay was the product of the erroneous first set of institution decisions.

Appx12-13. Instead of requesting rehearing of those decisions, Motorola filed this Petition.

## ARGUMENT

## I. MOTOROLA HAS NO RIGHT TO MANDAMUS RELIEF

Motorola cannot meet this Court's high bar for mandamus relief for several reasons, none of which require reaching the merits of its APA or due process arguments. First, Motorola's Petition is foreclosed by the USPTO's inherent statutory discretion to determine whether to institute IPR proceedings, as well as this Court's decision in *Mylan*. Second, Motorola cannot meet any of the three requirements for mandamus relief. Either of these is a sufficient basis on which to deny Motorola's Petition in its entirety.

### A. The USPTO's Statutory Discretion and *Mylan* Doom Motorola's Petition

Both this Court and the U.S. Supreme Court have repeatedly noted that, by statute, the USPTO always has discretion on whether to institute an IPR. *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion."); *SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 366 (2018) ("[Section] 314(a) invests the Director with discretion on the question whether to institute review . . . .") (emphasis omitted); *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding."). And, this Court

14

has already held that there is "no 'history [or] tradition' that supports a fundamental right to have the Board consider whether to institute one's IPR petition." *Mylan*, 989 F.3d at 1383. As this Court noted there, "it is difficult to imagine a mandamus petition that challenges a denial of institution and identifies a clear and indisputable right to relief. Certainly, this is not such a petition." *Id.* at 1382. The same reasoning applies here. Motorola's Petition ignores *Mylan* entirely. Also, importantly, Motorola "does not identify a deprivation of "life, liberty, [or] property," so "any procedural due process challenge is foreclosed." *Id.* at 1383.

Thus, the USPTO's exercise of its discretion here is not a decision that is subject to mandamus review. Motorola has not identified a single case where this Court has granted mandamus to overturn the PTAB's discretionary denial of institution—hardly surprising given the USPTO's statutory discretion. "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (quoting *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978) (plurality opinion)); *see also In re Power Integrations, Inc.*, 899 F.3d 1316, 1320 (Fed. Cir. 2018) ("[W]here section 314(d) bars an appeal from a Board decision not to institute *inter partes* review, the petitioning party has no clear and indisputable right to challenge [the] non-institution decision directly in this court, including by way of mandamus.") (cleaned up).

A "disappointed petitioner cannot by-pass the statutory bar on appellate review simply by directing its challenge to asserted procedural irregularities rather than to the substance of the non-institution ruling." *Power Integrations*, 899 F.3d at 1321. That is exactly what Motorola seeks to do through its Petition—challenge the Acting Director's decisions through alleged "procedural irregularities," but dressing them up as a constitutional challenge.

The Court should deny Motorola's Petition on this basis alone.

### B.    Motorola's Other Avenues of Relief Also Doom Its Petition

To obtain a writ of mandamus, Motorola bears the "demanding, [but] not insuperable," burden of showing: (1) there are "no other adequate means to attain the relief" requested, (2) the "right to issuance of the writ is clear and indisputable," and (3) "the writ is appropriate under the circumstances." *Palo Alto Networks*, 44 F.4th at 1374 (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004)). Motorola cannot meet any of these requirements, and its Petition should be denied for that reason as well.

First, Motorola has other means to obtain the relief it seeks, *i.e.*, the ability to challenge the validity of Stellar's patents. IPR petitions are not an accused infringer's only means of challenging the validity of patents. Motorola can still pursue its validity challenges in the district court and/or seek *ex parte* reexamination of Stellar's patents.

Second, Motorola cannot show that its right to a writ of mandamus is clear and indisputable. As discussed above, the USPTO has statutory discretion whether to institute an IPR petition, and this Court has already determined in *Mylan* that "it is difficult to imagine a mandamus petition that challenges a denial of institution and identifies a clear and indisputable right to relief." 989 F.3d at 1382. Moreover, as discussed *infra*, Motorola's arguments that the Rescission is a substantive rule that required notice-and-comment rulemaking and its flawed assertion that the Acting Director applied the Rescission retroactively are incorrect.

Third, mandamus relief is not appropriate under these circumstances. Motorola could have filed its IPR petitions earlier but chose not to. Motorola's delay in filing its petitions, delay in raising *Fintiv* arguments, and failure to urge the PTAB to institute Motorola's IPR petitions based on the Vidal Memo all contributed to the Acting Director's decisions. Had Motorola filed its petitions earlier, the district court case would not have been as advanced by the time of the institution decisions, and the PTAB and Acting Director's analyses of the *Fintiv* factors would have been more favorable to Motorola.

Because Motorola has not shown entitlement to any aspect of the standard for mandamus relief, its Petition should be denied.

## II.    THE RESCISSION AND BOALICK MEMO ARE A RULE OF PROCEDURE, NOT A SUBSTANTIVE RULE

Motorola's Petition is premised on the idea that the Vidal Memo was a binding substantive rule and that its rescission required notice-and-comment rulemaking. Pet. 20-21.  But its own reasoning dooms that argument.  In Motorola's view, the June 2022 Memo is a binding substantive rule, but Motorola tacitly acknowledges that the Vidal Memo itself was not the result of notice-and-comment rulemaking (which is required for binding substantive rules).  Pet. 8; *see also Apple Inc. v. Vidal*, 63 F.4th 1, 17 n.7 (Fed. Cir. 2023) (noting that the Vidal Memo and its "subsequent clarifications . . . were not put in place through notice-and-comment rulemaking."). Motorola even doubles down on this argument later in its Petition, citing *General Electric Co. v. E.P.A.* to argue that the Vidal Memo was binding.  Pet. 25 (citing 290 F.3d 377, 385 (D.C. Cir. 2002)).  But Motorola leaves unaddressed the obvious flaw in its argument, which *General Electric* makes clear: how can such purportedly binding guidance in the Vidal Memo be proper without notice-and-comment rulemaking?

Motorola's inconsistencies aside, the Vidal Memo itself makes clear that it was only "interim" guidance and that notice-and-comment rulemaking was forthcoming.  Appx99-100; Appx107.  Thus, the Vidal Memo itself acknowledges that its issuance did not require notice-and-comment rulemaking—and thus could not be a substantive rule.

18

Motorola also erroneously asserts that the Vidal Memo "precluded discretionary denial" when a *Sotera* stipulation is made. Pet. 13. Motorola appears to base this on the Vidal Memo's own statement—but that statement cannot change the reality that the USPTO has always had discretion to decline to institute an IPR petition. *Cuozzo*, 579 U.S. at 273 (2016); *SAS Inst.*, 138 S. Ct. at 1356; *Harmonic*, 815 F.3d at 1367. Even the APRM issued after the Vidal Memo expressly acknowledges that discretion. 88 Fed. Reg. at 24504.

Motorola's reliance on *Coalition for Common Sense in Government Procurement v. Secretary of Veterans Affairs* is misplaced. There, the "Dear Manufacturer" letter "create[d] a new refund system" in which drug "manufacturers [were] required to pay refunds totaling $100 to $200 million annually." 464 F.3d 1306, 1317 (Fed. Cir. 2006). And, the court there also found the "Dear Manufacturer" letter to be a substantive rule because "the VA intended its refund system to be binding not only on itself, but also on tribunals interpreting whether or not a manufacturer has complied with the letter." *Id.* at 1318. Neither of those is true here. The Rescission and subsequent guidance do not create any new systems, nor do they have binding effects outside the USPTO.

Motorola's attempt to apply *CropLife America v. E.P.A.* fares no better. Pet. 22. There, the court concluded that the EPA's determination that human studies would be "immaterial" in its decision making was a binding regulation. 329 F.3d

19

876, 881 (D.C. Cir. 2003). In contrast, the Rescission did not indicate that a *Sotera* stipulation was immaterial; instead, consistent with *Fintiv* and other PTAB precedent, the Acting Director stated that such stipulations, if timely submitted, remain "highly relevant" but would be considered along with other factors. Appx112. In denying rehearing, the Acting Director also found that the vacatur of the institution decisions and denial of institution was a determination, even in view of Motorola's *Sotera* stipulation, that could have been made "under either the [Vidal] Memo or [the Rescission]." Appx4.

More generally, Motorola improperly attempts to demonize the Rescission as some radical change in USPTO guidance. That idea contradicts the USPTO's own pre-existing, precedential decisions (including *Fintiv* and *Sotera*, expressly mentioned in the Rescission), which collectively make clear to all participants in the IPR process that the USPTO will consider all of the enumerated factors (including a *Sotera* stipulation when offered), and that no single factor will be dispositive. Motorola's argument also contradicts incontrovertible authority that rests discretion to institute IPRs with the USPTO. *Cuozzo*, 579 U.S. at 273 (2016); *SAS Inst.*, 138 S. Ct. at 1356; *Harmonic*, 815 F.3d at 1367. Even the PTAB's Consolidated Trial

Practice Guide (which has remained unchanged since 2019) recognizes this discretion.[4]

Given that the Rescission is thus a rule of procedure and not a substantive rule, no notice-and-comment rulemaking was required, and Motorola's Petition can likewise be rejected on this basis alone.[5] *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015); *see* 5 U.S.C. § 553(b)(A) (rules of procedure exempt from notice-and-comment requirements).

## III.   THE RESCISSION AND BOALICK MEMO WERE NOT APPLIED RETROACTIVELY HERE—IN FACT, THEY WERE NOT APPLIED AT ALL

Next in the list of flaws in Motorola's Petition is the fact that the PTAB did not rely on the Vidal Memo in its institution decisions, nor did the Acting Director

---

[4] *See* Patent Trial and Appeal Board Consolidated Trial Practice Guide at 55 (Nov. 2019) *available at* https://www.uspto.gov/sites/default/files/documents/tpgnov.pdf?MURL=TrialPracticeGuideConsolidated.

[5] In the alternative, this Court may conclude that the Rescission is either a policy statement or an interpretive rule, neither of which requires notice-and-comment rulemaking. *See* 5 U.S.C. § 533(b)(A). As discussed above, the Vidal Memo conflicts with the precedential PTAB authority on which it relies, in that *Fintiv* makes clear that no single factor is dispositive in the analysis, but (at least according to Motorola) the Vidal Memo makes a single factor (a *Sotera* stipulation under factor 4) dispositive. Thus, the Rescission was (as the USPTO indicated in that notice) a return to the precedential authority of *Fintiv* and *Sotera* and is thus a policy statement reflecting a return to the actual holdings of that precedential authority. The Rescission and subsequent guidance also meet the requirements of an interpretive rule, as it interprets *Fintiv* and *Sotera* as merely requiring that a *Sotera* stipulation be considered as one factor in a multi-factor analysis.

apply the Rescission or Boalick Memo in vacating them. Thus, there was no retroactive application.

The USPTO unambiguously indicated that the Rescission "applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending." Appx111. The USPTO also indicated that "[t]he Board will consider timely requests for additional briefing on the application of the [Rescission] on a case-by-case basis." *Id.* At the time of the Rescission and Boalick Memo, Stellar had pending requests for Director review of the first set of institution decisions and filed a request for Director review of the second set shortly thereafter.[6] None of the IPR proceedings had proceeded beyond the institution decisions—no additional submissions (*e.g.*, patent owner responses) had been made, no depositions had taken place, and no motions had been filed. And, while the Acting Director permitted Motorola to respond to Stellar's rehearing requests, Motorola never asked for additional briefing in light of the Rescission or Boalick Memo.

Motorola's argument is premised on the idea that applying the Rescission and Boalick Memo to *any* pending IPR proceeding amounts to a retroactive application. Setting aside the incorrectness of that argument, the fact is, the PTAB's institution

---

[6] Motorola conveniently ignores that, had it not waited until the eleventh hour to file its IPR petitions, the period for seeking Director review of the institution decisions may have passed before the Rescission and Boalick Memo.

decisions did not apply the rigid construct Motorola argues that the Vidal Memo requires. Specifically, the PTAB did not refuse discretionary denial because of Motorola's *Sotera* letters; instead, the PTAB weighed the *Fintiv* factors and the parties' arguments and evidence concerning them, albeit in a manner that the Acting Director later determined was erroneous. But even there, the Acting Director did not rely on the Rescission or Boalick Memo in vacating institution. *See generally* Appx1-15. Instead, the Acting Director concluded that the PTAB erred in its fact-finding as to certain factors and improperly weighed the factors in view of the evidence. *See generally id.* The facts here are thus unlike those in *American Bar Association v. U.S. Department of Education*, where the agency adopted new standards and then applied them in loan forgiveness denial letters without advance notice to the borrowers. 370 F. Supp. 3d 1, 33-34 (D.D.C. 2019).

Given that the Vidal Memo, Rescission, and Boalick Memo were not even applied here, Motorola's retroactive application argument is misplaced and should be rejected.

## IV.   THE RESCISSION AND BOALICK MEMO WERE REASONED AND ACCOUNTED FOR RELIANCE INTERESTS

Motorola wrongly suggests that the Rescission and Boalick Memo were not reasoned. The Rescission itself refers interested parties to the PTAB's precedential decisions in *Fintiv* and *Sotera*, which clearly lay out the reasons for the *Fintiv* factors and the notion that a *Sotera* stipulation is intended to make an IPR a "true

alternative" to district court proceedings. *Fintiv*, Paper 11 at 6 ("These factors relate to whether efficiency, fairness, and the merits support the exercise of authority to deny institution in view of an earlier trial date in the parallel proceeding."); *Sotera*, Paper 12 at 19 ("Petitioner's stipulation here mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions" and "ensures that an *inter partes* review is a 'true alternative' to the district court proceeding").

The Boalick Memo also describes reasons for the Rescission, including that the Vidal Memo "was intended to provide guidance while the USPTO explored potential rulemaking, but the USPTO did not subsequently propose a final rule addressing the Director's and, by delegation, the [PTAB's] exercise of discretionary institution in an [IPR] in view of a parallel litigation" and that "[i]n the absence of rulemaking, the USPTO rescinded the [Vidal Memo] to restore policy in this area to the guidance in place before the [Vidal Memo], including [*Fintiv*] and [*Sotera*]." Appx110.

Contrary to Motorola's argument, the Acting Director also squarely accounted for reliance interests by only making the Rescission and subsequent guidance (including the Boalick Memo, as well as the Stewart Memo and FAQs) applicable in a limited set of proceedings. In fact, now, the Stewart Memo and FAQs govern the discretionary denial process—a process which was not at issue in these IPRs.

24

These lines of demarcation clearly demonstrate that the Acting Director provided for a transition from prior procedural guidance to the current procedural guidance.

Motorola also falsely alleges that it relied on the Vidal Memo. However, it is undisputed that Motorola's petitions are completely silent on the *Fintiv* factors—a fact that should be dispositive of Motorola's alleged reliance. SAppx2-4, 97-99. Motorola never urged the PTAB (through a reply brief or otherwise) to institute its IPR petitions solely on the basis of its *Sotera* letters, nor did the PTAB (as discussed above) institute Motorola's IPRs on that basis. Motorola's alleged reliance is nothing more than *post hoc* rationalization.

Motorola's claims of reliance are even further undermined by the fact that the Vidal Memo expressly indicates that its guidance was "interim"—meaning not only was it subject to change by then-Director Vidal herself, but also through the ANPR that the Vidal Memo indicated would be forthcoming. Appx99-100. And, when that ANPR did issue, it expressly contemplated changing the USPTO's guidance to reduce the importance of a *Sotera* stipulation. 88 Fed. Reg. at 24516. The fact that the Vidal Memo was only in effect for less than three years also contradicts Motorola's reliance arguments. Whatever Motorola's expectations were, they are not "settled expectations" "on which a party might reasonably place reliance." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007).

Motorola's actions here are unlike those at issue in *Encino Motorcars, LLC v. Navarro*, where the Supreme Court noted that "[a] summary discussion" of an agency's change in guidance would not suffice "because of decades of industry reliance on the Department's prior policy." 579 U.S. 211, 222 (2016).  As that case indicates, "[a]n agency must 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* at 221.  Even if that burden were applicable, the USPTO met it in the Rescission and Boalick Memo, setting forth sufficient guidance and explanation of the Rescission.  At the same time, there was no "decades of industry reliance" on the Vidal Memo, obviating any argument by Motorola of "serious" reliance interests.

Motorola's claims that it altered litigation strategies in reliance on the Vidal Memo also have no merit.  Pet. 32.  Motorola never formally withdrew any invalidity theories from the district court case—even though Stellar expressly asked Motorola to clarify which theories it was agreeing to forego.  SAppx188-189.  Motorola also never filed any stipulation with the district court.  Thus, there is simply no evidence that Motorola altered its litigation strategy in any way.[7]  Instead, Motorola disclosed

---

[7] Motorola also alleges that it "prepared and filed petitions at considerable expense." Pet. 32.  Of course, doing so was Motorola's choice, not a requirement.  This is also contrasted by the fact that Stellar has incurred substantial expense with the USPTO in applying for and maintaining its eight patents—the claims of which were examined and deemed allowable—and in responding to Motorola's petitions.

its invalidity theories in the district court litigation and then inexplicably waited over

five months to file its IPR petitions.

## V.     MOTOROLA'S DUE PROCESS ARGUMENTS HAVE NO MERIT.

Motorola cites *Kirwa v. Department of Defense* as supposedly supporting a

claim that the recission here was applied retroactively in an alleged violation of its

due process rights.  Pet. 33.  Motorola's assertion is fundamentally flawed.  In *Kirwa*,

the "DOD offered no reasoned explanation for [its] change, thereby suggesting that

DOD's decision was an arbitrary and capricious one."  285 F. Supp. 3d 21, 38

(D.D.C. 2017).  Also, as the court noted, prior to DOD's guidance there was "no

formal written guidance" on the disputed issue.  *Id.*  Here, prior written guidance

existed, and the USPTO provided a reasoned explanation for changing its guidance

(in the Rescission and the Boalick Memo), and therefore the recission was neither

arbitrary nor capricious.

Moreover, the USPTO's statutory discretion to institute IPRs, the expressly

interim nature of the Vidal Memo's guidance, its foreshadowing of the ANPR, and

the ANPR's suggestion that the USPTO may reduce the significance of a *Sotera*

stipulation are unlike the "substantive limits on official discretion" that *Tarpeh-Doe*

*v. United States* indicates create a due process right.  904 F.2d 719, 722 (D.C. Cir.

1990).

Motorola also incorrectly suggests that "[t]he Rescission 'as applied to' Motorola 'summarily denie[d]' Motorola the right to consideration of its IPR petitions on the merits, without the possibility of discretionary denial based on parallel litigation," relying on *Kirwa v. U.S. Department of Defense*, 285 F. Supp. 3d 257, 274 (D.D.C. 2018) ("*Kirwa II*"). This language from *Kirwa II* expressly concerned alleged violations of procedural due process, which requires deprivation "of 'liberty' or 'property' interests." *Id.* at 273-74 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)). However, this Court has already determined that discretionary denial of an IPR petition is not deprivation of "life, liberty, [or] property." *Mylan*, 989 F.3d at 1383.

This case is also unlike *Cemex Inc. v. Department of the Interior*, where the "serious reliance interests" discussed in dicta there involved significant interactions between Cemex and the agency over the course of two decades. 560 F. Supp. 3d 268, 271-74, 81 (D.D.C. 2021). Here, by contrast, the Vidal Memo's "interim" guidance was in effect for less than three years, changes to that "interim" guidance were suggested shortly thereafter in the ANPR, and Motorola cannot genuinely argue that its interactions with the USPTO were anywhere near as extensive as Cemex's interactions.

This is also not a case of retroactive application of a new set of regulations, as was the case in *Covey v. Hollydale Mobilehome Estates*. Pet. 35. There, the Ninth

Circuit concluded that the district court improperly applied a new set of HUD regulations that issued years after the alleged discriminatory conduct and during the pendency of the litigation. 116 F.3d 830, 832-34, 37 (9th Cir. 1997). Here, as discussed above, the Acting Director applied the PTAB's precedential authority in *Fintiv* and *Sotera* and concluded that the panel had improperly evaluated and weighed the *Fintiv* factors.

Finally, Motorola also attempts to fault the Acting Director for not considering the stay order and Motorola's "expanded" *Sotera* letter. Pet. 36. The Acting Director did consider the stay order and found it to be the result of the improper first set of institution decisions. And, the Acting Director was not required to consider Motorola's belated *Sotera* letter, as the USPTO's rules do not permit new evidence in the Director review process. Appx5; *see* 37 C.F.R. § 42.75(c)(3). Also, even if the Director considered Motorola's letter, it would only alter the analysis of factor 4, and the remaining factors would continue to favor denying institution.

## VI.    MOTOROLA'S PRACTICAL ARGUMENTS ALSO HAVE NO MERIT

Motorola argues that the USPTO's procedures are contrary to the AIA's stated purpose of creating more efficient mechanisms to determine patent validity. But as the Director's decisions found, Motorola is not using the IPR process as a "true alternative" to district court litigation of validity, as contemplated by *Sotera*. Appx18-19. Instead, Motorola is trying to have two bites at the same invalidity

apple, one at the PTAB and one at the district court through its use of system art. Such duplicative litigation is contrary to the AIA's purpose of creating "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." Appx99 (quoting H.R. Rep. No. 112-98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69, and citing S. Rep. No. 110-259, at 20 (2008)).

Motorola also argues that the progress of the district court case somehow creates an inequity. Pet. 38. But nothing prevented Motorola from filing its IPR petitions earlier. Motorola had notice of all of the patents since the complaint was filed, and Motorola even had knowledge of Stellar's patents years before the case was filed.

Motorola also points to the district judge's indication in the stay order that resolving pending motions was necessary before the district court could set a trial date. Pet. 39 (citing Appx163). Motorola conveniently ignores that all those motions are attributable to Motorola. Motorola filed the summary judgment and *Daubert* motions it refers to (*id.*), and the lone non-administrative motion Stellar filed (a motion to amend its infringement contentions) was the result of Motorola disputing whether one accused product was within the scope of Stellar's infringement contentions. Motorola cannot introduce a plethora of motions and then attempt to use the burden they present to the district court to Motorola's advantage. And, as

30

noted above, the district court had given no indication of a stay prior to the issuance of the first set of improper institution decisions.

## **<u>CONCLUSION AND RELIEF SOUGHT</u>**

For at least the foregoing reasons, the Court should deny Motorola's Petition.

Dated: July 21, 2025

Respectfully submitted,

*/s/ Timothy E. Grochocinski*
Timothy E. Grochocinski
C. Austin Ginnings
Nelson Bumgardner Conroy P.C.
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
Telephone: (708) 675-1974
tim@nelbum.com
austin@nelbum.com

Timothy Devlin
James M. Lennon
Robert Kiddie
Nadiia Loizides
Devlin Law Firm, LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com
jlennon@devlinlawfirm.com
rkiddie@devlinlawfirm.com
nloizides@devlinlawfirm.com

*Counsel for Respondent Stellar, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this brief contains 7,158 words, exclusive of the items exempted by Fed. R. App. P. 21(a)(2)(C) and Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.


Dated: July 21, 2025                          */s/ Timothy E. Grochocinski*
                                               Timothy E. Grochocinski