2025-134

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE: MOTOROLA SOLUTIONS, INC.,

*Petitioner*.

On Petition for Writ of Mandamus from the United States Patent and Trademark Office in Nos. IPR2024-01205, IPR2024-01206, IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285, IPR2024-01313, and IPR2024-01314.

**ACTING DIRECTOR'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

AMY J. NELSON
   *Acting Solicitor*

ROBERT J. MCMANUS
   *Acting Deputy Solicitor*

PETER J. SAWERT
FAHD H. PATEL
   *Associate Solicitors*
   *Office of Solicitor*
   *U.S. Patent and Trademark*
   *Office*

BRAD HINSHELWOOD
LAURA E. MYRON
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7228*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4819*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................... 1

BACKGROUND ......................................................................... 5

ARGUMENT ........................................................................... 14

    I.    Motorola's statutory complaints are barred by 35 U.S.C.
        § 314(d). ................................................................... 14

    II.   Motorola's constitutional claims are meritless...................... 20

    III.  Motorola cannot satisfy the remaining mandamus
         factors. ................................................................... 32

        A.  Motorola has alternate means of relief............................ 32

        B.  A writ is inappropriate under the circumstances. ........... 34

CONCLUSION ......................................................................... 36

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alberico v. United States,*
   783 F.2d 1024 (Fed. Cir. 1986) .......................................... 25

*Allied Chem. Corp. v. Daiflon, Inc.,*
   449 U.S. 33 (1980) .......................................... 22

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
   526 U.S. 40 (1999) .......................................... 21

*Apple Inc. v. Fintiv, Inc.,*
   No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) ....... 6

*Apple Inc. v. Vidal,*
   63 F.4th 1 (Fed. Cir. 2023) ................................... 16, 18, 19, 20, 23, 31

*Barnhart v. Devine,*
   771 F.2d 1515 (D.C. Cir. 1985) .......................................... 34

*Bloch v. Powell,*
   348 F.3d 1060 (D.C. Cir. 2003) .......................................... 22

*Board of Regents of State Colls. v. Roth,*
   408 U.S. 564 (1972) .......................................... 21

*Bryan v. McDonald,*
   615 F. App'x 681 (Fed. Cir. 2015) .......................................... 34

*Celgene Corp. v. Peter,*
   931 F.3d 1342 (Fed. Cir. 2019) .......................................... 24, 25

*Cheney v. U.S. Dist. Ct. for D.C.,*
   542 U.S. 367 (2004) .......................................... 1, 20, 32, 34

*Cleveland Bd. of Educ. v. Loudermill,*
   470 U.S. 532 (1985) .......................................... 25

*Cuozzo Speed Techs., LLC v. Lee,*
   579 U.S. 261 (2016) .......................................... 5, 14, 22

*Dominion Dealer Sols., LLC, In re,*
   749 F.3d 1379 (Fed. Cir. 2014) .......................................... 20, 32

*Fornaro v. James,*
  416 F.3d 63 (D.C. Cir. 2005) ............................................................. 34

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha,*
  No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) ....... 6

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ............................................................. 24

*Interstate Com. Comm'n v. Brotherhood of Locomotive Eng'rs,*
  482 U.S. 270 (1987) ............................................................. 23

*Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.,*
  839 F.3d 1382 (Fed. Cir. 2016) ............................................................. 17

*Landgraf v. USI Film Prods.,*
  511 U.S. 244 (1994) ............................................................. 27, 28, 29

*Miller, In re,*
  828 F. App'x 717 (Fed. Cir. 2020) ............................................................. 22

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.,*
  989 F.3d 1375 (Fed. Cir. 2021) 1, 5, 6, 14, 15, 16, 17, 23, 28, 29, 33, 34

*Palo Alto Networks, Inc., In re,*
  44 F.4th 1369 (Fed. Cir. 2022) ............................................................. 17

*Patlex Corp. v. Mossinghoff,*
  758 F.2d 594 (Fed. Cir. 1985) ............................................................. 24

*Power Integrations, Inc., In re,*
  899 F.3d 1316 (Fed. Cir. 2018) ............................................................. 16, 17

*Princess Cruises, Inc. v. United States,*
  397 F.3d 1358 (Fed. Cir. 2005) ............................................................. 28

*Rodriguez v. Peake,*
  511 F.3d 1147 (Fed. Cir. 2008) ............................................................. 28

*Sotera Wireless, Inc. v. Masimo Corp.,*
  No. IPR2020-01019, 2020 WL 7049373 (P.T.A.B. Dec. 1, 2020) ........... 7

*Synthes (U.S.A.), In re,*
  346 F. App'x 583 (Fed. Cir. 2009) ............................................................. 22

*Thryv, Inc. v. Click-to-Call Techs., LP,*
  590 U.S. 45 (2020) ................................................... 14, 15, 17

*Town of Castle Rock v. Gonzales,*
  545 U.S. 748 (2005) ...................................................... 21

*United States v. Arthrex, Inc.,*
  594 U.S. 1 (2021) ........................................................... 36

## U.S. Constitution:

Amend. V .......................................................................... 21

## Statutes:

35 U.S.C. § 314(a) ........................................................... 5

35 U.S.C. § 314 (d) .................................................. 2, 5, 14, 18

35 U.S.C. § 315 ................................................................ 5

35 U.S.C. § 315(e) ......................................................... 33

35 U.S.C. § 318 ................................................................ 5

35 U.S.C. § 319 ................................................................ 5

## Regulatory Material:

37 C.F.R. § 42.4(a) .......................................................... 6

## Other Authority:

Memorandum from Coke Morgan Stewart, Acting
  Under Sec'y of Com. for Intell. Prop. & Acting Dir.
  of the USPTO, to All PTAB Judges (Mar. 26, 2025),
  https://perma.cc/N8WW-69XG ........................................9

# INTRODUCTION

Congress has committed the decision to institute an inter partes review (IPR) to the United States Patent and Trademark Office (USPTO) Director's discretion and expressly insulated the exercise of that discretion from any appeal. Accordingly, this Court has made clear that the only circumstance in which it can review the USPTO's denial of a petition to institute IPR is through a petition for a writ of mandamus, which may be brought solely based on colorable claims that the USPTO has exercised its discretion in an unconstitutional manner. *See Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). And to obtain the "drastic and extraordinary" mandamus remedy, a petitioner must show that it has (1) a "clear and indisputable" right to relief; (2) no "alternative avenues of relief"; and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379-81 (2004) (quotation marks omitted).

Petitioner here, Motorola Solutions, Inc., seeks that extraordinary remedy based on its dissatisfaction with the current Acting Director's decision to alter a former Director's guidance regarding the appropriate

circumstances for institution of an IPR in light of parallel district court litigation. Motorola does not contest that it had notice of the rescission of the prior Director's guidance and multiple opportunities to brief the question whether the Acting Director's decision to exercise her discretion differently than her predecessor should impact its requests for institution. Rather, it contends that withdrawing the former Director's guidance violates the Administrative Procedure Act (APA) and the Constitution. Such complaints do not approach the very high bar for mandamus relief.

To begin, much of Motorola's argument is barred by 35 U.S.C. § 314(d), which precludes judicial review of claims that the USPTO's institution decisions violate a statute, including the APA. Motorola does not even attempt to explain why these claims would fall within this Court's mandamus jurisdiction to review such institution decisions, which this Court has clearly recognized is limited to colorable *constitutional* claims. Motorola's APA challenges arise under statutes, not the Constitution, and they are nonjusticiable in this mandamus action.

2

Motorola's due-process complaints are equally unavailing. Such claims not only fail to establish a clear and indisputable right to relief, but they are baseless. Motorola has no entitlement to either IPR institution or any particular set of criteria the agency might use to determine if it considers institution to be warranted—both matters that are entirely within the Director's discretion. And even if Motorola could establish the type of entitlement that might support a constitutionally protected liberty or property interest, Motorola received the due-process requisites of notice and the opportunity to be heard; the USPTO afforded Motorola multiple opportunities to make its case for institution under the Acting Director's current guidance. Furthermore, the rescission of prior guidance to the Patent Trial and Appeal Board (Board) on discretionary institution does not implicate the presumption against retroactivity. And Motorola's asserted reliance interest in the former Director's use of her discretion was entirely unreasonable.

Nor can Motorola satisfy the mandamus standard's other requirements. At base, Motorola is seeking a chance to invalidate patent claims; it has expressly disclaimed judicial relief vacating the

3

Acting Director's rescission of the prior guidance if it does not also result in institution of IPR. *See* Pet. 19-20. Motorola has claimed no independent harms from any asserted constitutional violations. In that circumstance, Motorola has several "alternative avenues of relief" through which it can seek invalidation of the challenged patent claims, as it remains free to avail itself of district court litigation or ex parte reexamination.

Finally, even apart from all other defects in its petition, Motorola cannot show that mandamus relief would be appropriate. Congress gave the USPTO Director wide latitude to manage proceedings under the America Invents Act and insulated institution decisions from appellate review. Each Director must balance requests for administrative review of patent claims against the other needs of the USPTO and the patent system more generally. The current Acting Director faces a significantly different situation than existed in 2022. When the Acting Director took office in February 2025, the backlog and pendency of ex parte appeals that the Board needed to address was higher, the number of Administrative Patent Judges was lower, and the agency was subject to

4

a hiring freeze. Motorola's request for a judicial order forcing the current Acting Director to adhere to a prior Director's exercise of discretion, issued under different circumstances, is not an "appropriate" use of the writ.

## BACKGROUND

1. When Congress created inter partes review, it set out various statutory bars precluding the USPTO Director from instituting an IPR, but no set of circumstances in which institution is required. *See* 35 U.S.C. §§ 314(a), 315. Congress further provided that although the agency's final written decision with respect to patentability is subject to appeal in this Court, *see id.* §§ 318, 319, the determination by the Director whether or not to institute an IPR is "final and nonappealable," *id.* § 314(d). Both this Court and the Supreme Court have repeatedly made clear that the USPTO is under "no mandate to institute review" and the "decision to deny [an IPR] petition is a matter committed to the Patent Office's discretion." *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016)). Thus, "[t]he

Director is permitted, but never compelled, to institute an IPR," and "no petitioner has a right to . . . institution." *Id.*

2. The Director has delegated broad discretion over whether to institute IPR proceedings to the Board, *see* 37 C.F.R. § 42.4(a), and Directors have set out various criteria for the Board to use in employing that delegated authority, *see, e.g.*, *General Plastic Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (discussing discretionary factors for multiple IPR petitions). As relevant here, because IPR proceedings often coincide with parallel district court litigation, for a number of years, Directors have instructed the Board to consider a non-exhaustive list of factors when concerns are raised about redundancy or wastefulness in light of a requested IPR and parallel district court litigation. These factors are set forth in *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (precedential), and instruct the Board to take "a holistic view of whether efficiency and integrity of the system are best served by denying or instituting review," *id.* at *3.

On June 21, 2022, the prior USPTO Director issued a memorandum setting out "interim" guidance regarding the Board's application of the *Fintiv* factors when exercising its delegated discretion while the USPTO "explore[d] potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking." Appx100 (June 2022 Memo); *see* Appx99-107. The June 2022 Memo stated that it would "appl[y] to all proceedings pending before the [USPTO]" and would "remain in place until further notice." Appx107.

Relevant here, the June 2022 Memo directed the Board to "not discretionarily deny institution [of an IPR] in view of parallel district court litigation where a petitioner [stipulates] not to pursue in a parallel [district court] proceeding the same grounds [as in the petition] or any grounds that could have reasonably been raised before the [Board]." Appx101. Such a stipulation is known as a *Sotera* stipulation. Appx101; *see Sotera Wireless, Inc. v. Masimo Corp.*, No. IPR2020-01019, 2020 WL 7049373, at *4 (P.T.A.B. Dec. 1, 2020) (precedential as to II.A). The June 2022 Memo expressly noted that "even if the [Board] does not

deny institution under *Fintiv*, it retains the right to deny institution for other reasons" within the Board's discretion. Appx107.

On February 28, 2025, the current Acting Director of the USPTO rescinded the June 2022 Memo (Rescission), noting that *Fintiv* and *Sotera* continued to provide applicable guidance. Appx108-109. On March 24, 2025, Chief Administrative Patent Judge Scott Boalick issued a memorandum providing additional guidance as to how the Board should proceed in light of the Rescission. *See* Appx110-112. The memorandum explained that "the Interim Procedure's recission applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending." Appx111. It further noted that "[t]he Board will consider timely requests for additional briefing on the application of the Interim Procedure's recission on a case-by-case basis." Appx111. As Chief Judge Boalick explained, "a timely-filed *Sotera* stipulation . . . is highly relevant, but will not be dispositive by itself."

Appx111-112 (footnote omitted). "Instead, the Board will consider such a stipulation as part of its holistic analysis under *Fintiv*." Appx112.[1]

3. This mandamus petition concerns eight IPR petitions filed by Motorola seeking to challenge patents held by Stellar, LLC. *See* Appx199. On July 22, 2024, Motorola filed four IPR petitions (IPR2024-01205, IPR2024-01206, IPR2024-01207, and IPR2024-01208). *See* Appx 199; *see also* Appx167, Appx171, Appx175, Appx179. These four petitions are referred to collectively as the "first set." *See, e.g.*, Pet. 11. Motorola filed a "second set" of petitions on August 9, 2024 (IPR2024-01284, IPR2024-01285), and August 15, 2024 (IPR2024-01313, IPR2024-01314). *See* Appx183, Appx187, Appx191, Appx195. Motorola offered *Sotera* stipulations for each of the challenged patents, stating

---

[1] Acting Director Stewart has updated the institution process in other ways as well, providing for a new briefing process in which the Acting Director herself makes institution decisions that involve discretionary denials, including the application of the *Fintiv* factors and *Sotera* stipulations, in consultation with the Board. *See* Memorandum from Coke Morgan Stewart, Acting Under Sec'y of Com. for Intell. Prop. & Acting Dir. of the USPTO, to All PTAB Judges (Mar. 26, 2025), https://perma.cc/N8WW-69XG. Given that this new process applies only "where the deadline for the patent owner to file a preliminary response has not yet passed," *id.* at 3, the guidance is not applicable to this matter.

that upon institution, it would "not pursue as to the challenged claims any ground raised or that reasonably could have been raised during the IPR in the above-captioned litigation, EDTX 4:23-cv-750-SDJ." Appx116-121. But in the event that institution was declined, the notices specify that "Motorola reserves the right to pursue the grounds of the denied petition or any other grounds in the parallel litigation." Appx116-121.

a. **First Set of IPRs**.  On February 13, 2025, the Board instituted IPR on the first set of Motorola's petitions. Appx60-98, Appx3. The Board weighed all of the *Fintiv* factors and determined, on balance, that the factors weighed in favor of instituting review. Appx71. Although it made a general reference to the June 2022 Memo, Appx69, the Board explained that it had considered the "Petitioner's stipulation, the substantial number of issues to be addressed in the District Court, Patent Owner's acknowledgement that Petitioner's expert report in the parallel litigation repeats the assertions in this Petition, and the potential reduction of issues to be tried in the parallel litigation" and

that its "weighing of the factors is against exercising discretion to deny institution." Appx71.

On February 28, 2025, the USPTO rescinded the June 2022 Memo. Stellar subsequently sought Director Review of the Board's institution decisions. In response, Motorola argued that (1) the Rescission should have no impact on the institution decision because the Board did not "state any reliance on" the now-rescinded June 2022 Memo but instead "took a holistic view" of the *Fintiv* factors, Appx123 (quotation marks omitted); and (2) the institution and the Board's weighing of Motorola's *Sotera* stipulation was correct even with the withdrawal of the June 2022 Memo, Appx124-125. Upon review, the Acting Director vacated the Board's decision and denied institution. Appx16-20. The Acting Director found error in the Board's analysis and weighing of the *Fintiv* factors, Appx17, concluding that "[c]onsidering the *Fintiv* factors as a whole, the efficiency and integrity of the system are best served by denying review," Appx19.

Motorola sought rehearing, Appx138-159, arguing for the first time that its *Sotera* stipulations should have been dispositive and that

the Rescission "retroactively appl[ied] a new policy wholly erasing the dispositive significance of a *Sotera* stipulation," in violation of the APA and due process, Appx152; *see* Appx147-152. The Acting Director denied rehearing, Appx1-7, explaining, *inter alia*, that the Rescission was not retroactively applied to Motorola's IPR petitions because "a final decision on institution had not yet been made." Appx5. The Acting Director further explained that the "March 2025 Memo also permitted parties to request additional briefing to the extent they had arguments to present in view of the Rescission" but that here "neither party requested additional briefing" when it sought Director Review. Appx5.

The Acting Director explained that "Petitioner had the opportunity to argue, and in fact did make arguments, in view of the Rescission," Appx5; *see also* Appx123 (Motorola's submission arguing that the Rescission should have no impact on the institution decision because the Board did not "state any reliance on" the now-rescinded June 2022 Memo but instead "took a holistic view" of the *Fintiv* factors (quotation marks omitted)), and "cannot [on rehearing] now argue that

12

applying the rescission of the 2022 Interim Procedure Memo was improper," Appx5.

    **b. Second Set of IPRs**.  On March 18, 2025—after the Acting Director rescinded the June 2022 Memo—the Board instituted review on the second set of IPRs. Appx21-59, Appx11. As with the first set of IPRs, the Board took a holistic view, weighing the *Fintiv* factors and instituting review. Appx33. In response to Stellar's Request for Director Review, Motorola raised APA and due-process arguments, Appx132-133, but also argued that the Board's institution decision was correct even in view of the Rescission, Appx133-135. The Acting Director vacated the Board's decision and denied institution, stating that "the efficiency and integrity of the system are best served by denying institution in these cases for the same reasons as set forth in the [first set of IPRs] Director Review Decision." Appx13. The Acting Director also rejected Motorola's APA and due-process arguments, explaining that the Rescission was not retroactive because there had been no final decision on institution. Appx12. The Acting Director further explained that "both parties had the opportunity to present, and

Petitioner did present, arguments in view of the rescission." Appx12.
Motorola did not seek rehearing.

Motorola petitioned for a writ of mandamus to this Court, seeking
reversal of the Acting Director's denial of institution for the first and
second sets of IPR petitions on the grounds that the Acting Director had
violated the APA and Motorola's due-process rights.

## ARGUMENT

## I.    Motorola's statutory complaints are barred by 35 U.S.C. § 314(d).

In Section 314(d), Congress expressly precluded judicial review of
the Director's "determination . . . whether to institute an inter partes
review," providing that the decision is "final and nonappealable." 35
U.S.C. § 314(d). The Supreme Court in *Cuozzo* held that the "decision to
deny a petition [for IPR] is a matter committed to the Patent Office's
discretion." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016).
Accordingly, "no petitioner has a right to . . . institution." *Mylan Lab'ys
Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382. The
Supreme Court further clarified in *Thryv, Inc. v. Click-to-Call
Technologies, LP*, 590 U.S. 45 (2020), that 35 U.S.C. § 314(d)'s bar on

14

appeals from institution decisions means that there is no judicial review of the USPTO's compliance with even clear statutory provisions regarding IPR institution, *see id.* at 53-60.

This Court recognized that Section 314(d) does not bar this Court from "protect[ing] [its] prospective jurisdiction through mandamus" where the USPTO issues "[a] decision denying institution," which "prevents the Board from issuing any final decision that falls within our direct appellate jurisdiction." *Mylan*, 989 F.3d at 1380. But importantly, this Court has recognized that in light of Congress's decision to commit the institution decision to the Director's discretion and to prohibit appeals of such decisions, its mandamus jurisdiction is limited: "there is no reviewability of the Director's exercise of [her] discretion to deny institution except for colorable constitutional claims." *Id.* at 1382. "Given the limits on [the Court's] reviewability," *ultra vires* or other statutory arguments "cannot be a basis for granting [a] petition for mandamus" over a decision denying IPR institution. *Id.* at 1382-83.

These principles foreclose Motorola's mandamus petition insofar as it raises claims regarding statutory requirements, including the

15

APA. Whatever constitutional claims about the agency's decision not to institute an IPR Section 314(d) might permit litigants to raise through a mandamus petition, they do not include "run-of-the-mill statutory interpretation" questions reframed as constitutional violations. *Apple Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023); *see Mylan*, 989 F.3d at 1381-83 (rejecting two statutory challenges "[g]iven the limits on [the Court's] reviewability" through mandamus of decisions not to institute IPR).

Thus, Motorola's claims that the Rescission violated the APA because it failed to go through notice and comment (Pet. 21-25), was arbitrary and capricious (Pet. 29-33), or was impermissibly retroactive in violation of the agency's statutory authority (Pet. 25-29) necessarily fail. Motorola attempts to circumvent this conclusion by pointing to cases like *In re Power Integrations, Inc.*, 899 F.3d 1316 (Fed. Cir. 2018), to argue that its APA challenges raise "issues involving questions outside the scope of section 314(d), and [concern] actions by the agency beyond its statutory limits." Pet. 18 (quoting *Power Integrations*, 899 F.3d at 1321). But to the extent *Power Integrations* suggested that these

16

circumstances might be "potential candidates for mandamus," *see* 899 F.3d at 1321, such dicta came before this Court held that the scope of its mandamus jurisdiction is limited to only "colorable constitutional claims," *Mylan*, 989 F.3d at 1382; *see In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1371 (Fed. Cir. 2022) (applying *Mylan* to review a mandamus petition raising an Appointments Clause challenge to the Director's practices with respect to decisions denying IPR); *see also Thryv*, 590 U.S. at 54 n.6 (reserving the possibility that mandamus could be available in an "extraordinary case"). Motorola does not even acknowledge *Mylan*, let alone provide any justification for its attempt to circumvent this Court's carefully established limits on its mandamus jurisdiction over USPTO decisions declining to institute an IPR.[2]

---

[2] That the Board initially granted the petition is of no moment. Where, as here, a disappointed IPR petitioner challenges the agency's decision not to move forward to a final written decision—whether by denying institution in the first place or by later deinstituting—mandamus review is subject to the Section 314(d)-related limits this Court announced in *Mylan*. *See Mylan*, 989 F.3d at 1380-83; *see also, e.g.*, *Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1383 (Fed. Cir. 2016) (holding that like initial denials of institution, USPTO's "vacatur of its institution decisions and termination of the proceedings" are subject to Section 314(d)'s review bar).

Motorola is on no firmer ground arguing that it only seeks to raise APA challenges to the process through which the Rescission was issued, not to "the content of the Director's institution instructions." Pet. 18-19 (*quoting Apple*, 63 F.4th at 11). As an initial matter, it is clear that Motorola very much challenges the Director's Section 314(d)-insulated decision regarding institution, seeking to alter the Director's decision "to vacate the institution of IPRs." Pet. 1; *see also, e.g.*, Pet. 4 (arguing it has "no other avenue to obtain" the relief it seeks "as institution decisions are final and nonappealable" (citing 35 U.S.C. § 314(d))); Pet. 41 (seeking an order "to reinstate the Board's institution of Motorola's IPR petitions"). Indeed, Motorola candidly admits that it is not following the path set out in *Apple v. Vidal* by filing an APA challenge to the Rescission in district court precisely *because* it is seeking to change the non-institution decision. *See* Pet. 19 (arguing that "an independent APA lawsuit untethered from the institution decision would not allow Motorola to obtain meaningful relief" because it would not address the vacatur of previous decisions to institute IPRs).

18

Moreover, even setting aside *Mylan*'s clear instruction that mandamus is only appropriate for "colorable constitutional claims," this Court has already concluded that Section 314(d) precludes arguments challenging the contents of the Director's guidance to the Board about how to implement her delegated discretion. *See Apple*, 63 F.4th at 13 (barring APA challenges to "the instructions given by the Director to the Board as delegatee" under Section 314(d)). Here, Motorola claims that the Acting Director's Rescission of the June 2022 Memo—*i.e.*, her change to the contents of instructions to the Board about how to use the discretion she has delegated it—violated the APA as arbitrary and capricious or impermissibly retroactive. But under *Apple*, such challenges are barred by Section 314(d).

In *Apple*, this Court did recognize that a plaintiff, who was "seek[ing] prospective relief only" rather than relief in connection with any prior institution-related decision, 63 F.4th at 10, may bring in district court an independent claim that the Director was required to "promulgate the institution instruction through notice-and-comment rulemaking procedures," *id.* at 14. But Motorola has expressly

disclaimed that possible route (Pet. 19-20), making no attempt to demonstrate that it would have standing to seek such prospective-only relief even had it proceeded through a district-court APA suit. *Cf. Apple*, 63 F.4th at 15-17 (concluding plaintiff adequately demonstrated "a substantial risk that the harm will occur in the future because of the instructions" it contended should have gone through notice-and-comment procedures (quotation marks omitted)). Rather, it seeks to evade the limitations on both district-court APA review and this Court's mandamus jurisdiction by trying to mix-and-match elements of the two; Motorola cannot obtain relief unavailable under Section 314(d) through mandamus any more than it can through a district-court action.

## II.    Motorola's constitutional claims are meritless.

To be eligible for mandamus relief, a petitioner must show a "clear and indisputable" right to relief. *In re Dominion Dealer Sols., LLC*, 749 F.3d 1379, 1381 (Fed. Cir. 2014) (quotation marks omitted); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). Motorola cannot establish a "clear and indisputable" constitutional violation warranting a writ of mandamus requiring the agency to revisit the Director's decision to deny IPR institution under Motorola's preferred

20

instructions. To the contrary, Motorola's contentions that the USPTO violated due-process principles in exercising its discretion to deny the relevant IPR petitions are entirely without merit.

1.  To begin, it is far from clear that Motorola has the requisite interest to support any sort of due-process challenge. The Due Process Clause protects against the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. V. The threshold "inquiry in every due process challenge is [therefore] whether the plaintiff has been deprived of a protected interest" in liberty or property. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

The Supreme Court has explained that "[t]o have a property interest in a benefit," a person must "have a legitimate claim of entitlement to it," not just "an abstract need or desire" or "a unilateral expectation of" the benefit. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). And "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.*; *see*

*also, e.g.*, *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) ("[W]hen a statute leaves a benefit to the discretion of a government official, no protected property interest in that benefit can arise.") (collecting cases).[3]

Motorola claims that the June 2022 Memo "restricted" the Director's exercise of discretion such that it created a "'a legitimate entitlement' to consideration of [Motorola's] petitions on the merits without risking discretionary denial based on parallel district court

---

[3] Similarly, the Supreme Court has stated that "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam); *see also, e.g., In re Miller*, 828 F. App'x 717, 718 (Fed. Cir. 2020) (applying *Allied* to petition re evidentiary decision); *In re Synthes (U.S.A.)*, 346 F. App'x 583, 584 (Fed. Cir. 2009) (applying *Allied* to petition re district court's stay of proceedings). The Board has been delegated broad discretion over IPR decisions. Nothing in the statute requires the Acting Director to provide guidance on how the Board exercises that discretion. Motorola does not contend that any of the criteria the Acting Director employed are constitutionally impermissible, instead basing its challenge entirely on matters within the USPTO Director's discretion. *See infra* pp. 22-24; *see also Cuozzo*, 579 U.S. at 273 (explaining the "decision to deny a petition [for institution of IPR] is a matter committed to the Patent Office's discretion"). It is thus unclear how Motorola could satisfy the mandamus standard even if it could somehow make out a protected property interest in an institution decision the agency never has to grant.

proceedings." Pet. 34 (alteration and quotations marks omitted). But both granting IPR and articulating guidance about institution criteria are entirely discretionary matters and thus cannot support Motorola's asserted property interest. "The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution." *Mylan*, 989 F.3d at 1382. And nothing in the statute requires the Director or her delegees to explain the decision whether to institute an IPR. To the contrary, "[n]othing in the unreviewability principle [of Section 314(d)], . . . turns on whether the Director has provided an explanation." *Apple*, 63 F.4th at 13. "[T]he Supreme Court has rejected the notion that 'if the agency gives a "reviewable" reason for otherwise unreviewable action, the action becomes reviewable.'" *Id.* (quoting *Interstate Com. Comm'n v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987)). Accepting Motorola's asserted interest—to have its petitions considered under a particular set of entirely discretionary criteria—would permit any litigant to transform an agency's transparency regarding its exercise of discretion into a constitutional entitlement through the simple expedient of artful

framing. Motorola thus has no property interest in having its petitions resolved pursuant to a certain articulation by the Director as to how the Board should weigh the *Fintiv* factors.

Moreover, the factual presumptions underlying Motorola's arguments are mistaken. The June 2022 Memo did not bind the Director, *see infra* pp.31-32, and the Rescission did not foreclose Motorola's IPRs by instructing the Board to holistically evaluate the various *Fintiv* considerations—including submission of a *Sotera* stipulation—which may or may not support discretionary denial. Motorola's citations to cases where statutes or rules created some entitlement supporting a property interest are inapposite. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *cf. Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 605 (Fed. Cir. 1985) ("[A] procedure created by statute to govern [patent] litigation" is not "a property right subject to the protection of the Constitution.").[4]

---

[4] For similar reasons, this Court has explained that "IPRs do not differ significantly enough from . . . [other] mechanisms for reevaluating the validity of issued patents to constitute a Fifth Amendment taking." *Celgene Corp. v. Peter*, 931 F.3d 1342, 1359 (Fed. Cir. 2019). "[T]he

2. Even assuming Motorola could establish some property or liberty interest here, it could not make out a due-process violation. "Once a property interest is shown, all due process requires is notice and an opportunity to be heard." *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Here, the USPTO's publication of the change to its discretionary criteria gave Motorola notice, and Motorola had multiple briefing opportunities to be heard about the effects of that change and urge institution in light of it. *See supra* pp. 10-14. In both responses to the requests for Director Review, Motorola vigorously argued that the *Fintiv* factors—without application of the June 2022 Memo—supported institution. Appx122-128; Appx130-136; *see also* Appx132 ("Petitioner acknowledges that the February 28, 2025 Notice expresses a new policy.").

In fact—with respect to the first set of IPRs—in its response to Stellar's request for Director Review of the Board's institution decision,

---

differences between IPRs and district court proceedings . . . do not create a constitutional issue." *Id.* at 1362.

Motorola argued that the Rescission should have no impact on the institution decision because the Board did not "state any reliance on" the June 2022 Memo, but instead "took a holistic view" of the *Fintiv* factors.[5] Appx123 (quotation marks omitted). Motorola suggests that its arguments were limited by the five-page limit for oppositions to Director Review. Pet. 15. But, as the Acting Director noted in her rehearing denial, parties were "permitted . . . to request additional briefing to the extent they had arguments to present in view of the rescission" and Motorola never did so. Appx5. Moreover, Motorola argued in its rehearing request that the application of the Rescission violated the APA and the Constitution. Appx147-152. Having heard Motorola, the Director denied institution and later rehearing. Appx16-21; Appx1-7.

---

[5] This argument is in significant tension with the logical predicates of Motorola's current stance—that the denial on Director Review resulted from the Rescission and that had the Acting Director applied the June 2022 Memo, the institution decision would have been upheld.

Similarly, with respect to the second set of IPRs, Motorola raised its APA and due-process arguments in response to Stellar's request for Director Review, Appx132-133, and following the Director's decision to deny institution, chose not to seek rehearing. The relief Motorola wants is not to be heard—because it was heard—but for the USPTO to apply a former Director's discretionary criteria and reach a different outcome. The Due Process Clause requires no such remedy and certainly does not guarantee Motorola a specific outcome once heard.

3. Finally, Motorola's invocation of retroactivity and reliance principles fails. A "retroactive" rule is one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). As an initial factual matter, Motorola is wrong to suggest that the Rescission applied retroactively. Appx111. Because neither set of institution decisions here was final, Appx5, Appx12, any application of the Rescission to the institution decisions was necessarily prospective. However, even assuming the Rescission did operate retroactively with

respect to Motorola, this Court has made clear that the retroactivity analysis examines "not merely whether a change has occurred," but "the *nature and extent* of the change in the law," as well as "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (first quoting *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1363 (Fed. Cir. 2005); and then quoting *Landgraf*, 511 U.S. at 270).

Here, the application of the Acting Director's guidance to Motorola's IPR petitions did not affect any of Motorola's rights, because an IPR petitioner never has a right to institution, let alone the application of any particular set of discretionary criteria regarding institution. The statute contains no such criteria and the USPTO is "never compelled[] to institute an IPR." *Mylan*, 989 F.3d at 1382. Whether IPR is instituted or not, Motorola's substantive rights and obligations are unchanged. The institution decision neither invalidates the challenged patent claims nor ends a petitioner's duty not to infringe a patent. Motorola may prefer to challenge patent validity through IPR rather than in parallel district court proceedings, but the institution or

non-institution of IPR does not impose any substantive legal consequences on Motorola's conduct—past, present, or future.

Nor can Motorola articulate any reasonable reliance interest in the former Director's discretionary guidance. To the extent Motorola has suggested it altered its litigation strategy in expectation of a potential IPR (Pet. 32), it does not explain why such considerations would be relevant to a retroactivity analysis, which focuses on the "rights or obligations of the parties," rather than which "tribunal . . . is to hear the case." *Landgraf*, 511 U.S. at 274 (explaining that rules that "take[] away no substantive right but simply change[] the tribunal that is to hear the case" are not subject to the presumption against retroactivity (quotation marks omitted)).

Moreover, such reliance would be unreasonable given the discretionary nature of IPR institution decisions. The fundamental and mistaken premise driving Motorola's argument is, absent the Rescission, it would have been entitled to institution of IPR. But as explained above, "no petitioner has a right to . . . institution." *Mylan*, 989 F.3d at 1382.

29

In any event, Motorola points to no concrete ways in which it relied on the former Director's discretionary regime articulated in the June 2022 Memo. The *Sotera* stipulations Motorola filed in connection with the IPR petitions were contingent on institution and have no ongoing effect given the USPTO's denial of institution. *See* Appx116-121. Motorola suggests vaguely that it sought IPR "at considerable expense" in reliance on the June 2022 Memo, but it does not explain why in doing so it would be prejudiced by the shift in the way the USPTO weighs *Sotera* stipulations under the *Fintiv* analysis. Nor has Motorola indicated that it would have declined to seek IPR or modified its invalidity contentions if the Rescission had occurred prior to the filing of its petitions. On the contrary, Motorola asserted before the agency that the Board "did not state any reliance on the now-rescinded Guidance Memo" and "[i]nstead, . . . took a holistic view" when balancing the *Fintiv* factors. Appx123 (quotation marks omitted). On its view, even absent the June 2022 Memo, the *Fintiv* factors supported institution.

Next, even if Motorola did rely on the June 2022 Memo, that reliance would not have been reasonable. Motorola had no reasonable basis to assume that the June 2022 Memo would remain in place indefinitely or would apply to any IPR petitions it might file. The June 2022 Memo itself does not purport to bind the agency permanently. It claimed only to be "INTERIM" and said it would only remain in effect "until further notice." Appx99, Appx107. Given these clear statements of temporal limitation in the June 2022 Memo, any reliance on its continuation was entirely unjustified.

Motorola's repeated references to the fact that the June 2022 Memo describes itself as "binding agency guidance" are equally unavailing. *See, e.g.*, Pet. 33, 36 (quotation marks omitted). The June 2022 Memo was "binding" on Director Vidal's subordinates, *i.e.*, the Board; it did not purport to bind Vidal herself or any future Director. *See Apple*, 63 F.4th at 7 ("We have also made clear that any institution decision made by the Board as delegatee of the Director is subject to reversal by the Director."). Indeed, Motorola nowhere explains its

31

apparent theory that one Director's articulation of how she intended to exercise discretion could bind her successor's discretion as well.

## III.    Motorola cannot satisfy the remaining mandamus factors.

Even if it could meet the mandamus standard's demanding merits bar, Motorola could not satisfy the remaining two factors:  the absence of "adequate alternative means to obtain the relief" sought and a showing that "the writ is appropriate under the circumstances." *Dominion Dealer Sols.*, 749 F.3d at 1381 (quotation marks omitted); *see also Cheney*, 542 U.S. at 380-81.

### A.  Motorola has alternate means of relief.

The only harm Motorola claims is the denial of one specific avenue for challenging patent claims. *See* Pet. 19-20. In a hypothetical future case, a petitioner might contend that the USPTO violated the Constitution in the course of denying institution in a way that inflicted some independent harm, *e.g.*, by violating the Equal Protection Clause. But here, Motorola asserts no such harms and is at base simply seeking a means to invalidate the challenged patent claims, urging that it obtained institution decisions from the Board and should be entitled to

32

go forward with them. *See* Pet. 39-40. Given the nature of those asserted harms, Motorola has adequate means of relief, because it has at least two other avenues to challenge the patent claims. Motorola remains "free to litigate the . . . patent claims' validity in its own district court case" even absent institution. *Mylan*, 989 F.3d at 1383.[6] Motorola may also file a petition for ex parte reexamination. Motorola does not address these obvious alternative means of relief, much less carry its burden to show that they are inadequate in light of the particular harms it asserts here.

To the extent that Motorola is correct that its claims resemble the claims for prospective-only relief that this Court permitted to go forward in district court in *Apple*, then a district-court action would be the appropriate, alternative means of seeking such relief. But Motorola

---

[6] As noted, the *Sotera* stipulations that Motorola filed were conditioned on institution of its petitions for IPR. Appx118 ("[I]f the [Board] declines institution, then Motorola reserves the right to pursue the grounds of the denied petition or any other grounds in the parallel litigation."); Appx121 (same). Because the USPTO ultimately did not institute IPR, Motorola has waived no unpatentability defenses in the district court and thus remains free to seek relief by this "alternate means." Similarly, there is no estoppel under 35 U.S.C. § 315(e) in the absence of "a final written decision."

has, as noted above, disclaimed any interest in pursuing such APA litigation because it "would not allow Motorola to obtain meaningful relief" in connection with the Acting Director's decision to deny institution on Motorola's petitions, Pet. 19, thus underscoring that the dispute here is over whether Motorola can obtain institution of IPR.

Motorola has no right to challenge Stellar's patent claims via IPR, *see Mylan*, 989 F.3d at 1382, and can instead rely on invalidity proceedings before the district court or ex parte reexamination. Although Motorola may prefer to challenge Stellar's patent claims in an IPR, the fact that the alternate relief available is not of the type most preferred by a party does not make that relief inadequate or support a grant of mandamus. *See Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985); *Bryan v. McDonald*, 615 F. App'x 681, 684 (Fed. Cir. 2015) (unpublished).

### B.   A writ is inappropriate under the circumstances.

Finally, "even if the first two prerequisites [for mandamus] have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. For the reasons discussed above, (1) any

constitutionally protected interest Motorola can identify is marginal at best; (2) Motorola had notice and an opportunity to be heard after the rescission of the former Director's guidance; and (3) Motorola may still pursue its invalidity defenses in the district court litigation or file ex parte reexamination requests. Although Motorola suggests that "the Rescission has the effect of putting IPR petitioners facing parallel litigation in 'rocket docket' courts between a rock and a hard place," Pet. 38, it identifies no impairment of any legal right as a result of the Rescission and gestures only to some unspecified amount of delay and additional expense (beyond that necessitated by the district court proceedings) due to actions it took based on its (unwarranted) expectation that one Director's guidance on a purely discretionary matter would continue to be available to it.

Indeed, Motorola's attempt to force the current USPTO leadership to adhere to a prior Director's view of how best to exercise the broad discretion Congress afforded Directors in instituting IPRs and running the USPTO more generally raises serious political-accountability concerns. Granting relief here would inappropriately hamstring the

current Acting Director from responding to evolving conditions facing

the agency. *See United States v. Arthrex, Inc.*¸ 594 U.S. 1, 21 (2021).

Nothing in these circumstances indicates that this is the sort of

extraordinary situation that could warrant this Court's issuance of an

extraordinary writ.

## CONCLUSION

This Court should deny the petition for a writ of mandamus.

Respectfully submitted,

August 4, 2025

AMY J. NELSON
  *Acting Solicitor*

ROBERT J. McMANUS
  *Acting Deputy Solicitor*

PETER J. SAWERT
FAHD H. PATEL
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and Trademark*
    *Office*

BRAD HINSHELWOOD
  */s/ Laura E. Myron*
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*
  *Laura.e.myron@usdoj.gov*

36

# CERTIFICATE OF COMPLIANCE

I certify pursuant to FRAP 21(d) that the foregoing brief complies with the type volume limitation. The total number of words in the foregoing brief, excluding the table of contents, table of authorities, and signature block is 6,680 as measured by the word-processing software used to prepare this brief.

Dated: August 4, 2025          Respectfully submitted,

_/s/ Laura E. Myron_
LAURA E. MYRON
*Counsel for Acting Director of the U.S.*
*Patent and Trademark Office*