**No. 25-134**

United States Court of Appeals
for the Federal Circuit

In re Motorola Solutions, Inc.,
*Petitioner*

On Petion for a Writ of Mandamus to the United States Patent and
Trademark Office in IPR2024-01205, IPR2024-01206, IPR2024-
01207, IPR2024-01208, IPR2024-01284, IPR2024-01285,
IPR2024-01313 & IPR2024-01314

**BRIEF OF US\*MADE, THE NATIONAL RETAIL FEDERATION,
THE HIGH TECH INVENTORS ALLIANCE, ACT|THE APP
ASSOCIATION, AND THE ALLIANCE FOR AUTOMOTIVE
INNOVATION IN SUPPORT OF MOTOROLA SOLUTIONS AND
THE PETITION FOR RELIEF**

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

June 27, 2025

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

7.    The full name of the parties that I represent is US Manufacturers Association for Development and Enterprise, the National Retail Federation, the High Tech Inventors Alliance, ACT|The App Association, and the Alliance for Automotive Innovation

8.    There are no real parties in interest of parties that I represent

9.    There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent

10.   No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court

11.   I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

12.   No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

June 27, 2025                                          */s/ Joseph Matal*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

INTEREST OF AMICI CURIAE .................................................. vi

A NOTE ON BRIEFING .......................................................... 1

ARGUMENT ...................................................................... 2

    I.  It is clear and indisputable that an administrative agency such as the USPTO cannot apply new rules retroactively. 2

    II.  It is clear and indisputable that the USPTO's elimination of the *Fintiv* safe harbors is being applied retroactively— and is unconstitutional .................................................. 5

    III.  *Fintiv* and related guidance operate as rules for APA purposes .................................................................. 14

CONCLUSION ..................................................................... 19

# TABLE OF AUTHORITIES

## *Cases*

*Apple Inc. v. Seven Networks, LLC*, IPR2020-00156 (Jun. 15, 2020) 6

*Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273 (1983)..................................................................12, 13

*Board of County Commissioners of Weld County, Colorado v. EPA*, 72 F.4th 284 (D.C. Cir. 2023).......................................................... 5

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204 (1988).......... 2

*Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998)...........................13

*Chenault v. U.S. Postal Service*, 37 F.3d 535 (9th Cir. 1994) ..........13

*Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016) ..................10

*Durr v. Nicholson*, 400 F.3d 1375 (Fed. Cir. 2005) .......................... 3

*General Elec. Co. v. E.P.A.*, 290 F.3d 377 (D.C. Cir. 2002) .............15

*Heckler v. Chaney*, 470 U.S. 821 (1985).......................................18

*In re Apex Exp. Corp.*, 190 F.3d 624 (4th Cir. 1999) ......................13

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)......................2, 12

*McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317 (D.C. Cir. 1988)...................................................................................16

*Miller v. Florida*, 482 U.S. 423 (1987)...........................................11

*National Mining Ass'n v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014).18

*PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016)........................3, 11

*Ross v. Artuz*, 150 F.3d 97 (2nd Cir. 1998) ...................................13

*Satellite Broadcasting Co., Inc. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987)  3

*Steven I. v. Central Bucks School Dist.*, 618 F.3d 411 (3rd Cir. 2010) ........................................................................................13

*Stolz v. FCC*, 882 F.3d 234 (D.C. Cir. 2018) ................................... 4

*Texaco, Inc. v. Short*, 454 U.S. 516 (1982) .....................................13

*Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45 (2020)...............10

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012)......................................................................................12

### PTAB Decisions

*Advanced Micro Devices, Inc. and Pensando Systems Inc et al. v. Xtreamedge Inc et al.*, IPR2025-00223 (Jun. 12, 2025)...............16

*Advanced Micro Devices, Inc. v. Xtreamedge Inc et al.*, IPR2025-00223 (Jun. 12, 2025) ............................................................. 8

*Apple Inc. v. Haptic, Inc.*, IPR2024-01476 (Apr. 4, 2025)................. 8

*Celltrion Inc v. Regeneron Pharmaceuticals Inc.*, IPR2025-00456 (Jun. 25, 2025) .......................................................................... 9

*Charter Commc'ns, Inc. v. Adaptive Spectrum and Signal Alignment, Inc.*, IPR2024-01379 (Apr. 17, 2025)........................................... 8

*Cipla Ltd v. Gilead Sciences Inc.*, IPR2025-00033 (May 15, 2025) ... 8

*Cisco Systems Inc v. WSOU Investments LLC*, IPR2025-00429 (Jun. 25, 2025) ................................................................................. 8

*Dell Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01479 (Apr. 7, 2025)............................................................................ 8

*Ericsson Inc. et al. v. Procomm International Pte. Ltd.*, IPR2024-01455 (May 16, 2025) ............................................................. 8

*Ericsson Inc. v. Pegasus Wireless Innovation LLC*, IPR2025-00084 (Jun. 6, 2025) ......................................................................8, 16

*Google LLC and Samsung Elecs. Co., Ltd. v. Cerence Operating Co.*, IPR2024-01465 (Apr. 23, 2025)................................................. 8

*Google LLC et al. v. Mullen Industries LLC*, IPR2025-00197 (Jun. 25, 2025) .................................................................................. 8

*Google LLC v. Truesight Communications LLC*, IPR2025-00024 (Jun. 25, 2025) ............................................................................ 8

*HP Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01429 (Apr. 16, 2025) ................................................................ 8

*Innolux Corp v. Phenix Longhorn LLC*, IPR2025-00043 (May 15, 2025) .................................................................................. 8

*Klein Tools, Inc. v. Milwaukee Elec. Tool Corp.*, IPR2024-01401 (Jun. 9, 2025) ................................................................................16

*Lenovo (United States) Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01482 (Apr. 17, 2025) ........................................... 8

*Motorola Solutions, Inc. v. Stellar, LLC*, IPR2024-01205 (Mar. 28, 2025) .................................................................................. 7

*Nokia of America Corp. v. Pegasus Wireless Innovation LLC*, IPR2025-00036 (Apr. 25, 2025) .............................................8, 16

*Samsung Bioepis Co Ltd v. Regeneron Pharmaceuticals Inc.*, IPR2025-00176 (Jun. 2, 2025) ................................................... 8

*Samsung Elecs. Am., Inc. v. Collision Commc'ns, Inc.*, IPR2025-00011 (Apr. 28, 2025) ................................................................ 8

*Samsung Elecs. Co., Ltd. v. SiOnyx, LLC*, IPR2025-00064 (Apr. 10, 2025) ..............................................................................8, 16

*Samsung Elecs. Co., Ltd. v. Truesight Commc'ns LLC*, IPR2025-00123 (Apr. 21, 2025) ................................................................ 8

*Samsung Electronics America Inc. v. Cerence Operating Co.*, IPR2025-00458 (Jun. 25, 2025) ................................................... 9

*SAP America, Inc. v. Cyandia, Inc.*, IPR2024-01496 (Apr. 7, 2024) .. 8

*Shenzhen Tuozhu Technology Co., Ltd. v. Stratasys Inc. et al.*, IPR2025-00354 (Jun. 12, 2025) ...........................................8, 16

iv

*Solus Advanced Materials Co., Ltd. V. SK nexilis, Co., Ltd.*, IPR2024-01460 (Apr. 25, 2025) ............................................................... 8

*Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019 (Dec. 1, 2020) ........................................................................................... 6

*Sportradar AG v. SportsCastr Inc.*, IPR2025-00265 (Jun. 25, 2025) 8

*TCL Elecs. Holdings Ltd. v. Maxell Ltd.*, IPR2025-00134 (May 20, 2025) ................................................................................... 8

## Legislative Materials

157 Cong. Rec. S5429 (daily ed. Sep. 8, 2011) .............................. 7

H.R. Rep. No. 96-1307, 96th Cong. (1980) .................................. 10

Weekly Compilation of Presidential Documents, President Jimmy Carter, Dec. 12, 1980, Vol. 16, No. 50 ...................................... 10

## Other Authorities

USPTO Brief in *Apple v. Stewart*, No. 24-1864 ........................ 14, 17

USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings With Parallel District Court Litigation, Jun. 21, 2022 ......................................................................................... 6

## INTEREST OF AMICI CURIAE

The U.S. Manufacturers Association for Development and Enterprise is a nonprofit association representing companies manufacturing diverse goods in the United States.

The National Retail Federation is the world's largest retail trade association.

The Alliance for Automotive Innovation represents the full automotive industry, including the manufacturers producing most vehicles sold in the U.S. and equipment suppliers.

The High Tech Inventors Alliance represents leading technology providers and includes some of the most innovative companies in the world.

ACT | The App Association is a global policy trade association that represents entrepreneurs, innovators, and independent developers within the app ecosystem that engages with verticals across every industry.[1]

---

[1] No counsel for any party wrote any part of this brief. No party other than amici curiae's members contributed money that was intended to fund the preparation or submission of this brief. This brief is accompanied by a motion seeking leave to file.

**A NOTE ON BRIEFING**

On June 20, 2025, amici filed a brief in *In re SAP, Inc.*, No. 25-132.  In the event that this Court consolidates its consideration of these petitions, amici note that the first two sections of the present brief are substantially the same as the brief that amici filed in *In re SAP*.  The third section of this brief addresses USPTO arguments that agency "discretion" immunizes PTAB procedural rules from the constraints of the Administrative Procedure Act.  (The third section of amici's brief in *In re SAP* describes other retroactive rules that USPTO has adopted in recent months.)

\*    \*    \*    \*

Amici note that, in just the seven days since amici filed their brief in *In re SAP*, the USPTO has issued **29** additional retroactive *Fintiv* denials of IPR petitions that were backed by a *Sotera* stipulation and thus would not have been denied under the rules in place when the petitions were filed.  *See infra* n. 5.

**ARGUMENT**

**I.    It is clear and indisputable that an administrative agency such as the USPTO cannot apply new rules retroactively.**

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). "In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions." *Id.* at 266.

Limits on retroactive rulemaking apply with special force to executive agencies. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988). For this reason, "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in *express terms*." *Id.* (emphasis added).

Relatedly, "traditional concepts of due process incorporated into administrative law preclude an agency from penalizing a

2

private party for violating a rule without first providing adequate notice of the substance of the rule." *Satellite Broadcasting Co., Inc. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987). "The Due Process Clause limits the extent to which the Government may retroactively alter the legal consequences of an entity's or person's past conduct." *PHH Corp. v. CFPB*, 839 F.3d 1, 41 (D.C. Cir. 2016), *reinstated in relevant part and reversed on other grounds*, 881 F.3d 75 (D.C. Cir. 2018) (en banc). "Due process therefore requires agencies to 'provide regulated parties fair warning of the conduct a regulation prohibits or requires.'" *Id.* at 46 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)).

This Court has applied these principles to invalidate an agency's attempt to retroactively apply new rules governing appeals before the agency. In *Durr v. Nicholson*, 400 F.3d 1375 (Fed. Cir. 2005), a veteran had sought to appeal the denial of his benefit claim to the Court of Appeals for Veterans Claims ("Veterans' Court"). The Veterans' Court "dismissed his appeal for failure to file a timely notice of appeal." *Id.* at 1377. As this Court noted, between the time when the veteran had filed his notice of appeal and when the Veterans' Court dismissed the appeal, the Veterans' Court changed its rules to "impose[] new requirements." *Id.* at 1379. The

Veterans' Court applied this new rule retroactively to bar the veteran's appeal. *See id.* at 1378.

This Court reversed. It applied the principle that an agency cannot "promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* at 1380 (quoting *Bowen*, 488 U.S. at 208). The Court concluded that the Veterans' Court's "statutory grant of rulemaking authority does not contain any authorization for retroactive rulemaking." *Id.* It then held that applying the new rule "would have an impermissible retroactive effect if it would render invalid a notice that was valid when filed." *Id.*

The D.C. Circuit enforces the same bar on retroactive rulemaking. *Stolz v. FCC*, 882 F.3d 234 (D.C. Cir. 2018), holds that an agency must give fair notice of a new procedural rule before it can apply that rule to limit the arguments that a party can make in an application for review of the agency's actions. The review applicant in *Stolz* had sought to raise a new argument in a motion for reconsideration. *See id.* at 239. The FCC concluded that the argument was procedurally barred because it was not raised in a supplemental filing. *See id.*

4

The D.C. Circuit found that "[nothing] in the FCC's procedural regulations put claimants on fair notice that failure to file a nowhere-mentioned-in-the-rules supplemental documents will procedurally forfeit a claim." *Id.* The court reversed the agency's application of its procedural bar, holding that "[i]f an agency wants a procedural requirement to have the type of claim-foreclosing consequence the FCC attached here, it needs to be explicit about the rule and upfront about consequences of noncompliance." *Id.*; *see also Board of County Commissioners of Weld County, Colorado v. EPA*, 72 F.4th 284, 293 (D.C. Cir. 2023) ("We have made clear that because EPA lacks statutory authority to promulgate retroactive rules, it cannot impose on States new obligations with compliance deadlines already in the past.").

## II. It is clear and indisputable that the USPTO's elimination of the *Fintiv* safe harbors is being applied retroactively—and is unconstitutional.

By weighing an early trial date and progress in copending civil litigation against instituting review, the USPTO's *Fintiv* rule effectively imposes a shorter deadline for filing an IPR petition than the one-year deadline prescribed by 35 U.S.C. § 315(b)—in the USPTO's words, it "may require petitioners to act more quickly than

the maximum amount of time permitted by Congress." *Apple Inc. v. Seven Networks, LLC*, IPR2020-00156 (Jun. 15, 2020).

The rule that the USPTO adopted on June 21, 2022 ("the Vidal memo"),[2] created two safe harbors from this procedural bar: no *Fintiv* discretionary denial would be applied if the petitioner made a *Sotera* stipulation[3] not to raise prior art in district court that it reasonably could have raised in the IPR, and no bar would be applied if the petition presented "compelling merits" of invalidity.

In amici's experience, the Vidal memo was heavily relied on by petitioners—it brought much needed predictability to PTAB practice and afforded them time to draft a proper petition. For the very reasons why Congress set the statutory deadline at one year, petitioners often need more time to prepare a petition than what *Fintiv* allows: they need time to conduct a thorough prior art search and to learn which claims are being asserted in litigation.[4] Under

---

[2] *See* USPTO, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings With Parallel District Court Litigation, Jun. 21, 2022, *available at* https://tinyurl.com/2zj76t6n.

[3] *See Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019 (Dec. 1, 2020) (precedential decision).

[4] *See* 157 Cong. Rec. S5429 (daily ed. Sep. 8, 2011) (noting that Congress concluded that it was "appropriate to extend the section 315(b) deadline to one year" in order to "afford defendants a

the Vidal memo, by relying on the *Sotera* safe harbor, a petitioner could use its full statutory filing period and prepare a strong and targeted petition—and many did so.

The USPTO's February 28, 2025, rule change pulled the rug out from under all the petitioners who relied on the Vidal memo. Indeed, not only is a *Sotera* stipulation no longer a safe harbor; under the USPTO's new rule, a *Sotera* stipulation is almost worthless in overcoming an early trial date. The new rule was first applied by the Director in a set of decisions entered on March 28, 2025, and PTAB panels began applying the rule on April 4, 2025. Since then, by amici's count, at least 74 *inter partes* review petitions have been procedurally barred under *Fintiv* despite the petitioner's entry of a *Sotera* stipulation.[5]

---

reasonable opportunity to identify and understand the patent claims that are relevant to the litigation" and "in light of the present bill's enhanced estoppels").

[5] *See Motorola Solutions, Inc. v. Stellar, LLC*, IPR2024-01205, -01206, -01207, -01208 (Mar. 28, 2025); IPR2024-01284, -01285, -01313, -01314 (May 23, 2025); *Apple Inc. v. Haptic, Inc.*, IPR2024-01476, -01475 (Apr. 4, 2025); *SAP America, Inc. v. Cyandia, Inc.*, IPR2024-01496, -01495, -01432 (Apr. 7, 2024); *Dell Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01479, -01478 (Apr. 7, 2025); -01428 (Apr. 8, 2025); -01480 (Apr. 24, 2025); *HP Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01429 (Apr. 16, 2025); *Samsung Elecs. Co., Ltd. v. SiOnyx, LLC*, IPR2025-

00064, -00065 (Apr. 10, 2025); *Lenovo (United States) Inc. v. Universal Connectivity Technologies, Inc.*, IPR2024-01482, -01481 (Apr. 17, 2025); *Charter Commc'ns, Inc. v. Adaptive Spectrum and Signal Alignment, Inc.*, IPR2024-01379 (Apr. 17, 2025); IPR2025-00012, -00013 (Apr. 28, 2025); IPR2025-00087 (May 5, 2025); IPR2025-00088 (May 21, 2025); *Samsung Elecs. Co., Ltd. v. Truesight Commc'ns LLC*, IPR2025-00123, -01477 (Apr. 21, 2025); *Google LLC v. Cerence Operating Co.*, IPR2024-01465, -01464 (Apr. 23, 2025); *Nokia of America Corp. v. Pegasus Wireless Innovation LLC*, IPR2025-00036, -0037 (Apr. 25, 2025); *Ericsson Inc. v. Pegasus Wireless Innovation LLC*, IPR2025-00084 (Jun. 6, 2025); *Solus Advanced Materials Co., Ltd. V. SK nexilis, Co., Ltd.*, IPR2024-01460 (Apr. 25, 2025); *Samsung Elecs. Am., Inc. v. Collision Commc'ns, Inc.*, IPR2025-00011 (Apr. 28, 2025); *Cipla Ltd v. Gilead Sciences Inc.*, IPR2025-00033 (May 15, 2025); *Innolux Corp v. Phenix Longhorn LLC*, IPR2025-00043 (May 15, 2025); *Ericsson Inc. v. Procomm International Pte. Ltd.*, IPR2024-01455 (May 16, 2025); IPR2024-01452, -01454 (Jun. 25, 2025); *TCL Elecs. Holdings Ltd. v. Maxell Ltd.*, IPR2025-00134, -00135 (May 20, 2025); *Samsung Bioepis Co Ltd v. Regeneron Pharmaceuticals Inc.*, IPR2025-00176, -00233 (Jun. 2, 2025); *Advanced Micro Devices, Inc. v. Xtreamedge Inc.*, IPR2025-00223 (Jun. 12, 2025); *Shenzhen Tuozhu Technology Co., Ltd. v. Stratasys Inc.*, IPR2025-00354 (Jun. 12, 2025); *Google LLC v. Truesight Communications LLC*, IPR2025-00024, -00025 (Jun. 25, 2025); *Sportradar AG v. SportsCastr Inc.*, IPR2025-00265, -00266, -00268, -00269, -00273, -00275 (Jun. 25, 2025); *Google LLC v. Mullen Industries LLC*, IPR2025-00197, -00227, -00365, -00366, -00367, -00368, -00369 (Jun. 25, 2025); *Cisco Systems Inc v. WSOU Investments LLC*, IPR2025-00429 (Jun. 25, 2025); *Samsung Electronics America Inc. v. Cerence Operating Co.*, IPR2025-00458, -00459, -00460 (Jun. 25, 2025); *Celltrion Inc v. Regeneron Pharmaceuticals Inc.*, IPR2025-00456 (Jun. 25, 2025); *Cellco Partnership v. Pegasus Wireless Innovation LLC*, IPR2025-00137, -00138, -00290, -00291, -00292, -00293, -00317 (Jun. 26, 2025).

Every single one of these petitions was filed in 2024 or January 2025, before the petitioners could possibly have known about the USPTO's February 28, 2025, rule change.  Every single one was an important part of the petitioner's invalidity defense and cost over $100,000 to prepare and file.  Every single one of these petitions would have been immune from a *Fintiv* bar under the rules in place when the petition was filed.  And every single one of these petitions has now been denied because of the February 28, 2025, rule change.

These retroactive procedural denials are deeply prejudicial to petitioners.  The PTAB is the only adversarial forum for reviewing patent validity that is staffed by technical experts.  It was Congress itself that determined that district courts are insufficient for addressing the difficult scientific questions that often arise in patent cases.  Although civil litigation over patent validity has always been available, since 1980, Congress has authorized—and repeatedly reenacted and refined—post-issuance review at the USPTO.[6]  The proceedings serve the "important congressional

---

[6] *See* H.R. Rep. No. 96-1307, 96th Cong., at 4 (1980) (emphasizing the need "to have the validity of patents tested in the Patent office where the most expert opinions exist and at a much reduced cost")

objective" of applying the USPTO's expertise to "revisit and revise earlier patent grants," *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016), thereby addressing "overpatenting and its diminishment of competition." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020).   Congress decided that American businesses have a legitimate interest in operating freely from the assertion of invalid patents—and that PTAB proceedings are necessary to protect that interest.

This legislative judgment conforms with amici's experience: the PTAB is not simply another venue for litigating patents—the proceedings are different in kind, providing a markedly more reliable and accurate form of patent validity review.

The USPTO's retroactive repeal of access to PTAB proceedings is exactly the type of administrative action that the D.C. Circuit has condemned: "When a government agency officially and expressly tells you that you are legally allowed to do something," *PPH Corp.*,

---

(report to accompany H.R. 6933, authorizing reexamination of patents); Weekly Compilation of Presidential Documents, President Jimmy Carter, Dec. 12, 1980, Vol. 16, No. 50 (Statement on Signing H.R. 6933 into Law) ("Patent reexamination will . . . . will improve the reliability of reexamined patents, thereby reducing the costs and uncertainties of testing patent validity in the courts.").

839 F.3d at 47, "but later tells you 'just kidding' and enforces the law retroactively against you and sanctions you for actions you took in reliance on the government's assurances, that amounts to a serious due process violation." *Id.*  Amici, relying on the dispositive nature of their *Sotera* stipulations, took the time to prepare persuasive IPR petitions, only to be told "just kidding" after the petitions were filed.

There can be no doubt that the USPTO's new *Fintiv* rule is being applied retroactively—and constitutes a due process violation. "A law is retrospective if it changes the legal consequences of acts completed before its effective date." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (citation omitted).  The February 28, 2025, action plainly changes the "legal consequences" of relying on a *Sotera* stipulation—it converts it from an absolute safe harbor from the *Fintiv* procedural bar to a virtual irrelevancy, something that petitioners could not have known when they filed their petitions last year.

Although some procedural rules can be applied to pending cases without violating due process, deadlines and related procedural bars are different.  As *Landgraf* itself noted, "[a] new rule concerning the filing of complaints would not govern an action in

11

which the complaint had already been properly filed under the old regime." *Landgraf*, 511 U.S. at 275 n. 29;  *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 n. 14 (Fed. Cir. 2012) (declining to apply on appeal a "new rule of evidence [that was announced] after trial.") (citing *Landgraf*, 511 U.S. at 275 n. 29).

The key distinction for constitutional purposes is whether application of a new procedural bar to pending cases still affords parties a reasonable opportunity to comply with the rule.  As the Supreme Court has emphasized, "[t]he Constitution . . . requires that statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action."  *Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273, 286 n. 23 (1983) (citations omitted). "[S]tatutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect."  *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n. 21 (1982) (quoting *Terry v. Anderson*, 95 U.S. 628, 632 (1877)).[7]

---

[7] *See also Ross v. Artuz*, 150 F.3d 97, 100 (2nd Cir. 1998) ("[Even] where it is clear that Congress intended to foreclose suits on certain claims, the Constitution requires that statutes of limitations must

Notably, this constitutional limitation on retroactive rulemaking applies even to *legislative* rulemaking.  Even "[t]he *legislature* cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action."  *Brown v. Angelone*, 150 F.3d 370, 373 (4th Cir. 1998) (emphasis added); *see also Block*, 461 U.S. at 286 n. 23 (discussing congressional legislation); *Ross v. Artuz*, 150 F.3d at 100 (same).

Congress and the state legislatures do have some power to enact retroactive rules—within constitutional limits.  But an administrative agency has no power to apply rules retroactively *at all* (absent express authorization from Congress, which the USPTO conspicuously lacks).  This Court need not identify the limits on *congressional* power to retroactively change procedural bars in order

---

allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.") (citations and quotations omitted); *In re Apex Exp. Corp.*, 190 F.3d 624, 642 (4th Cir. 1999) (noting "the constitutional concerns that would be associated with a retroactive reduction in the statute of limitations."); *Steven I. v. Central Bucks School Dist.*, 618 F.3d 411, 414-15 (3rd Cir. 2010); *Chenault v. U.S. Postal Service*, 37 F.3d 535, 539 (9th Cir. 1994).

to conclude that the USPTO's foray into retroactive rulemaking is illegal *ab initio*.

## III. *Fintiv* and related guidance operate as rules for APA purposes.

In related litigation, the USPTO has argued to this Court that *Fintiv* does not qualify as a "rule" whose promulgation is subject to the Administrative Procedure Act's rulemaking requirements because it does not dictate how the Board must decide cases.  The USPTO has asserted that *Fintiv* "do[es] not require the Board to reach a particular result or otherwise foreclose the Board's ability to exercise genuine discretion and make individualized determinations."  USPTO brief in *Apple v. Stewart*, No. 24-1864, at 15; *see also id.* at 22 ("[*Fintiv*] leave[s] the Board ample discretion to determine how the factors should be balanced in individual cases.").

The agency also maintained to this Court that *Fintiv* is exempt from APA rulemaking requirements because it is a "statement of policy" that merely describes how the agency will act "prospectively."  *See id.* at 17, 18, 20.

But as Petitioner Motorola Solutions notes, the USPTO made the Vidal memo's safe harbors "binding" and mandatory.  *See* Pet. at 1, 8, 20-25.  Indeed, amici are not aware of a single case in

which entry of a *Sotera* stipulation was not outcome-determinative with respect to *Fintiv*'s application under the Vidal memo.  In addition, the new rule created by the withdrawal of the Vidal memo plainly is not being applied "prospectively."  Per the legal position advanced by the agency in *Apple v. Stewart*, the Vidal memo—and its repeal—qualify as rules.

Moreover, despite its multi-factor and purportedly "holistic" nature, the current version of *Fintiv*, in practice, operates as a rule. To distinguish a rule from a mere policy statement, courts look to whether it "is applied by the agency in a way that indicates it is binding."  *General Elec. Co. v. E.P.A.*, 290 F.3d 377, 383 (D.C. Cir. 2002); *see also id.* ("[A rule is a rule] if the affected private parties are reasonably led to believe that failure to conform will bring adverse consequences, such as denial of an application.") (citation omitted).

*Fintiv* creates a shortened filing deadline, barring access to review if a district court trial date would precede the Board's final written decision by any amount of time.[8]  Today, the only reprieve

---

[8] Petitions have been *Fintiv*-barred when a scheduled trial date would precede the Board's final decision by as little as two weeks. *See, e.g., Shenzhen Tuozhu Technology Co., Ltd. v. Stratasys Inc.*,

appears to be when the USPTO identifies "strong" merits at the petition stage, an exception that is being applied inconsistently at best.[9]  And the fact that a rule has exceptions, of course, does not detract from its nature as a rule.  See *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988).

The current rule's effect is particularly stark for defendants who are sued in the Eastern District of Texas.  Of the 74 petitions that amici have identified that were *Fintiv*-barred in recent months despite the petitioner's entry of a *Sotera* stipulation, 67 were barred because of copending litigation in that one judicial district.  *See supra* n. 5.  The USPTO's new *Fintiv* bar effectively allows the *plaintiff's* choice of a litigation venue to dictate whether the *defendant* can use congressionally authorized validity review at the PTAB.

------

IPR2025-00354 (Jun. 12, 2025); *Advanced Micro Devices, Inc. and Pensando Systems Inc. v. Xtreamedge Inc.*, IPR2025-00223 (Jun. 12, 2025).

[9] The USPTO has repeatedly *Fintiv*-denied petitions under the new regime despite finding that their merits were "strong."  *See, e.g., Samsung Elecs. Co., Ltd. v. SiOnyx, LLC*, IPR2024-00064, -00065 (Apr. 10, 2025); *Ericsson Inc. v. Pegasus Wireless Innovation LLC*, IPR2025-00084 (Jun. 6, 2025); *Nokia of America Corp. v. Pegasus Wireless Innovation LLC*, IPR2025-00036, -00037 (Apr. 25, 2025); *Klein Tools, Inc. v. Milwaukee Elec. Tool Corp.*, IPR2024-01401, -01400 (Jun. 9, 2025).

The USPTO also has argued that PTAB institution rules should be immune from APA requirements because they are "akin to an agency's discretion to initiate enforcement proceedings or to commence a prosecution."  USPTO Brief in No. 24-1864, at 27; *see also id.* at 25 (comparing *Fintiv* to "[the Attorney General's issu[ing] guidelines instructing Department of Justice officials to prioritize prosecution of violent crimes").

PTAB proceedings are not enforcement proceedings in which the agency investigates and prepares its case.  They are adjudicative proceedings in which the *petitioner* develops the evidence and brings the case to the agency—the PTAB simply decides whether the petitioner has met its burden of proof.  General statements of policy are appropriate for *investigative* proceedings because an agency typically cannot investigate and bring proceedings in every potential case.  *See National Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014) (a "general statement of policy" explains how an agency will exercise its "enforcement discretion"); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (enforcement discretion is unreviewable under the APA because "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing").

17

In the case of PTAB proceedings, by contrast, there is no question that the USPTO *can* address the merits of every PTAB petition that is presented to it—it *did* address the merits of almost every petition before *Fintiv*.  There is no enforcement-discretion justification for exempting *Fintiv* from APA rulemaking.

\*     \*     \*     \*

An agency may not invoke its purported "discretion" to insulate its operations from the APA and the Due Process Clause. When an agency formulates a rule that binds its policy discretion, such a rule must be properly promulgated—and cannot be applied retroactively to reject petitions for review that were proper under the rules in place when the petitions were filed.  The USPTO's application of its new *Fintiv* rule violates due process and exceeds the agency's authority.

## CONCLUSION

The petition for relief should be granted.

Respectfully submitted,

/s/ *Joseph Matal*

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

Dated:  June 27, 2025

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(3)    complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) and Federal Circuit Rule 40(i)(3) because it contains 3893 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); and

(4)    complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared using Microsoft Office Word and is set in the Bookman Old Style font in a size equivalent to 14 points or larger.

Dated:  June 27, 2025                    /s/ *Joseph Matal*