No. 25-134

# United States Court of Appeals for the Federal Circuit

———————◆———————

IN RE MOTOROLA SOLUTIONS, INC.,

*Petitioner,*

*On Petition for a Writ of Mandamus to the*
*Acting Director of the United States Patent and Trademark Office*
*Patent Trial and Appeal Board Nos. IPR2024-01205, IPR2024-01206,*
*IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285,*
*IPR2024-01313 & IPR2024-01314*

## BRIEF OF *AMICUS CURIAE* COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION IN SUPPORT OF MOTOROLA SOLUTIONS AND THE GRANT OF MANDAMUS

Joshua Landau
Computer & Communications
Industry Association
25 Massachusetts Ave NW
Suite 300C
Washington, DC 20001
jlandau@ccianet.org
(202) 470-3622

Counsel for *Amicus Curiae*

## CERTIFICATE OF INTEREST

I certify that the following information is accurate and complete to the best of my knowledge.

Dated:  June 27, 2025                    */s/ Joshua Landau*

                                         Joshua Landau

| 1. Represented Entities | 2. Real Parties in Interest | 3. Parent Corporations and Stockholders |
|---|---|---|
| Computer & Communications Industry Association | Same | None |
| | | |
| | | |

**4. Legal Representatives**

None

**5. Related Cases**

None

**6. Organizational Victims and Bankruptcy Cases**

Not Applicable

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................i

TABLE OF AUTHORITIES...................................................iv

STATEMENT OF INTEREST .............................................. 1

INTRODUCTION............................................................... 3

ARGUMENT ...................................................................... 5

    I.    A Rule Is a Rule, Even If Called Guidance ........................... 8

        A.    New Fintiv Is Applied in a Binding Fashion................ 9

        B.    Statistical IPR Outcome Data Shows New Fintiv's Binding Nature ............................................... 10

        C.    GAO Studies Indicate That Management Interfered With APJ Independence ........................... 11

    II.    The Office Created This Rule Without Required Process.... 12

    III.    Even if the Director Has Discretion to Deny Petitions, They Must Still Fulfill Their Statutory Obligation to Provide a § 314(a) Determination ............................................. 14

        A.    The Director's Obligations Under § 314 ...................... 14

        B.    The Director Is Obligated to Make, and Make Public, Their Determination of the Merits................. 16

        C.    Permissible Rules Must Meet Statutory Requirements ............................................................. 17

        D.    Agency Discretion Does Not Permit Violation of the Statute.................................................................. 18

        E.    Agency Discretion Is Not a Blank Check ..................... 19

    IV.    Because Discretionary Denials Are Only Necessary When a Patent Is Likely Invalid, They Are Inconsistent with Congress's Intent in Passing the AIA................................. 20

CONCLUSION ................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*Apple Inc. v. Vidal,*
    63 F. 4th 1 (Fed. Cir. 2023) ................................................................ 12

*Chevron USA Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ......................................................................... 17

*City of Arlington, Tex. v. FCC,*
    569 U.S. 290 (2013) ......................................................................... 14

*Cuozzo Speed Techs., LLC v. Lee,*
    136 S. Ct. 2131 (2016) ........................................................................ 5

*General Elec. Co. v. E.P.A.,*
    290 F.3d 377 (D.C. Cir. 2002) ...................................................... 9, 11

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) ............................................................... 19, 20

*McLouth Steel Products Corp. v. Thomas,*
    838 F.2d 1317 (D.C. Cir. 1988) ......................................................... 9

*Public Citizen, Inc. v. U.S. Nuclear Regul. Comm'n,*
    940 F.2d 679 (D.C. Cir. 1991) ........................................................... 9

*Thryv, Inc. v. Click-to-Call Techs., LP,*
    590 U.S. 45 (2020) ........................................................................... 15

*U.S. ex rel. Siegel v. Thoman,*
    156 U.S. 353 (1895) ..................................................................... 6, 16

**STATUTES**

35 U.S.C. § 311 ....................................................................... 18, 19

35 U.S.C. § 314 ................................................................... passim

35 U.S.C. § 315 ............................................................................ 19

35 U.S.C. § 316(a) ....................................................................... 18

iv

# OTHER AUTHORITIES

5 U.S.C. § 706 (2) ................................................................................ 17

CCIA, *Comments on NPRM PTO-P-2023-0048* (Jun. 20, 2023) ............ 13

Former Sen. Patrick Leahy, *Leahy: New USPTO rulemaking should seek to strengthen, not weaken, the America Invents Act,* The Hill (May 25, 2023) ................................................................................ 22

Office of Information and Regulatory Affairs, *Changes To Institution and Settlement Practices for Trial Proceedings Before the Patent Trial and Appeal Board*, RIN 0651-AD47 ........................................ 13

U.S. Gov't Accountability Off., GAO-23-105336, *Patent Trial and Appeal Board: Increased Transparency Needed in Oversight of Judicial Decision-Making* (2022) ........................................................ 11

Unified Patents, *Discretion Dominant: 45% of All 2021 Institutions Analyzed* Fintiv (Mar. 21, 2022) ........................................................ 21

Winston & Strawn, *The PTAB's Institution Grant Rate Has Dropped After Announcement of the New PTAB Discretionary Denial Guidance and Briefing Procedure* (May 5, 2025) .............................. 10

## STATEMENT OF INTEREST

The Computer & Communications Industry Association ("CCIA") is an international nonprofit association representing a broad cross section of communications and technology firms. For more than fifty years, CCIA has promoted open markets, open systems, and open networks. CCIA members[1] employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. CCIA regularly files *amicus* briefs in this and other courts to promote balanced patent policies.

CCIA's members are frequently involved in post-grant review of patents, including via the *inter partes* review ("IPR") process. In fact, CCIA members often appear on lists of frequent petitioners to the USPTO, reflecting the fact that many are frequently accused of patent infringement. In some cases, members proceed to file IPR petitions, while in other cases they pursue invalidity primarily at the district courts. In all such cases, stable, predictable rules that comply with the

---

[1] CCIA's members are listed at https://www.ccianet.org/members.

1

statute enacted by Congress are critical to making their decision. The USPTO's new rule exemplifies an unstable, unpredictable process for creating rules, one conducted without notice and comment and without compliance with the Congressional statute under which the Office operates.

Pursuant to Fed. R. App. P. 29(a)(4)(e), no counsel for a party to the case underlying the pending petition for writ of mandamus authored this brief in whole or in part, and no party or party's counsel made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus* or its counsel made a monetary contribution to fund the preparation or submission of this brief.

## INTRODUCTION

A rule by any other name remains a rule. The nature of the recent memorandum renders it a rule, even when described as "guidance." And the Acting Director is applying the new rule retroactively, disrupting the expectations of petitioners, while simultaneously claiming that "settled expectations" are critical to the patent system. This is not the patent system Congress created when it passed the America Invents Act ("AIA").

Here, the statutory language imposes certain procedural requirements on the USPTO. The USPTO has some rulemaking power regarding IPRs—but must still comply with the Administrative Procedure Act ("APA") to promulgate rules, with the USPTO's rulemaking power cabined by the APA and AIA. The procedure the Acting Director has created and is employing, including in this case, was not created via an APA-compliant process. It also fails to meet the Office's statutory responsibilities under the AIA. In particular, it fails to comply with 35 U.S.C. § 314.

The AIA does grant some discretion to the Director regarding institution of an IPR. Unfortunately, the Patent Office expanded the

3

concept of such discretion far beyond any reasonable interpretation of the statute, claiming the unreviewable power to deny petitions for any reason whatsoever—or none.  Even if the discretion granted to the Director truly extends to such an arbitrary and capricious level, they must still comply with their statutory obligations to explain the merits. The new rule fails to do so.

While appeals from institution decisions are generally not available, mandamus remains appropriate in cases of illegitimate agency action.  Absent any other avenue for judicial review, parties are forced to turn to mandamus to ameliorate the USPTO's failure to meet its statutory responsibilities.  This Court should grant that extraordinary remedy.

# ARGUMENT

The present petition presents a clear case for mandamus. The USPTO has, without notice or opportunity for comment, imposed an outcome-determinative rule on petitioners for IPR. Beyond the lack of notice and comment, the rule adopts a position that the USPTO explicitly did not issue through rulemaking despite earlier statements that they would do so. In at least one circumstance, an attempt to create such a rule was withdrawn after opposition from other members of the Administration.

This improper rule is particularly concerning given that there is no other avenue for challenge to an improper denial of institution in a given case, requiring mandamus to obtain any relief at all. While appeals are generally limited from institution decisions, they are not so limited where "the grounds for attacking the decision to institute *inter partes review* consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review."[2] Here, there is no statutory hook to hang

_____

[2] *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016).

the Acting Director's decisions upon, rendering the 35 U.S.C. § 314(d)

appellate bar inapplicable.

Even were the rule found to be procedurally proper in its creation

and substantively applicable despite the lack of any language providing

this discretion, the procedure the USPTO has created remains

inconsistent with the statutory language.  In 35 U.S.C. § 314(a), the

Director is instructed to deny a petition unless the Director "*determines*

that the information presented in the petition filed under section 311

and any response filed under section 313 shows that there is a

reasonable likelihood that the petitioner would prevail with respect to

at least one claim." (emphasis added).  In conjunction with this

threshold bar, § 314(c) requires that the Director "*shall* notify the

petitioner and patent owner, in writing, of the Director's *determination*

*under subsection (a).*" (emphasis added).

This is not a discretionary requirement.[3]  Any process which does

not include a determination of whether the petitioner would prevail

---

[3] *See U.S. ex rel. Siegel v. Thoman*, 156 U.S. 353, 360 (1895) ("In the first the word "shall" and in the latter provision the word "may" is used, indicating command in the one and permission in the other.")

under the statute does not meet the Director's statutory obligation. The process created by the Acting Director's new rule does not include any such determination under the statute.

Even if the Director has unfettered discretion to deny petitions for IPR, any rule regarding such discretion must be created in a procedurally proper way and must comply with the statute. Further, even if the discretion to deny is unlimited, that does not change the Director's obligations under the statute. Assuming, for the sake of argument, that a Director can claim the power to reject a petition for arbitrary reasons not contained in the statute—because it was filed at a time they object to, because the patent was issued years earlier, or for any other reason—the Director must still meet their statutory obligation to provide a reasoned determination on the challenge's merits.

Finally, *every* discretionary denial is an admission by the USPTO that the patent is likely invalid but that they will still refuse to review it. Were claims of the patent not likely invalid, the USPTO could reject it on the merits. Any policy which results in patents that the USPTO believes are likely invalid being left in force cannot be squared with the

7

Congressional intent for the IPR program—an efficient process for
invalidating patents that never should have been issued.

For all these reasons, this Court should grant mandamus,
rejecting the USPTO's attempts to improperly constrict access to IPR,
and overturn the recent rule as inconsistent with the Director's
responsibilities under the AIA.

## I.    A Rule Is a Rule, Even If Called Guidance

Over the past five years, the discretionary denial rule—often
referred to as the *Fintiv* rule—has gone through numerous forms, each
differing substantially from the prior one.  Each one has been issued via
Directorial fiat, rather than via notice-and-comment rulemaking.
Because it has not engaged in APA rulemaking on its discretionary
denial practices—despite thousands of stakeholder submissions in
requests for comment or advance rulemaking processes, the Office has
consistently referred to these memoranda as "guidance", rather than
rules.

Despite the label, the new *Fintiv* rule is not guidance.  It qualifies
as a substantive rule for APA purposes, placing it under the obligation
to use notice-and-comment rulemaking if it is to be adopted.

8

A.          *New* Fintiv *Is Applied in a Binding Fashion*

To distinguish a rule from mere guidance, courts look to whether it "is applied by the agency in a way that indicates it is binding."[4]  This is not just part of the analysis, but a critical part. "[C]ases concerned with the policy statement/substantive rule distinction confirm that the agency's application of a disputed rule is crucial."[5]

The practical impact of *Fintiv*, including this most recent iteration, is clear: it is binding in effect, even if not by description.  In particular, the presence of copending litigation is effectively a bar on institution.  While the Office points to exceptions such as "other considerations bearing on the Director's discretion," such exceptions do not convert a rule into guidance.[6]  They only make its application less predictable.

---

[4] *General Elec. Co. v. E.P.A.*, 290 F.3d 377, 383 (D.C. Cir. 2002); *see also id.* ("[A rule is a rule] if the affected private parties are reasonably led to believe that failure to conform will bring adverse consequences, such as denial of an application.").

[5] *Public Citizen, Inc. v. U.S. Nuclear Regul. Comm'n*, 940 F.2d 679, 682-83 (D.C. Cir. 1991).

[6] See *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988).

B.          *Statistical IPR Outcome Data Shows New*
            Fintiv's *Binding Nature*

The imposition of the new *Fintiv* rule has had a measurable impact on questions of institution in even the short time it has been in place, suggesting it goes far beyond guidance and into the realm of a binding rule.  In the two months before adoption of the March memorandum, PTAB grant rates were 69%, with 15% of denials being discretionary. [7]  Discretionary denial was the outcome in only 4.6% of all cases.[8]

But in the single month after the memorandum's issuance, the grant rate dropped to 45%.[9]  Discretionary denials represented 59% of all denials, and a third of *all* petitions were discretionarily denied.[10] Such a cataclysmic shift in interpretation of a statute strongly suggests

---

[7] *See* Winston & Strawn, *The PTAB's Institution Grant Rate Has Dropped After Announcement of the New PTAB Discretionary Denial Guidance and Briefing Procedure* (May 5, 2025), https://www.winston.com/print/v2/content/1100714/the-ptabs-institution-grant-rate-has-dropped-after-announcement-of-the-new-ptab-discretionary-denial-guidance-and-briefing-procedure.pdf.
[8] *Id.*
[9] *Id.*
[10] *Id.*

that the memorandum is a binding rule under the standard of whether it "is applied by the agency in a way that indicates it is binding."[11]

C.    *GAO Studies Indicate That Management Interfered With APJ Independence*

While the challenged version of *Fintiv* is clearly a rule, this does not insulate prior editions. In particular, despite the Office's characterization of previous rules as non-binding guidance to the Board, it functioned as a binding rule. In a recent GAO study, 75% of PTAB judges surveyed stated that the "oversight practiced by office directors and board management has affected their independence", and nearly three-quarters of those judges stated that the impact was large.[12] Characterizing a rule as non-binding is absurd when "the majority of judges we surveyed who reported working on AIA proceedings indicated they have felt pressure to change or modify an aspect of their decision in an AIA proceeding based upon the Management Review process."[13]

---

[11] *General Elec. Co.,* 290 F.3d at 383.
[12] U.S. Gov't Accountability Off., GAO-23-105336, *Patent Trial and Appeal Board: Increased Transparency Needed in Oversight of Judicial Decision-Making* 23 (2022), https://www.gao.gov/assets/gao-23-105336.pdf.
[13] *Id.* at 25.

This interference was present under prior versions of *Fintiv*, including those created during the Acting Director's previous USPTO tenure. While new *Fintiv* removes discretionary denial from APJs, the evidence is clear: *Fintiv* guidance has never been just guidance. It will be less so now that its author is also its implementer.

The Office's continued employment of a rule for which it cannot complete required rulemaking cannot be blessed.

## II.  The Office Created This Rule Without Required Process

This Court previously reviewed the question of whether an APA procedural challenge to the mechanism of creation of a rule is permissible, finding that it is.[14]  In fact, when the agency has engaged in attempts to codify *Fintiv* rules less favorable to petitioners, they have been rejected.

The conclusion that *Fintiv* is a rule improperly adopted is buttressed by the Office's prior attempts to adopt a discretionary denial rule via the rulemaking process.  The Office has, at least twice, sought

---

[14] *See Apple Inc. v. Vidal*, 63 F. 4th 1 (Fed. Cir. 2023).

to pursue a discretionary denial rule through rulemaking.[15]  In each case, the Office received significant criticism of its proposal and was not permitted to issue any such rule after it was reviewed by other accountable Executive branch officials.[16]  CCIA was among hundreds of commenters expressing concern that the potential rule would violate the AIA, arbitrarily cutting off access to post-grant review.[17]  Given this repeated history of attempting to issue a discretionary denial rule through rulemaking, it is clear that the Office also views *Fintiv* as a rule and that it can only be adopted through rulemaking.

Given the agency's continued attempts to apply the *Fintiv* rule without engaging in rulemaking, instructing USPTO to rescind its

---

[15] *See* Office of Information and Regulatory Affairs, *Changes To Institution and Settlement Practices for Trial Proceedings Before the Patent Trial and Appeal Board*, RIN 0651-AD47, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=0651-AD47 (showing non-issuance of rule); *see also* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202010&RIN=0651-AD47 (showing same for prior version of rule).
[16] *Id.*
[17] *See* CCIA, *Comments on NPRM PTO-P-2023-0048* (Jun. 20, 2023), https://ccianet.org/wp-content/uploads/2024/06/USPTO-CCIA-Comments-on-Discretionary-Denial-NPRM-PTO-P-2023-0048.pdf.

*Fintiv* rule unless and until it creates such a rule via notice and comment via mandamus is both necessary and proper.

## III.    Even if the Director Has Discretion to Deny Petitions, They Must Still Fulfill Their Statutory Obligation to Provide a § 314(a) Determination

While the use of discretionary denial is backed by neither logic nor statute, even if one assumes that it is permissible, the procedure created by the Acting Director and applied in this case fails to meet the Director's basic statutory obligations.  When an agency "act[s] improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires"[18] and must be set aside.

### A.       *The Director's Obligations Under § 314*

The AIA, which created the IPR system, imposes certain obligations on the Office.  Most relevantly, the Director is required to not institute a petition unless they have determined that there is "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."[19]  While institution itself has been held to be discretionary, given the use of "may not

_____

[18] *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 296 (2013).
[19] 35 U.S.C. § 314(a).

14

institute," other obligations are not. The Director has no discretion to accept a petition outside of time. The Director has no discretion to issue their determination after the § 314(b) deadlines. And most relevant here, the Director has no discretion regarding making and publicizing a determination.

Faced with a petition, the Director is required to reach a determination regarding whether "the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." This is the sole reference to a "determination" to be made by the Director in § 314(a).[20]

But this is not the sole reference to a determination in § 314. In § 314(c), referencing § 314(a), the AIA requires that "the Director **shall** notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice

---

[20] *Cf. Thryv, Inc. v. Click-to-Call Techs., LP*, 590 U.S. 45, 53 (2020) (distinguishing the "determination under § 314(a) of the question whether the petitioner has a reasonable likelihood of prevailing" from the § 314(d) determination of whether to institute.)

15

available to the public as soon as is practicable." (emphasis added).

"Shall" is a quintessentially mandatory word in American law.[21]

Regardless of what determination the Director reaches, they must

proceed to notify petitioner and patent owner of their determination

and make it publicly available.

> B.        *The Director Is Obligated to Make, and Make*
>           *Public, Their Determination of the Merits*

These provisions mean that the Director cannot, even when

exercising discretion to deny a petition, avoid reaching a conclusion on

the merits of the case.  To satisfy the statute, whether instituting or

denying a petition the Director must provide their merits determination

to the parties and the public record.  This is consistent with the overall

statutory scheme—to know whether the Office can institute a

proceeding, the Director must reach a conclusion regarding a

reasonable likelihood of success.[22]

---

[21] *See ex rel Siegel*, *supra* n. 3.

[22] The Office's current discretionary denial rule, formally adopted after the denials in this case, is further inconsistent with this aspect of the statute.  Under the approach she has adopted, the first step is to "determine whether discretionary denial of institution is appropriate." This determination is not the determination contemplated by 35 U.S.C.

C.          *Permissible Rules Must Meet Statutory Requirements*

The APA makes clear that, when an agency's action is "without observance of procedure required by law" or "otherwise not in accordance with law" it must be set aside.[23]  Here, it is both.  The discretionary denial rule fails to implement the required public determination.  And it also fails to comply with the overall statutory scheme created by Congress.

It is a core principle of administrative law that, where "Congress has directly spoken to the precise question at issue" and "the intent of Congress is clear" then "that is the end of the matter."[24]   In those circumstances, the agency "must give effect to the unambiguously expressed intent of Congress."[25]   Here, with respect to the proposed rules, Congress has spoken directly to relevant questions: who can file a petition, how long they have to file it, what standard to apply, which

---

§ 314(a).  The current discretionary determination rule omits any requirement to issue a reasoned determination of the merits.
[23] 5 U.S.C. § 706 (2)(A), (D).
[24] *Chevron USA Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (overruled on other grounds).
[25] *Id.*

patents are subject to review, what estoppel (if any) takes effect, and when that estoppel takes effect.[26]  And it has done so clearly.

That is the end of the matter.  The USPTO lacks authority to institute contradictory rules.  And where agency action does not comply with statute, the APA requires that it be set aside.

### D.        *Agency Discretion Does Not Permit Violation of the Statute*

While Congress provided the Director with some amount of discretion on institution, that discretion was intended to fill in gaps, not to contradict the statutory design.  Gaps that discretion could fill include defining what qualifies as abuse of process or discovery, or what justice requires in the course of discovery.[27]

But Congress also set a number of clear limits on the Director's discretion over institution.  Institution may only occur when the Director determines that a "reasonable likelihood that the petitioner would prevail" exists.[28]  The Director must inform the petitioner, the

---

[26] *See* 35 U.S.C. § 311 *et seq.*
[27] 35 U.S.C. § 316(a)(5), (a)(6).
[28] 35 U.S.C. § 314(a).

patent owner, and the public of that determination.[29]  Congress gave

the petitioner one year after service of complaint to file their petition.[30]

And Congress said that "any person who is not the patent owner" may

file a petition against a patent.  It did not limit the universe of patents

against which a petition may be filed.[31]  The agency's new

interpretation contradicts all of those limits and must be set aside.

E.          *Agency Discretion Is Not a Blank Check*

The Supreme Court has spoken both clearly and recently on this

exact question.  "When the best reading of a statute is that it delegates

discretionary authority to an agency, the role of the reviewing court

under the APA is, as always, to independently interpret the statute and

effectuate the will of Congress subject to constitutional limits."[32]

The Office's interpretation of the statute as providing unlimited

discretion is entitled to no deference from the Court.  The deference

owed by courts to the Executive is most warranted "when an Executive

Branch interpretation was issued roughly contemporaneously with

---

[29] 35 U.S.C. § 314(c).
[30] 35 U.S.C. § 315(b).
[31] 35 U.S.C. § 311.
[32] *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024).

19

enactment of the statute and remained consistent over time."[33]  Here,

neither is true.  The discretionary denial policies and considerations

have fluctuated constantly since their creation, nearly a decade after

passage of the AIA.

## IV.    Because Discretionary Denials Are Only Necessary When a Patent Is Likely Invalid, They Are Inconsistent with Congress's Intent in Passing the AIA

As noted in Section III, *supra*, even when issuing a discretionary

denial, the Director is still obligated to provide a public determination

of the reasonable likelihood that at least one challenged claim is invalid.

As a result, even if the USPTO wishes to issue a discretionary denial,

the Director is still obligated to analyze the merits of the case and

inform the parties and the public of the merits of the case.  And if the

Director has analyzed the merits and finds that there is no likelihood of

success, then a discretionary denial is unnecessary—they can simply

deny the petition on the merits.

It is only when the analysis shows that there is a likelihood of

success—that at least one claim is likely invalid—that a discretionary

---

[33] *Id.* at 2258.

denial will result in a different outcome than the merits dictate.[34]  And

because the merits analysis must always be conducted, discretionary

denials do not even result in increased efficiency for the Office, but

rather create additional burdens on petitioner, patent owner, and PTAB

alike.

Because of this, discretionary denials only have a differential

impact on outcome when the Director has determined that at least one

claim of the patent is likely to be invalid.  In those circumstances, and

only those circumstances, a discretionary denial permits the Director to

deny institution *even though she believes the patent is likely invalid at*

*least in part*.

That is not the system Congress intended to create.  Indeed, as

former Senator Leahy—one of the namesakes of the Leahy-Smith

America Invents Act—said, "each petition should be heard on the merits

---

[34] *Cf.* Unified Patents, *Discretion Dominant: 45% of All 2021 Institutions Analyzed* Fintiv (Mar. 21, 2022), https://www.unifiedpatents.com/insights/discretion-dominant-45-of-all-2021-institutions-analyzed-fintiv.  The Unified Patents analysis notes that while 45% of all 2021 institution decisions engaged in a *Fintiv* analysis, only 4% of institution decisions involving a denial on the merits did so.

and decided on the validity of the patent."[35]  Discretionary denial creates a system where the opposite is true, with the validity of the patent no longer relevant in the face of factors that are found nowhere in the statute.  It is concerning that the agency whose role is to ensure that only valid patents are issued and remain in force is not just abdicating that mission, but also attempting to shield its abandonment from judicial review.  Even were prior Sections not sufficient justification for granting mandamus, the Acting Director's willful destruction of the statute under which she claims to operate would be.

---

[35] Sen. Patrick Leahy, *Leahy: New USPTO rulemaking should seek to strengthen, not weaken, the America Invents Act,* The Hill (May 25, 2023), https://thehill.com/opinion/congress-blog/4020170-leahy-new-uspto-rulemaking-should-seek-to-strengthen-not-weaken-the-america-invents-act/.

## CONCLUSION

For all the reasons set forth above, this Court should grant Motorola's petition for mandamus, ordering the USPTO to rescind its misnamed "guidance" and instructing it to provide a reasoned determination of the likelihood of success on invalidity in all cases.

June 27, 2025                    Respectfully submitted,


                                 /s/ Joshua Landau

                                 Joshua Landau
                                 Computer & Communications
                                 Industry Association
                                 25 Massachusetts Ave NW
                                 Suite 300C
                                 Washington, DC 20001
                                 202-470-3622
                                 Counsel for *Amicus Curiae*
                                 Computer & Communications
                                 Industry Association

United States Court of Appeals
for the Federal Circuit
*In re Motorola Solutions, Inc., 25-134*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief was printed using a 14 point Century Schoolbook font.

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 27.  According to Microsoft Word 2021, the word

processing system used to prepare this document, the brief contains

3887 words, excluding the parts of the document exempted by Federal

Rule of Appellate Procedure 32(f).


June 27, 2025                         /s/ Joshua Landau

                                    Joshua Landau
                                    Counsel for *Amicus Curiae*
                                    Computer & Communications
                                    Industry Association

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, I caused the foregoing

**Brief of Amicus Curiae Computer & Communications Industry Association in Support of Motorola Solutions and the Grant of Mandamus** to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.


June 27, 2025                          _____/s/ Joshua Landau_____

Joshua Landau
Counsel for *Amicus Curiae*
Computer & Communications
Industry Association