2025-134

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

IN RE MOTOROLA SOLUTIONS, INC.,
*Petitioner*.

Petition for a Writ of Mandamus to the
Director of the United States Patent and Trademark Office,
Patent Trial and Appeal Board Nos. IPR2024-01205, IPR2024-01206,
IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285,
IPR2024-01313 & IPR2024-01314

**AMICUS CURIAE BRIEF
OF UNIFIED PATENTS, LLC IN SUPPORT OF
MOTOROLA SOLUTION INC.'S PETITION FOR A WRIT OF
MANDAMUS**

Michelle Aspen
Jonathan Stroud
Roshan Mansinghani
Jordan Rossen
Unified Patents, LLC
4445 Willard Avenue
Suite 600
Chevy Chase, MD 20815
(559) 214-3388
(202) 805-8931
(214) 945-0200
(202) 701-1850

*Counsel for Amicus Curiae*

# Certificate of Interest

Pursuant to Federal Circuit Rules 27(a)(3) and 47.4, counsel for amicus curiae Unified Patents, LLC certifies the following:

**1.     Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Unified Patents, LLC

**2.     Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3.     Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

The following are parent corporates for Unified Patents, LLC: UP HOLDCO INC., Unified Patents Holdings, LLC, Unified Patents Acquisition, LLC, Unified Patents Management, LLC.

No publicly held companies own 10% or more stock in Unified Patents.

**4.     Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

**5.     Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)          ☐ No          ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6.     Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

June 27, 2025                                             */s/ Michelle Aspen*
                                                            Michelle Aspen

# **Table of Contents**

Certificate of Interest.................................................................................i

Table of Contents .................................................................................. iii

Table of Authorities..............................................................................iv

Interest of Amicus Curiae...................................................................... 1

I.     Background ......................................................................................2

     A.    2020–2021: *Fintiv*................................................................2

     B.    2022: The Office Study and 2022 Memo ..............................3

     C.    2023–2024: The ANPRM and NPRM..................................4

     D.    2025: The Office Reverses Itself Without Explanation........5

II.    Argument ........................................................................................7

     A.    The Office's *Fintiv*-plus Rule Violates the APA.................7

     B.    Mandamus Is Appropriate ................................................. 16

III.   Conclusion ................................................................................... 17

Certificate of Compliance with Type-Volume Limitations ................... 18

Certificate of Service............................................................................. 19

# Table of Authorities

**PAGE(S)**

**COURT CASES**

<u>Supreme Court Cases</u>

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1998)................................................................11

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (1998)................................................................16

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)................................................................11

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)..................................................................8

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)................................................................12

*Morton v. Ruiz*,
    415 U.S. 199 (1974)................................................................10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..................................................................11

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)................................................................10

<u>Appellate Court Cases</u>

*In re Google LLC*,
    58 F.4th 1379 (Fed. Cir. 2023)..............................................14

*Mada-Luna v. Fitzpatrick*,
    813 F.2d, 1006 (9th Cir. 1987)................................................8

*SKF USA, INC. v. US* ,
    263 F. 3d 1369 (Fed. Cir. 2002).....................................12, 15

*Thompson v. Barr*,
    959 F.3d 476, 484 (1st Cir. 2020)..........................................12

<u>District Court Cases</u>

*Apple Inc. v. Iancu*,
  Doc. 165 (Mar. 31, 2024) (appeal docketed, No. 24-1864) ........................... 9


**PTAB Decisions**

*Apple Inc. v. Fintiv, Inc*.,
  IPR2020-00019, No. 11 (Mar. 20, 2020) ........................................... 2, 13-15

*Cellco P'ship d/b/a/ Verizon Wireless v. Pegasus Wireless Innovation LLC*,
  IPR2025-00137, No. 17 (Jun. 26, 2025) ....................................................... 15

*Dabico Airport Sol'ns v. Axa Power APS*,
  IPR2025-00408, No. 21 (Jun. 18, 2025) ........................................... 7, 10, 15

*iRhythm Techs. Inc. v. Welch Allyn, Inc*,
  IPR2025-00377, No. 10 (Jun. 6, 2025) ....................................................... 15

*Sotera Wireless, Inc. v. Masimo Corp*.,
  IPR2020-01019, No. 12 (Dec. 1, 2020) .................................................... 2, 14

*Snap, Inc. v. SRK Technology LLC*,
  IPR2020-00820, No. 15 (Oct. 21, 2020) ................................................... 2, 13

*Verizon Connect Inc. v. Omega Patents, LLC*,
  IPR2023-01162, No. 40 (Jun. 3, 2025) ......................................................... 8


**Statutes and Rules**

5 U.S.C. § 551(4)) ................................................................................................ 8

5 U.S.C. §§ 552 (a)(1)(A)–(E) ......................................................................... 10

5 U.S.C. § 553(b)–(d) ................................................................................... 8, 10

5 U.S.C. § 706(2)(A) ........................................................................................ 12

35 U.S.C. § 314(d) ............................................................................................ 17

## OTHER AUTHORITIES

Changes Under Consideration to Discretionary Institution Practices,
Petition Word-Count Limits, and Settlement Practices for
America Invents Act Trial Proceedings Before the Patent Trial
and Appeal Board, 88 FR 24503 (April 23, 2023)...........................................4

Discretion to Institute Trials Before the Patent Trial and Appeal
Board, 85 FR 66502 (Oct. 20, 2020)...............................................................3

Eileen McDermott, *House IP Subcommittee Suggests Vidal is
Overstepping with Advance PTAB Proposals*, IP Watchdog
(Apr. 27, 2023)................................................................................................4

Office of Mgmt. & Budget, Exec. Office of the President, OMB Bull.
No. 07-02, Final Bulletin for Agency Good Guidance Practices
(2007) ..............................................................................................................8

Oversight of the U.S. Patent and Trademark Office: Hearing before
the Subcomm. on Courts, Intellectual Property, and the Internet
Committee on the Judiciary (Apr. 27, 2023). .................................................4

Patent Trial and Appeal Board Rules of Practice for Briefing
Discretionary Denial Issues, and Rules for 325(d)
Considerations, Instituting Parallel and Serial Petitions, and
Termination Due to Settlement Agreement, 89 FR 28693 (Apr.
19, 2024) .....................................................................................................5, 6

Unified Patents, *The Public Has Spoken: Stakeholders
Overwhelmingly Oppose Proposed Restrictions of Patent Trial
and Appeal Board Review* (Sep. 5, 2023)
https://www.unifiedpatents.com/insights/2023/9/05/anprm-
public-comments.............................................................................................5

USPTO, *Director Vidal provides clarity to Patent Trial and Appeal
Board practice on discretionary denials of patent challenges
based on parallel litigation* (Jun. 22, 2022),
https://www.uspto.gov/about-us/news-updates/director-vidal-
provides-clarity-patent-trial-and-appeal-board-practice. .................................3

**Interest of Amicus Curiae[1]**

Unified Patents, LLC ("Unified") is a membership organization dedicated to deterring non-practicing entities ("NPEs"), particularly patent assertion entities ("PAEs"), from extracting nuisance settlements from operating companies based on likely-invalid patents. Unified acts independently from its 3,000-plus members, including Fortune 500 companies, start-ups, automakers, industry groups, cable companies, finance businesses, technology companies, open-source developers, manufacturers, and others dedicated to reducing the drain on the economy of baseless patent litigations. Unified and its counsel study the business models, financial backings, and practices of PAEs.

Unified monitors ownership data, secondary-market patent sales, demand letters, post-issuance proceedings, and patent litigation. Unified also files post-issuance challenges with both domestic and international patent offices against patents it believes are unpatentable or invalid. This includes both international and domestic administrative challenges. Thus, Unified seeks to deter the assertion of poor-quality patents.

---

[1] This brief accompanies a motion for leave. Fed. R. App. P. 29(b)(2). No parties' counsel authored this brief in whole or in part; neither party nor party counsel contributed money that was intended to fund preparing or submitting the brief; no person other than the amicus curiae or its counsel contributed money that was intended to fund preparing or submitting the brief. Fed. R. App. P. 29(a)(4).

## I.    BACKGROUND

The issue with the Office's *Fintiv* rule is not (just) that it is bad policy. The issue is that it's an *erratic* policy.

In this background, Unified outlines the history of the *Fintiv* rule and how frequently the policy has changed over the years.

### A.    2020–2021: *Fintiv*

On May 5, 2020, the Office designated *Fintiv*, an interlocutory opinion listing six factors for PTAB panels to consider in deciding whether to deny an IPR petition in view of a co-pending litigation, as precedential.[2] Whenever a patent owner raised the issue of co-pending litigation, the panel had to weigh the six factors and deny the petition when they weighed in favor of discretionary denial.

In December, the Office designated two *Fintiv*-based decisions precedential. Under *Sotera*,[3] factor 4 (issue overlap) weighed "strongly" against denial if the petitioner stipulated not to pursue in court "any ground raised or that could have been reasonably raised in an IPR." Under *Snap*,[4] a district court stay caused factor 1 (stay likelihood) to weigh "strongly" against denial.

---

[2] *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, No. 11 at 6 (PTAB Mar. 20, 2020) ("*Fintiv*").

[3] *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, No. 12 (PTAB Dec. 1, 2020) ("*Sotera*").

[4] *Snap, Inc. v. SRK Tech. LLC*, IPR2020-00820, No. 15 (PTAB Oct. 21, 2020) ("*Snap*").

In August, four companies sued the Office, arguing that the *Fintiv* rule violated the Administrative Procedure Act ("APA").[5] The Office subsequently issued a Request for Comment on discretionary denial policies in October (the "2020 RFC") and received more than 800 comments.[6]

In January 2021, the Director resigned as a new administration took over the executive branch. An interim director maintained the Office's *Fintiv* policies.

### B.    2022: The Office Study and 2022 Memo

In June 2022, the Office, now under Director Vidal, released a study that concluded that after peaking in the second quarter of fiscal year 2021, *Fintiv* denials dropped off significantly due to mitigating stipulations.[7] Based on the results of the study and the comments to the 2020 RFC, the Office issued a binding memorandum (the "2022 Memo") that provided four points of clarification in the Office's implementation of the *Fintiv* rule: (1) *Fintiv* only applied to district court litigation and not ITC cases, as "the ITC lacks authority to invalidate a patent," (2) "[c]onsistent with *Sotera*," the PTAB would not deny if a petitioner stipulated not to

---

[5] *Apple Inc. v. Iancu*, No. 5:20-cv-6128  (N.D. Cal. filed Aug. 31, 2020).

[6] Discretion to Institute Trials Before the Patent Trial and Appeal Board, 85 FR 66502 (Oct. 20, 2020).

[7] USPTO, *Director Vidal provides clarity to Patent Trial and Appeal Board practice on discretionary denials of patent challenges based on parallel litigation* (Jun. 22, 2022), https://www.uspto.gov/about-us/news-updates/director-vidal-provides-clarity-patent-trial-and-appeal-board-practice.

raise in district court any grounds it raised or reasonably could have raised, (3) in assessing factor 2 (trial date), panels would apply median time-to-trial statistics, and (4) no case presenting "compelling" merits would be denied. Appx101-108.

The 2022 Memo also indicated that the Office was "planning to soon explore potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking." Appx100.

### C.    2023–2024: The ANPRM and NPRM

In April 2023, the Office published its Advance Notice of Proposed Rulemaking ("ANPRM"), which included various proposed rules related to discretionary denial based on co-pending district court litigation.[8] One week later, the Director was called to appear before a congressional committee.[9] There, legislative officials accused the Office of overstepping its authority and undermining the AIA, and the Director clarified that the ANPRM was not the Office's rules.[10]

---

[8] Changes Under Consideration to Discretionary Institution Practices, Petition Word-Count Limits, and Settlement Practices for America Invents Act Trial Proceedings Before the Patent Trial and Appeal Board, 88 FR 24503 (Apr. 21, 2023).

[9] Oversight of the U.S. Patent and Trademark Office: Hearing before the Subcomm. on Courts, Intellectual Property, and the Internet Committee on the Judiciary (Apr. 27, 2023).

[10] *See, e.g.,* Eileen McDermott, *House IP Subcommittee Suggests Vidal is Overstepping with Advance PTAB Proposals*, IP Watchdog (Apr. 27, 2023), https://ipwatchdog.com/2023/04/27/house-ip-subcommittee-suggests-vidal-overstepping-advanced-ptab-proposals/id=160123/.

The Office received over 14,500 comments.[11] Over 95% of all public comments, and nearly 85% of unique comments, opposed the proposals.[12]

When the Office issued an NPRM one year later, it dropped the ANPRM's proposals related to discretionary denial based on co-pending litigation. The NPRM instead focused on the briefing procedure for discretionary issues, denials based on the Office's consideration of the same or substantially the same grounds, serial petitions, and terminations due to settlement.[13] But the NPRM was never adopted, and the 2022 Memo remained in force throughout 2023 and 2024.

### D.    2025: The Office Reverses Itself Without Explanation

Director Vidal resigned in December 2024. On February 28, 2025, the Acting Director rescinded the 2022 Memo. Appx108. The recission announcement did not provide reasoning or indicate that the rescission was retroactive; instead, it merely stated that panel decisions relying on the 2022 Memo would "not be binding or persuasive." *Id.*

---

[11] Unified Patents, *The Public Has Spoken: Stakeholders Overwhelmingly Oppose Proposed Restrictions of Patent Trial and Appeal Board Review* (Sep. 5, 2023) https://www.unifiedpatents.com/insights/2023/9/05/anprm-public-comments.

[12] *Id.*

[13] Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel and Serial Petitions, and Termination Due to Settlement Agreement, 89 FR 28693 (Apr. 19, 2024).

On March 24, 2025, the Chief Administrative Patent Judge entered a memorandum (the "2025 Memo") explaining that the rescission "applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending." Appx111. The 2025 Memo revealed that that the Office was not just rescinding the 2022 Memo, but *reversing* its policy entirely: panels were to apply *Fintiv* to co-pending ITC cases, and neither *Sotera* stipulations nor compelling merits would be dispositive. Appx111-112.

The 2025 Memo sought to defend the rescission, arguing that the 2022 Memo was intended only to provide guidance "while the USPTO explored potential rulemaking, but the USPTO did not subsequently propose a final rule" on discretionary institution. Appx110. This ignored entirely that the USPTO *did* attempt rulemaking and received overwhelming disapproval from the public and Congress. The 2025 Memo also ignored the study that served as the basis for the 2022 Memo.

On March 26, 2025, the Acting Director  created a new procedure where discretionary denial issues would be briefed separately and decided by the Acting Director before the merits. Appx114 (the "Bifurcation Memo"). Notably, such a bifurcated process was proposed in the abandoned NPRM.[14]

---

[14] *See supra* n.13 ("Briefing on Motions for Discretionary Denial: Sections 42.24, 42.107, 42.207, 42.108(c)(1), 42.208(c)(1)").

Recent discretionary denial rulings demonstrate that the Office's new implementation of the *Fintiv* rule ("*Fintiv*-plus") diverges from how panels applied the original *Fintiv* factors even before the 2022 Memo and adds new lines of denial spun from whole cloth. For example, the Office now requires petitioners to provide "persuasive reasoning why an *inter partes* review is an appropriate use of Office resources" to avoid denial. *Dabico Airport Sol'ns v. Axa Power APS*, IPR2025-00408, No. 21 at 3 (PTAB Jun. 18, 2025) ("*Dabico*"). Additionally, even where the original *Fintiv* factors favor institution, the Office has now added new factors, such as a "settled expectations" factor based on the age of the patent, which it has since held override the *Fintiv* factors and can lead to denial—without giving the parties any notice or opportunity to brief the new factors. *Id.*

## II.    ARGUMENT

### A. The Office's *Fintiv*-plus Rule Violates the APA

#### 1.    The APA prohibits retroactive rulemaking without notice-and-comment rulemaking

The Office's *ultra vires* rulemaking must be reined in, especially for rules that already failed the rigor of formal rulemaking required by the Administrative Procedure Act ("APA"). Mandamus is appropriate at least to ensure that the 2022 Memo applies to petitions filed before February 28, 2025.

A substantive rule under the APA is an "agency statement of general or particular applicability and future effect designed to implement, interpret, or

prescribe law or policy." 5 U.S.C. § 551(4)). Substantive rules are subject to the APA's notice-and-comment rulemaking requirements. 5 U.S.C. §§ 553(b)–(d). However, general policy statements, which "advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power," are not subject to these requirements. *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993); *see also Mada-Luna v. Fitzpatrick* 813 F.2d, 1006, 1014 (9th Cir. 1987) (an action must operate "only prospectively" to be considered a general policy statement). This is often done through guidance documents. *See* Office of Mgmt. & Budget, Exec. Office of the President, OMB Bull. No. 07-02, Final Bulletin for Agency Good Guidance Practices (2007) (imposing procedure on guidance documents).

The 2022 Memo was "issued under the Director's authority to issue **binding agency guidance** to govern the PTAB's implementation of various statutory provisions." Appx101 (emphasis added). Therefore, when petitioners like Motorola paid $23,000 in request fees alone for each of the hundreds[15] of pending petitions filed before February 28, 2025, they did so under the reasonable belief that the 2022 Memo, including its dispositive treatment of *Sotera* stipulations, was binding.

---

[15] According to the Office's PTACT's system, 365 petitions were filed with institution decisions still pending before February 28, 2025. The recission also applies to cases with pending rehearing requests. At least a final written decision has been vacated under § 314(a). *See Verizon Connect Inc. v. Omega Patents, LLC*, IPR2023-01162, No. 40 at 2 (PTAB June 3, 2025).

In making its rescission retroactive, the Office contradicts what it told a district court about its *Fintiv* guidance to avoid the APA's notice-and-comment requirements. Specifically, to avoid the "substantive rule" label, the Office told the court that *Fintiv* and other decisions merely provided guidance that was prospective in nature. *Apple Inc. v. Iancu*, No. 5:20-cv-06128-EJD, Doc. 165 at 17 (Mar. 31, 2024) (appeal pending, No. 24-1864).

The Office had also argued that its discretionary denial policy is not a substantive rule because it does "not compel a specific outcome on institution," or establish a "binding norm" because they "merely guide the Board's decision-making process … without dictating any particular outcome." *Id*. at 20. The court relied on the Office's representations to find that the *Fintiv* rule was not "outcome determinative" because it would not prevent a board from concluding "that the merits of the petition were so strong that institution was the preferred disposition" even where the enumerated factors weighed in favor of denial. *Id*. at 21.

None of this is true anymore. Under the new bifurcation procedure, the Acting Director personally handles all discretionary questions. And it is no longer true that strong enough merits could outweigh other factors—the Acting Director's decisions in this case, for example, do not discuss the merits of the petitions. Instead, the Acting Director has created a new standard for institution, requiring petitioners to

give "persuasive reasoning why an *inter partes* review is an appropriate use of Office resources" to avoid denial. *Dabico* at 3.

The Office's *Fintiv*-plus rule is simply not a collection of prospective general policy statements—they now clearly compel outcomes despite existing reliance interests. The Office was required to engage in notice-and-comment rulemaking and publish its rule in the Federal Register to afford the public notice and an opportunity to respond. 5 U.S.C. §§ 552 (a)(1)(B)–(E), 553(b)–(d).

What's more, the Office's implementation of the *Fintiv*-plus rule after failed rulemaking attempts itself violates the APA. Because the agency, unlike a court, has "the ability to make new law prospectively through the exercise of its rule-making powers, it has less reason to rely upon *ad hoc* adjudication to formulate new standards of conduct." *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947). The APA was adopted to ensure that agencies follow certain procedures in promulgating "policies affecting individual rights and obligations" to avoid the "inherently arbitrary nature of unpublished *ad hoc* determinations." *Morton v. Ruiz*, 415 U.S. 199, 232 (1974). The Office's evolution of the *Fintiv* rule demonstrates this—due to changing factor definitions and the creation of new bases for denial, the current iteration of the rule is unrecognizable from what the Office laid out in its precedential decisions in 2020. The Administrative Procedure Act was created to curb such arbitrary and capricious agency action.

10

## 2.    The APA prohibits rule changes without a reasoned basis

Even had it undertaken the required rulemaking, the Office would not have been able to apply its new rules retroactively: "[e]ven where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988).

Here, there is no statutory grant. We question the Office's untested theory that § 314(a), which simply describes something that the Office "may not" do, gives the Office the authority to deny compliant petitions based on district court litigation. Regardless, the statute certainly provides no authority to do so retroactively.

Further, even if the AIA permitted retroactive rulemaking, "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) (when a "new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account," an agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate."). The Office has provided no justification, much less reasoned basis, for its new *Fintiv*-plus rule. The 2025 Memo baldly cites the Office's failure to enact a rule for

11

its recission of the 2022 Memo. Appx110. But if anything, that explanation would justify rescinding the *Fintiv* rule entirely.

### 3.    The APA requires consistent application of its policies

While the Office takes the position that institution is a matter of discretion, "[d]iscretion is not whim." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). And, under the Administrative Procedure Act (APA), a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An "agency action is arbitrary and capricious if it departs from precedent without explanation." *SKF USA, Inc. v. US*, 263 F. 3d 1369, 1382 (Fed. Cir. 2002) (citation omitted); *see also Thompson v. Barr*, 959 F.3d 476, 484 (1st Cir. 2020) (when an agency "decides to depart significantly from its own precedent, it must confront the issue squarely and explain why the departure is reasonable, the obvious goal being to avoid arbitrary action.") (internal quotations omitted).

In this case (and the many other recent denials now governed by the Bifurcation Memo), the Office departed from its precedent and practice without explanation. It addressed nearly identical facts and reached entirely opposite conclusions. And in a case of fitful *ad hoc*ery, the Office has devised new rules for denial.

For example, in the first four cases underlying this Mandamus Petition, the panel held that factors 1 (stay likelihood), 2 (trial date), and 5 (party identity) weighed in favor of denial. Appx69. This prognosis was wrong—the district court granted a stay shortly after the first four cases were instituted, Appx203, and *before* the Acting Director vacated institution in the latter four cases, the district court removed the trial date from its calendar entirely. Appx164.

The Acting Director reweighed factors 3 (party investment) and 4 (issue overlap) for both sets of cases, while simultaneously affirmatively refusing to reweigh factor 1 given the actual district court stay. Appx18-19; Appx12-Appx13. The Acting Director reasoned that because she was vacating institution on the first four cases, and because she planned to vacate the remaining later four decisions "if and when" the patent owner filed rehearing requests, the district court *would likely* lift its stay. Appx19; *see also* Appx13 (faulting panel's finding that factor 1 weighed against denial because "the district court's stay was premised on the Board's institution decisions in the related IPRs, which have since been vacated."). (For what it's worth, this has not come to pass; the case remains stayed.)

The Acting Director's refusal to consider the district court's stay reverses the Office's precedent in *Fintiv* and *Snap*, again without explanation. Factor 1 asks whether the district court would grant a stay if the Board granted review. *Fintiv* at 6. Where a stay has been granted, factor 1 weighs "strongly" against denial. *Snap* at 9.

13

This binding precedent does not ask if the district court *would* lift the stay if the Office decided to deny review; if that were so, factor 1 would be illusory. The Acting Director clearly should have reweighed factor 1 after the district court's stay. *See In re Google LLC*, 58 F.4th 1379, 1382–83 (Fed. Cir. 2023) (finding abuse of discretion where, in denying a transfer motion, the court ignored the transfer of another case to the desired destination after the defendant filed its motion).

The Acting Director's weighing of factor 4 dramatically diverged from Office practice. Motorola's *Sotera* stipulation was given little, if any, weight because it was "not likely to moot" invalidity challenges based on system art before the district court. Appx19. Until now, factor 4 has been about issue *overlap*, as the Office was concerned with "duplicative efforts" and "potentially conflicting decisions." *Sotera* at 19; *see also Fintiv* at 12–13. Factor 4 has *never* asked whether an unfavorable final written decision would somehow moot invalidity issues that the AIA bars from inter partes review.

Finally, the Office did not consider factor 6, which asks the panel to consider "other circumstances . . . including the merits." *Fintiv* at 14–15. The Acting Director's review decisions did not address the merits of any of the petitions.[16]

---

[16] It seems that the Office no longer includes the merits as part of its routine analysis anymore. According to PTACTS, the Office issued *over 30 discretionary denial orders on June 25 alone*, most authored by the Director, and almost none addressing

These decisions effectively changed the *Fintiv* rule without explanation. The APA prohibits such arbitrary and capricious agency action. *SKF*, 263 F. 3d at 1382.

The Acting Director has also, *sua sponte*, created new bases for denial when the original *Fintiv* factors weigh against denial. For example, in *Dabico*, the Acting Director did not address the *Fintiv* factors, but instead held that because the patent was issued more than eight years before the challenge, the patent owner's "settled expectations" outweighed any factors that favored institution. *Dabico* at 3; *see also iRhythm Techs. Inc. v. Welch Allyn, Inc.*, IPR2025-00377, No. 10 at 3 (PTAB Jun. 6, 2025) (although *Fintiv* factors favored institution, denying petition on new theory of settled expectations).

The Office has also created a new *litigation* requirement without rulemaking. *Fintiv* and cases like it refused to consider timely-filed petitions due to the advanced state of co-pending litigation. *Fintiv* at 2–3. But the Board is now denying petitions where the patents have been *dismissed* from litigation, finding that reviewing the unasserted patents would be "an inefficient use of board resources." *Cellco P'ship d/b/a/ Verizon Wireless v. Pegasus Wireless Innovation LLC*, IPR2025-00137, No. 17 at 4 (PTAB Jun. 26, 2025). In other words, the Office has created another new requirement that patents be involved in litigation, which runs counter to its refusal

---

the merits. That simply does not leave enough time to meaningfully consider the merits of each case under § 314(a), even *sub silentio*.

to review patents have existed too long before a suit is filed or that have been in suit for months. This is all akin to a ban on meritorious petitions that matter.

The Office has acted arbitrarily and capriciously in creating new rules without notice and comment, applying these rules retroactively, and weighing its own factors in a manner that departs from its binding precedent without explanation.

### B.    Mandamus Is Appropriate

Mandamus is an appropriate remedy for "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). Here, Motorola's petition should be granted because the agency's inconsistent and retroactive application of new *Fintiv* rules is a clear violation of the Administrative Procedure Act.

On the first two elements, petitioners like Motorola have a clear right to the requested relief: the Office has a clear duty to honor *Sotera* stipulations after telling everyone that the 2022 Memo was binding, and the APA should protect the public from arbitrary and capricious agency action. No other adequate legal remedy is available, as Motorola already asked the Office to review its decision to no effect.

Finally, mandamus is appropriate considering the circumstances here. The Office represented to the judiciary that its *Fintiv* guidance is prospective to circumvent its rulemaking obligations, but applies its new rules retroactively.  That, coupled with the breadth and speed at which the Office is acting, demand relief.

16

To be clear, no one is suggesting that institution determinations are appealable. 35 U.S.C. § 314(d). Rather, we support Motorola's petition asking the Court to set aside arbitrary and capricious agency <u>action</u>, namely its application of the *Fintiv-plus* rule, its *ad hoc* creation of new rules, and its retroactive application thereof. Unified also urges a decision that prevents the Office from using institution decisions to circumvent APA's notice-and-comment rulemaking requirements.

## III. CONCLUSION

The petition focuses on the issue of retroactivity. But the issue goes much deeper—the rescission has resulted in an unrecognizable version of Fintiv, including new *ad hoc*, outcome-determinative rules elevated above the merits of any given case. This Office has turned discretionary denial into a moving target, forcing petitioners to meet standards that did not exist when they filed their petitions. Mandamus is necessary to curb this arbitrary and capricious agency action.

Respectfully submitted,

June 27, 2025

By:   */s/ Michelle Aspen*
      Michelle Aspen
      michelle@unifiedpatents.com
      Unified Patents, LLC
      4445 Willard Ave., Suite 600
      Chevy Chase, MD 20815
      (559) 214-3388

17

**<u>Certificate of Compliance with Type-Volume Limitations</u>**

1.    This brief complies with the type-volume limitation of Fed. Cir. R. 40(i)(3). It contains <u>3,856</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.    This amicus brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word  in Times New Roman 14-point font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

June 27, 2025                          *<u>/s/ Michelle Aspen</u>*

                                         Michelle Aspen

## **Certificate of Service**

I hereby certify that, on June 27, 2025, I caused to be electronically filed the foregoing UNIFIED PATENTS, LLC'S *AMICUS CURIAE* BRIEF IN SUPPORT OF MOTOROLA SOLUTIONS, INC'S PETITION FOR A WRIT OF MANDAMUS using the Court's CM/ECF filing system.

I certify that all counsel of record in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. *See* Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).

June 27, 2025

*/s/ Michelle Aspen*
Michelle Aspen