2025-134

_____

# UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

_____

IN RE MOTOROLA SOLUTIONS, INC.,
*Petitioner.*

_____

Petition for a Writ of Mandamus to the
Director of the United States Patent and Trademark Office,
Patent Trial and Appeal Board Nos. IPR2024-01205, IPR2024-01206,
IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285,
IPR2024-01313 & IPR2024-01314

_____

### *AMICUS CURIAE* BRIEF
### OF TEODOR HOLMBERG
### IN SUPPORT OF
### MOTOROLA SOLUTIONS INC.'S
### PETITION FOR A WRIT OF MANDAMUS

_____

Teodor J. Holmberg
8 Gregory Lane
Florence, MA 01062
(401) 225-4538

*Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-134 |
| **Short Case Caption** | In re Motorola Solutions, Inc. |
| **Filing Party/Entity** | Teodor Holmberg/movant (amicus curiae) |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/30/2025

Signature: /s/ Teodor Holmberg

Name: Teodor Holmberg

**FORM 9. Certificate of Interest**                                    Form 9 (p. 2)
                                                                       March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Teodor Holmberg | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☐    No    ☑    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# <u>TABLE OF CONTENTS</u>

Table of Authorities ............................................................................. iii

Identity of *Amicus Curiae* ................................................................. vi

Table of Abbreviations ...................................................................... viii

Argument ..............................................................................................1

   **I.**     SUMMARY/INTRODUCTION ...................................................1

   **II.**    BACKGROUND ...........................................................................6

      A.    How Things Normally Work ................................................6

      B.    Director's March 26, 2025 "Workload" Memo .......................9

      C.    Since June 12, 2025, the Director has issued Pre-Merit Discretionary Denials of over a 100 IPR Petitions .................................................................12

   **III.**   MANDAMUS SHOULD BE GRANTED … ...........................................15

      A.    … to clarify what exactly is reviewable in the Director's instructions/guidance regarding IPR institution under 35 U.S.C. §314(a). .......15

      B.    … to re-visit the apparent absolute prohibition of substantive review in *Apple v. Vidal*................................................................17

      C.    … to review the propriety of the Director's March 26, 2025 "Workload" Memo. ..........................................................................18

   **IV.**   PROPOSED ISSUES TO RESOLVE .......................................19

      A.    *What exactly* can be reviewed in a *procedural* review of the Director's instructions/guidance regarding IPR institution under 35 U.S.C. §§314(a) and 316(a)(2)? ...........................................................19

      B.    Should the court re-visit *Apple v. Vidal*, and find that at least some *substantive* review of the Director's instructions/guidance regarding IPR institution under 35 U.S.C. §314(a) is possible, notwithstanding 35 U.S.C. §314(d)? ...........................................................19

C.    Was the Director's March 26, 2025 "Workload" Memo providing instructions/guidance for IPR institution under 35 U.S.C. §314(a) permissible agency action under the APA? ...........................................................20

Conclusion ....................................................................................20

Certificate of Compliance with Type-Volume Limits............................+1

ADDENDUM ............................................................................ A-1

*35 U.S.C. 2 – Powers and duties.* ................................................. A-1

*35 U.S.C. 6 – Patent Trial and Appeal Board.* ................................ A-1

*35 U.S.C. 314 – Institution of inter partes review.* .......................... A-2

*35 U.S.C. 316 – Conduct of inter partes review.* ............................. A-2

*5 U.S.C. 551– Definitions* ........................................................ A-3

*5 U.S.C. 701– Application; Definitions* ......................................... A-3

*5 U.S.C. 702 – Right of Review* .................................................. A-4

*5 U.S.C. 706 – Scope of review* ................................................. A-4

37 CFR 42.75 – Director Review ................................................. A-5

37 CFR 42.108 – Institution of *inter partes* review .......................... A-7

# TABLE OF AUTHORITIES

## Cases

*American Medical Association v. Reno*,
57 F.3d 1129 (D.C. Cir. 1995)................................................................2

*Apple v. Stewart*,
Fed. Cir. Docket No. 24-1864 ................................................ 1, 3, 19

*Apple v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) ...................................................... passim

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
908 F.3d 792 (Fed. Cir. 2018) .............................................................14

*California Bankers Assn. v. Scultz*,
416 U.S. 21 (1974).............................................................................18

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) .................................................... 4, 6, 17, 20

*EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*,
859 F.3d 1341 (Fed. Cir. 2017) ..........................................................19

*In re Power Integrations, Inc.*,
899 F.3d 1316 (Fed. Cir. 2022) .......................................... 4, 15, 19

*In re SAP*,
Fed. Cir. Docket Nos. 25-132 and 25-133 .................................... 1, 19

*Lincoln v. Vigil*,
508 U.S. 182 (1993).............................................................................2

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...........................................................................16

*National Treasury Employees Union v. Von Raab*,
489 U.S. 656 (1989) ...................................................................... 3, 18

*Softview v. Apple*,
__ F.4th __, 2024 WL 3543902 (Fed. Cir. July 26, 2024). .................16

*Thorpe v. Housing Authority of Durham*,
393 U.S. 268 (1969)...........................................................................18

*Thryv v. Click-to-Call Techs.*,
    140 S. Ct. 1367 (2020) ................................................................ 15, 17

*U.S. v. Arthrex*,
    594 U.S. __ (2021) ............................................................... 4, 8, 9, 17

## AIA Trial Decisions

*Amazon v. Virtamove Corp.*,
    IPR2025-00561, -563, -566 (Dir. July 11, 2025) ..............................13

*Amgen v. Bristol-Myers Squibb Co.*,
    IPR2025-00611, -602, -603 (Dir. July 24, 2025) ..............................13

*Analog Devices, Inc. v. Number 14 B.V.*,
    IPR2025-00550, -551 (Dir. July 16, 2025) ........................................14

*Apotex v. Alkermes Pharma Ireland Ltd.*,
    IPR2025-00514 (Dir. July 2, 2025)....................................................14

*Apple v. DH Int'l Ltd.*,
    IPR2025-00173 (PTAB June 25, 2025) ..............................................12

*Carvana LLC v. I.B.M. Corp.*,
    IPR2025-00564 (Dir. July 10, 2025)..................................................14

*Ericsson Inc. v. ProComm Int'l PTE Ltd.*,
    IPR2024-01452, -1453, -1454 (Dir. June 25, 2025) ..........................13

*Gator Bio v. Sartorius Bioanalytical Instruments, Inc.*,
    IPR2025-00633 (Dir. July 24, 2025)..................................................15

*Lam Research Corp. v. Inpria Corp.*,
    IPR2025-00256, -309 (Dir. July 2, 2025) ..........................................14

*Nuvei Tech. v. Autoscribe Corp.*,
    IPR2025-00089 (PTAB  June 12, 2025) ............................................12

*Phison Electronics Corp. v. Vervain LLC*,
    IPR2025-00213, -214, -215, PGR2025-00010, -11 (Dir. July 10, 2025) ..........14

*Sandisk Tech. v. Polaris PowerLED Techs.*,
    IPR2025-00515, -516, -517 (Dir. July 16, 2025)................................13

*SAP America v. Valtrus Innovations Ltd.*,
    IPR2025-00414, -415, -416, -417, -418, -420 (Dir. July 10, 2025)....................13

*Shenzen Kangvape Tech. Co., Ltd. v. RAI Strategic Hldngs.,*
  Inc., IPR2024-010406 (PTAB June 25, 2025).....................................12
*Tessell, Inc. v. Nutanix, Inc.,*
  IPR2025-00322 (Dir. June 12, 2025)...............................................14

## Statutes

5 U.S.C. §553 ......................................................................................6

5 U.S.C. §701(a)(1)..............................................................................1

5 U.S.C. §701(a)(2)..............................................................................1

35 U.S.C. §2(b)(2)................................................................................6

35 U.S.C. §314(a) ....................................................................... passim

35 U.S.C. §314(d) ....................................................................... passim

35 U.S.C. §316(a)(2) ................................................................... passim

35 U.S.C. §316(a)(4)...........................................................................16

35 U.S.C. §316(b) ...............................................................................11

## Code of Federal Regulations

37 C.F.R. §§42.100-42.123 .................................................................7

37 C.F.R. §§42.1-42.80 .......................................................................7

37 C.F.R. §§42.200-42.224 .................................................................7

37 C.F.R. §42.108 ...............................................................................1

37 C.F.R. §42.75 ......................................................................8, 9, 10

# IDENTITY OF *AMICUS CURIAE*

Pursuant to Federal Circuit Rules 29(a)(4)(D), I hereby provide a concise statement of my identity, my interest in the case, and the source of my authority to file.

I am a patent practitioner of over 25 years experience, a member of the patent bar (Reg. No. 50,140), a member of the Bars of Massachusetts and New York, and, of course, a member of the bar of the Federal Circuit Court of Appeals. I have engaged in patent litigation all over the United States and written probably over 200 patents (at least).

My interest here is for the rules: all of us have to follow them, including the PTO. As discussed in detail in the brief, I am concerned that some statements by this court in *Apple v. Vidal*[*] have been taken by the PTO to mean that the Director is free to do anything she wants in regards to denying IPR petitions because of 35 U.S.C. §314(d)'s prohibition on reviewability. I do not believe this is the case.

Of course, I have authority to file my own briefs.

---

\* *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023).

Pursuant to Fed. R. App. P. 29(a)(4)(E), I hereby attest that:

(i)     I have authored this brief in whole;

(ii)    no party or party's counsel has contributed money that was intended to fund preparing or submitting this brief; and

(iii)   no other person besides myself has contributed money that was intended to fund preparing or submitting this brief.

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| AIA | Leahy-Smith America Invents Act, Public Law 112-29, 125 Stat. §§284-341, enacted at various places in the U.S.C., most relevantly at 28 U.S.C. §1295(a)(4)(A), establishing this court's jurisdiction, and 35 U.S.C. §§311-319, concerning IPRs |
| AIA trials | refers to the 3 forms of after-grant review established by the AIA: IPR, PGR, and CBM |
| APA | Administrative Procedures Act |
| APPX___ | Motorola's APPENDIX [ECF Docket No. 02-2], at page(s) ____ (using the APPX numbering at bottom) |
| CBM | Covered Business Method, a transitional practice which has sunsetted |
| Director | Generally, whoever was Director or Acting Director of the PTO at the time (presently, Acting Director Coke Morgan Stewart) |
| IPR | Inter Partes Review |
| IPR institution | refers only to the initial review of the IPR petition to determine whether to grant it under 35 U.S.C. §314(a) (not to any of the proceedings once the IPR is instituted) |
| March 26, 2025 "Workload" Memo | March 26, 2025 Memorandum from Coke Morgan Stewart, Acting PTO Director, to all PTAB judges, titled "Interim Processes for PTAB Workload Management." *See* APPX113-115. |
| Motorola | Motorola Solutions, Inc. (petitioner) |
| PGR | Post-Grant Review, at 35 U.S.C. §§321-329 |
| PTAB | Patent Trial and Appeal Board |
| PTO | United States Patent & Trademark Office |

# ARGUMENT

## I.     SUMMARY/INTRODUCTION

In the past 4 years, the PTO has issued, amended and re-issued, rescinded, provided new guidance/instructions, and, more recently, concocted an entirely new procedure for IPR institution under 35 U.S.C. §314(a).[1] Denied IPR petitioners have taken issue with different parts of these flip-flops in various cases before this court, including this one.[2]

I believe Motorola's writ of mandamus should be granted in this case so that this court can spell out the metes and bounds of the Director's authority under 35 U.S.C. §316(a)(2) to prescribe regulations for IPR institutions (*i.e.*, the initial IPR petition review, the "threshold" under 35 U.S.C. §314(a))—including deciding whether it is completely unbounded because of the prohibition on judicial review in 35 U.S.C. §314(d).[3]

---

[1] For convenience, relevant portions of the patent laws (35 U.S.C. §§2, 6, 314 and 316), as well as relevant portions of the APA (5 U.S.C. §§551, 701, 702, and 706) and patent rules (37 C.F.R. §§42.75 and 42.108), are reproduced in the attached ADDENDUM.

[2] In *Apple v. Stewart*, Fed. Cir. Docket No. 24-1864, the parties are back after a remand to fight over whether the PTO's "*NHK-Fintiv* Rule" is a rule under the APA requiring notice-and-comment rule-making. In *In re SAP*, Fed. Cir. Docket Nos. 25-132 and 25-133, the parties are fighting over the PTO's mid-procedure revocation of its June 21, 2022 Memo (concerning the *NHK-Fintiv* Rule).

[3] 35 U.S.C. §314(d) may stop judicial review under the APA via 5 U.S.C. §701(a)(1) or (2).

This court has stated that, although §314(d)'s ban on judicial review stops any **substantive** review of the Director's guidance/instructions concerning IPR institutions under §314(a), the court may still perform **procedural** review of the Director's instructions/guidance, such as whether the guidance/instructions required notice-and-comment rulemaking procedures. *See Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023).[4]

At the least, this is a chance to establish what can and can't be reviewed in a procedural review of the Director's guidance/instructions on IPR institutions under 35 U.S.C. §314(a).

Further, I also humble suggest that the court should re-visit and somewhat amend the absolute ban on substantive review suggested in *Apple v. Vidal*. *Id*., slip op. at pp. 18-19 ("If the congressional preclusion of review of the decision to institute is to be respected in the inevitable system of delegation, it must extend to

---

[4] As stated at page 19 of the slip opinion:

> Whether notice-and-comment rulemaking procedures had to be employed for an agency action presents a matter "quite apart from the matter of substantive reviewability" of the action for being contrary to statute or arbitrary and capricious. *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993); *see American Medical Association v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995) ("[U]nder the APA the ultimate availability of substantive judicial review is *distinct* from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply. ... The APA's procedural requirements are enforceable apart from the reviewability of the underlying action, and, indeed, support several important functions wholly distinct from judicial review.") (further citations omitted).

the substance of such instructions.").[5]   I respectfully submit that *Apple v. Vidal* should be understood more as affirming that the Director has the absolute right to delegate her power, not that she has an absolute right never to have her delegation instructions/guidance reviewed.

The reasons why such clarifications regarding *Apple v. Vidal* are necessary will become clear below.

I believe, in granting the writ of mandamus, this court should also review the Director's March 26, 2025 "Workload" Memo for IPR Institutions,[6] which is currently in effect but was not relied upon in the Director's review and denial of Motorola's previously-granted IPR institutions in this case.  Admittedly, such an advisory opinion is usually frowned upon, but this court recently said in *Apple v. Vidal*: "It would seem proper, therefore, were it important, to consider the updated instructions rather than the *Fintiv* instructions alone."[7]   In *Apple v. Vidal*, such

---

[5] It should be noted that *Apple v. Vidal* is still before this court in a way, as the *Apple v. Stewart* case in footnote 2 *supra* is the appeal from the remand in *Apple v. Vidal*.

[6] March 26, 2025 Memorandum from Coke Morgan Stewart, Acting PTO Director, to PTAB, "Interim Processes for PTAB Workload Management." *See* APPX113-115.

[7] This court cited, in support of reviewing the current instructions/guidance even though they were not used to deny the IPR institutions before the court, *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 661 n.1 (1989), where the Supreme Court  decided the "case based on agency program as altered after court of appeals decision."

- 3 -

consideration of the current instructions/guidance was found to be unnecessary (as moot). Now it is necessary.

The Director's March 26, 2025 "Workload" Memo should be ruled "an action by the [Director] beyond [her] statutory limits"[8]—an issue which is ***not*** barred from review by 35 U.S.C. §314(d)'s prohibition on appeals of the Director's determinations "whether to institute an [IPR]."

If there are bounds, this memo is clearly out of them.

The bifurcated procedure for IPR/PGR institution put in place by the March 26, 2025 "Workload" Memo is radical and unprecedented. While the Director clearly has the power and authority to review and reverse any PTAB decisions or rulings,[9] this new procedure allows the Director to peremptorily deny the institution of an IPR ***before PTAB has even had a chance to look at the IPR petition***. These pre-merit "discretionary denials" have their own entirely new set of rules and

---

[8] *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2022), discussing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016) (bolding added):

> This is not to say that mandamus will never lie in response to action by the agency relating to the noninstitution of inter partes review. The circumstances described by the Supreme Court in *Cuozzo* as illustrations of issues for which an appeal might be justified (e.g., constitutional issues, issues involving questions outside the scope of section 314(d), and **actions by the agency beyond its statutory limits**) would be potential candidates for mandamus review as well.

[9] As confirmed by the Supreme Court in *U.S. v. Arthrex*, 594 U.S. __ (2021).

standards: "the Director, in consultation with at least three PTAB judges,[10] will determine whether discretionary denial of institution is appropriate" using "discretionary considerations" which apparently are separate and distinct from the "merits and non-discretionary considerations" the actual PTAB panel uses to judge whether to grant the IPR petition.[11]

No comments, no rule-making (and thus no rule), no adjudication (and thus no order), nothing in the Federal Register or Official Gazette—this new bifurcated IPR institution procedure issued forth on March 26, 2025 like Athena burst forth from Zeus's head, complete and indefatigable, able to dismiss IPR petitions with a single sentence. And the Director has used this procedure to dismiss more than a hundred IPR petitions in the last six weeks. Under the current law, the Director's pre-merit discretionary denials appear to be unreviewable, unappealable, unstoppable.

---

[10] To be clear, these 3 PTAB judges are **not** part of the PTAB panel which reviews the merits of the IPR petition in the second part of the new bifurcated procedure (*i.e.*, if the IPR petition survives the Director's pre-merit discretionary denial in the first part). Moreover, none of the Director's pre-merit discretionary denials so far have listed any PTAB judges' involvement in any way; however, several of them were made by a single PTAB judge having been delegated the responsibility from the Director.

[11] This PTAB panel is never empanelled at all if the Director discretionarily denies the IPR petition.

I respectfully submit these are the "shenanigans" Justice Alito was concerned about in his concurrence-in-part/dissent-in-part in *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016)—the March 26, 2025 "Workload" Memo is an example of what an agency believes it can get away with, when there is no chance of a court reviewing its actions. While I believe that the March 26, 2025 "Workload" Memo can be struck down on purely procedural grounds, because of the complete lack of rule-making under 5 U.S.C. §553,[12] I also believe this court should modify its holding in *Apple v. Vidal* to allow at least some substantive review of the Director's guidance/instructions for making IPR denials.

## II.    BACKGROUND

### A.    How Things Normally Work

Roughly speaking, Congress passes laws, which thereby become part of the United States Code (U.S.C.), and the affected agency places Requests for Comments (RFCs) for proposed rules (including rules for performing adjudication) in the Federal Register to effectuate those laws. After a period of time for comments (and usually some revisions), the proposed rules become agency rules, thereby becoming part of the Code of Federal Regulations (C.F.R.).

---

[12] Under 35 U.S.C. §2(b)(2), the PTO "may establish regulations, not inconsistent with law, which … shall govern the conduct or proceedings in the Office … [and] … shall be made in accordance with section 553 of title 5."

Most agencies also have their own billboards, guidebooks, and manuals—the PTO is no exception, with additional guidance and information being provided by the Manual of Patent Examining and Procedure (MPEP), the PTO's own Official Gazette (OG), and the PTO's website, where some of the PTO's procedures are also made publicly available, such as the Consolidated Trial Practice Guide (last rev. Nov. 2019) for practice before PTAB.

The AIA was passed in 2011, resulting in, *inter alia*, 35 U.S.C. §§311-329 concerning the new AIA trials (*i.e.*, IPRs at §§311-319 and PGRs at §§321-329). Since then, the PTO has performed rule making in accordance with statute and thereby promulgated rules and procedures[13] for the AIA trials: 37 C.F.R. §§42.1-42.80 for rules and procedures generally applicable to all AIA trials; 37 C.F.R. §§42.100-42.123 specifically for IPRs; and 37 C.F.R. §§42.200-42.224 specifically for PGRs.

Notably, and against past practice, the MPEP has not been substantially revised to reflect the new AIA trials, and the PTO appears to be letting the rules and the practice guides speak for themselves. *See*, *e.g.*, MPEP 1400.01 ("The … [IPR and PGR] … are discussed in the Office Patent Trial Practice Guide available at www.uspto.gov/patents/ptab/resources.").

---

[13] In some cases, previously-existing rules were updated in accordance with the new AIA trials in the AIA.

Various practice guides and guidance for the AIA trials are available on the PTO's website, including Standard Operating Procedures (SOPs),[14] the aforementioned Consolidated Trial Practice Guide, Internal Operating Procedures (IOPs),[15] a list of pending rulemaking processes,[16] and FAQs.

There are no rules in place for the Director to review an IPR petition **before** PTAB does its initial review and institution decision.  Nor have any of the guidance and practice manuals been amended to allow such a Director review.  The majority of the materials referencing "Director review" on the website concern the after-final written decision Director review mandated by *U.S. v. Arthrex, Inc.*

There are rules in place and some guidance for the Director to review an IPR petition **after** PTAB does its initial review and institution decision: 37 C.F.R. §42.75(a) allows that "the Director may review any decision on institution under 35 U.S.C. 135, 314, or 324, …, or any other decision concluding a proceeding brought under 35 U.S.C. 135, 311, or 321."

---

[14] There are currently four: SOP 1 (rev. 16): Assignment of judges to panels (June 12, 2024); SOP 2 (rev. 11): Designation or de-designation of decisions as precedential or informative (July 24, 2023); SOP 3 (rev. 2, formerly SOP9): Procedure for Decisions Remanded from the Federal Circuit; and SOP 4 (rev. 1): Procedure for Pre-Issuance Optional Decision Review and Post-Issuance Decision Review (October 5, 2023).

[15] Presently unavailable, the links lead to "404 file not found."

[16] Notably, the rulemaking processes the PTO has rescinded concerning IPR institution (such as the troublesome *NHK-Fintiv* rule) are still listed as active rulemaking processes.

- 8 -

37 C.F.R. §42.75[17] was promulgated because of the *Arthrex* decision. Required to do so by the Supreme Court, the PTO enacted an interim process immediately after the decision and then proceeded with the standard rule making by issuing two RFCs[18] and then a Notice of Proposed Rulemaking (NPRM) on April 16, 2024,[19] before promulgating the final §42.75 on October 1, 2024.[20] §42.75 does not allow the Director to review any decision or interlocutory decision before PTAB has actually made a decision.

## B.    Director's March 26, 2025 "Workload" Memo

On March 26, 2025, the Director sent instructions to "All PTAB Judges" establishing a new bifurcated procedure for the institutions of IPRs under 35 U.S.C. §314(a)[21] in a memo euphemistically titled "Interim Processes for PTAB Workload Management"—the March 26, 2025 "Workload" Memo.  *See* APPX113-115.  In it, the Director states that she is "exercis[ing] her discretion on institution of AIA proceedings under 35 U.S.C. §314(a) … ." *Id.*

---

[17] Relevant portions of 37 C.F.R. §42.75 are in the ADDENDUM.

[18] 87 FR 43249-52 (July 20, 2022) and 87 FR 58330 (Sept. 26, 2022).

[19] 89 FR 26807 (April 16, 2024).

[20] 89 FR 79744 (October 1, 2024).

[21] This new bifurcated procedure also applies to PGRs under §328(a); however, for convenience, only IPRs will be referred to here.

Under the new bifurcated procedure, the Director may first review and make her own "discretionary denial" of the IPR petition based on "discretionary considerations," and then, assuming there was no pre-merit discretionary denial by the Director, the PTAB determines whether to institute an IPR/PGR based on "[the] merits and non-discretionary considerations." *Id.* Herein, the Director's discretionary denial from the memo is called a "pre-merit discretionary denial" to distinguish it from existing procedures under which the Director may deny an IPR institution *after* a PTAB panel has issued a merit-based IPR institution decision. *See*, *e.g.*, 37 C.F.R. §42.75 discussed *supra*.

The pre-merit "discretionary considerations" are never defined in the March 26, 2025 "Workload" Memo besides indicating that (i) they are not the same as what PTAB uses in its normal IPR institution procedures; and (ii) they are perhaps the same as the "discretionary considerations" mentioned in passing when listing "the relevant considerations" which the parties may brief during the Director's pre-merit "discretionary denial" phase of the bifurcated IPR institution procedure.

Because this pre-merit discretionary denial was brand new, and had never existed in any form whatsoever before, the March 26, 2025 "Workload" Memo has procedures for, *inter alia*, the patent owner to file a brief requesting pre-merit discretionary denial, the petitioner to file an opposition, a timetable for submitting these briefs to the Director, page limits, and the like. *Id.*, p. 2, APPX114. The second

part, the merits-based part, remains the same as before. *Id.* ("The merits briefing schedule … remain[s] unchanged.").

The March 26, 2025 "Workload" Memo has a non-exclusive bulleted list of "relevant considerations" for the parties to address in their "discretionary denial briefing." *Id.*, pp. 2-3, APPX114-115. The March 26, 2025 "Workload" Memo notes these considerations are "consistent with the discretionary considerations enumerated in existing Board precedent (including *Fintiv*, *General Plastic*, and *Advanced Bionics*) and the Consolidated Trial Practice Guide (Nov. 2019)." *Id.* The last bullet is mysteriously "[a]ny other considerations bearing on the Director's discretion." *Id.*, p. 3, APPX115. "The Director will also consider the ability of the PTAB to comply with pendency goals for *ex parte* appeals, its statutory deadlines for AIA proceedings, and other workload needs. *See* 35 U.S.C. §316(b)." *Id.*, p. 3, APPX115.

Although the March 26, 2025 "Workload" Memo says patent owner requests for pre-merit discretionary denial may only be filed before the patent owner has filed a preliminary response (and thus, ***before*** any IPR institution decision has been made), the Director left the door open for any patent owner, if that time "has already elapsed, … [to] … submit discretionary denial briefing within one month of the date of this memorandum." *Id.*

The entire March 26, 2025 "Workload" Memo is only 2 ½ pages long.

No rule-making. No notice of any kind in the Federal Register. No publication in the Official Gazette. It isn't even that easy to find on the PTO website, although admittedly, at some point, the PTO did add a webpage devoted to FAQs about the "Interim Processes for PTO Workload Management."[22]

## C.    Since June 12, 2025, the Director has issued Pre-Merit Discretionary Denials of over a 100 IPR Petitions

In the period from June 12, 2025 to July 28, 2025, the Director has issued pre-merit discretionary denials on more than 110 IPR petitions.[23]

The Director's discussion of the reasons for granting the pre-merit discretionary denials are only one to one-and-a-half pages long in many of these decisions—very few discuss the merits of the IPR petitions themselves. PTAB merit denials of IPR petitions are usually more than twenty pages.[24]

---

[22] https://www.uspto.gov/patents/ptab/faqs/interim-processes-workload-management. I have not had the time to extensively review this new information.

[23] I apologize for the lack of supported detail in this section. If desirable (and the case is allowed to proceed), I will file an appendix with a spreadsheet of all pre-merit discretionary denials, as well as an illustrative sampling of pre-merit discretionary denials.

[24] *See* full PTAB denials of IPR petitions at, *e.g.*, *Apple v. DH Int'l Ltd.*, IPR2025-00173 (PTAB June 25, 2025) (24 pages of analysis, including, *e.g.*, full description of patent and patent claims); *Nuvei Tech. v. Autoscribe Corp.*, IPR2025-00089 (PTAB June 12, 2025) (26 pages of same); *cf. Shenzen Kangvape Tech. Co., Ltd. v. RAI Strategic Hldngs., Inc.*, IPR2024-010406 (PTAB June 25, 2025) (only 9 pages,

In general, when there appear to be factors favoring IPR institution, the Director finds some reason to deny the IPR petitions anyway.[25] In a number of them, the "settled expectations" of the Patent Owner based on how long the patent has been

---

because it was a remand from the Director's revocation of the previous 27 page grant of the IPR petition).

[25] *See, e.g., Amazon v. Virtamove Corp.*, IPR2025-00561, -563, -566 (Dir. July 11, 2025) (although parallel court proceeding is stayed, IPR denied because "the challenged patents have been in force for more than 14 years, creating strong settled expectations, and Petitioner does not provide any persuasive reasoning why an [IPR] is an appropriate use of Board resources"); *Sandisk Tech. v. Polaris PowerLED Techs.*, IPR2025-00515, -516, -517 (Dir. July 16, 2025) (although parallel court proceeding is stayed, IPR denied because "the challenged patents have been in force for approximately nine, twelve, and twelve years, creating strong settled expectations, and Petitioner does not provide any persuasive reasoning why an [IPR] is an appropriate use of Board resources"); *Amgen v. Bristol-Myers Squibb Co.*, IPR2025-00611, -602, -603 (Dir. July 24, 2025) (although there are no parallel proceedings, 2 out of 3 IPRs are denied because "the challenged patents have been in force for seven and six years, respectively, creating strong settled expectations for the Patent Owner, and Petitioner does not provide any persuasive reasoning why an [IPR is an appropriate use of Board resources"); *SAP America v. Valtrus Innovations Ltd.*, IPR2025-00414, -415, -416, -417, -418, -420 (Dir. July 10, 2025) (all IPRs denied: 3 because "the challenged patent … has been dismissed from the parallel court proceeding with prejudice" and they "have been in force for approximately 20 years, creating strong settled expectations, and Petitioner does not provide any persuasive reasoning why an [IPR] is an appropriate use of Board resources"); *Ericsson Inc. v. ProComm Int'l PTE Ltd.*, IPR2024-01452, -1453, -1454 (Dir. June 25, 2025) (all IPRs denied, one because "the challenged patent was dismissed with prejudice from the [parallel] litigation … Additionally, the challenged patent has been in force since as early as 2006 and Petitioner was aware of it as early as 2013—having been brought to Petitioner's attention in a Notice of References Cited during the prosecution of one of its own patents. … Also, as the Patent Owner asserts, it is an inefficient use of Board resources to review a challenged patent that has been dismissed with prejudice from litigation.")

- 13 -

in force is cited as the main reason for denying IPR institution.[26]  In many, the Petitioner is faulted for not providing "persuasive reasoning" why the IPR is an "appropriate use of Board resources."[27]  In some, only one factor or reason is given for the Director's pre-merit discretionary denial.[28]

Even though assignor estoppel does not apply to inter partes review (*see Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 804 (Fed. Cir. 2018)), at least one of the Director's pre-merit discretionary denials cites assignor estoppel as the "equity argument" primarily supporting the pre-merit denial.[29]

---

[26] *See, e.g.*, *Carvana LLC v. I.B.M. Corp.*, IPR2025-00564 (Dir. July 10, 2025) (IPR denied because "the challenged patent has been in force for approximately 15 years, creating strong settled expectations, and Petitioner does not provide any persuasive reasoning why an [IPR] is an appropriate use of Board resources"); *Apotex v. Alkermes Pharma Ireland Ltd.*, IPR2025-00514 (Dir. July 2, 2025) (IPR denied because "the challenged patent has been in force for more than 14 years, creating strong settled expectations, and Petitioner does not provide any persuasive reasoning why an [IPR] is an appropriate use of Board resources;" furthermore, an *ex parte* re-exam with "substantially overlapping art" is also proceeding); *cf. Phison Electronics Corp. v. Vervain LLC*, IPR2025-00213, -214, -215, PGR2025-00010, -11 (Dir. July 10, 2025) (denial for all, but one IPR and both PGRs despite the fact "the challenged patents have not been in force for a significant amount of time (issued in 2021, 2024, and 2024). Ordinarily this might favor referral to the Board; however, Petitioner has not offered a stipulation to address concerns of duplicative efforts … . The absence of such a stipulation tips the balance in  favor of discretionary denial.").

[27] *See, e.g.*, all pre-merit discretionary denials cited herein.

[28] *See, e.g.*, *Lam Research Corp. v. Inpria Corp.*, IPR2025-00256, -309 (Dir. July 2, 2025) (active parallel court proceeding only factor in denying IPR petition).

[29] *See Tessell, Inc. v. Nutanix, Inc.*, IPR2025-00322 (Dir. June 12, 2025); *see also Analog Devices, Inc. v. Number 14 B.V.*, IPR2025-00550, -551 (Dir. July 16, 2025) (IPR denial because "the challenged patents have been in force for more than 13 years, creating strong settled expectations, and Petitioner does not provide any

## III.   MANDAMUS SHOULD BE GRANTED …

### A.   … to clarify what exactly is reviewable in the Director's instructions/guidance regarding IPR institution under 35 U.S.C. §314(a).

The Director's denial of an IPR institution is not reviewable/appealable. 35 U.S.C. §314(d);[30] *see also*, *e.g.*, *Cuozzo*, *Thryv v. Click-to-Call Techs.*, 140 S. Ct. 1367 (2020), *Arthrex*.

The Director's denial of a previously-granted IPR institution is not reviewable/appealable. *See*, *e.g.*, *Apple v. Vidal*, slip op. at p. 6 ("We have also made it clear that any institution decision made by the Board as delegate of the Director is subject to reversal by the Director.").

However, "[t]hat is not to say that mandamus will never lie in response to action by the agency relating to the noninstitution of [IPR]." *In re Power Integrations, Inc.*, 899 F.3d at 1321. Indeed, this court and the Supreme Court have repeatedly ruled that a writ of mandamus may be available under certain

---

persuasive reasoning why an *inter partes* review is an appropriate use of Board resources," and then adds "Petitioner's real party in interest … controlled prosecution of and maintained the involved patents" as an additional reason for denial); *Gator Bio v. Sartorius Bioanalytical Instruments, Inc.*, IPR2025-00633 (Dir. July 24, 2025) (IPR denial because "the challenged patents have been in force for over 11 years, creating strong settled expectations for [*sic*] Patent Owner. In addition, two inventors of the challenged patent are founders of Petitioner, and one of these inventors is named as a real party-in-interest in this proceeding").

[30] As stated above, relevant portions of 35 U.S.C. §§314 and 316 are reproduced in the ADDENDUM.

circumstances in an IPR denial, but neither this court nor the Supreme Court has provided any details concerning those certain circumstances. Arguably, the issue/question may not have been ripe in the past; however, I respectfully submit it is ripe now.

To put it another way, I respectfully urge the court to define what bounds, if any, are on the Director's authority under 35 U.S.C. §316(a)(2) to prescribe regulations for IPR institution under 35 U.S.C. §314(a). In footnote 2 of *Softview*,[31] this court put off the task of defining the PTO's general authority under 35 U.S.C. §316(a)(4)[32] (bolding added):

> To be sure, the PTO's authority under Section 316(a)(4) is not unbounded. … Section 316(a)(4) does not grant the PTO the authority to legislate new patent laws, but rather charges it with prescribing regulations governing IPR proceedings. *See* Oral Arg. 26:00–50 (appellee conceding that the PTO does not have "unfettered" authority under section 316(a)(4)). We do not define the exact limits of this statutory provision today but narrowly determine that it authorized the PTO to promulgate section 42.73(d)(3)(i). The **task of defining the bounds of section 316(a)(4) is for a later date and to be decided on a record with briefing more dedicated to that issue** and in consideration of the Supreme Court's recent ruling in *Loper Bright Enters. v. Raimondo,* Nos. 22-451, 22-1219, (U.S. June 28, 2024).

---

[31] *Softview v. Apple*, __ F.4th __, 2024 WL 3543902, Nos. 2023-1005, 2023-1007 (Fed. Cir. July 26, 2024).

[32] §316(a)(4) is the PTO's authority to prescribe regulations for IPR generally, whereas §316(a)(2) is specifically directed to "setting forth standards for the showing of sufficient grounds to institute a review under section 314(a)."

I respectfully submit the time for defining the bounds of §316(a)(2) in light of §314(d) is now.  This court should grant the writ of *mandamus* so that the parties may prepare and submit "briefing more dedicated to that issue."

**B.    … to re-visit the apparent absolute prohibition of substantive review in *Apple v. Vidal*.**

As discussed above, I believe this court should revise and/or explain its decision in *Apple v. Vidal* to indicate that at least some substantive review of the Director's instructions/guidance for IPR institution under 35 U.S.C. §314(a) is allowed.

I respectfully submit that at least some substantive review must be allowed to give any meaning and support for Justice Breyer's confidence in *Cuozzo* that Justice Alito's feared "shenanigans" will never happen.[33]  Moreover, the Supreme Court cases regarding 35 U.S.C. §314(d)'s ban on appealability only apply to the **specific** IPR institution decision and things "closely related" to that specific decision, **not** to the Director's general instructions/guidance for making IPR decisions agency-wide. *See Cuozzo*, *Thyrv*, *Arthrex*.

In any event, it may be beneficial to allow the parties to brief the issue.

---

[33] *Cuozzo*, slip op. at 11.

**C.    … to review the propriety of the Director's March 26, 2025 "Workload" Memo.**

As discussed above, regardless of whether one uses procedural review or substantive review, the Director's March 26, 2025 "Workload" Memo appears problematic, as do the more than hundred pre-merit discretionary denials the Director has made since its release.

As discussed above, this court has noted the propriety of reviewing the PTO's ***present*** IPR institution instructions under 35 U.S.C. §314(a) when ruling on its ***past*** instructions.  *See Apple v. Vidal*, slip op. at 11 ("It would seem proper, therefore, were it important, to consider the updated instructions rather than the *Fintiv* instructions alone").  In the case cited by this court in support of that proposition,[34] the Supreme Court cites two more cases: *California Bankers Assn. v. Scultz*, 416 U.S. 21, 53 (1974) and *Thorpe v. Housing Authority of Durham*, 393 U.S. 268 (1969).  The common thread among all three cases (and all the ones later citing them) is that, when a court is reviewing any agency's rules/regulations, it is often in the public interest for the court to review the agency's current rules/regulations, even if they are not at issue in the matter before the court.  That is the case here.

Moreover, the PTO is more than a mere agency under the Federal Circuit's purview, the Federal Circuit has been intimately intertwined with the PTO since its

---

[34] *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 661 n.1 (1989).

inception as the designated Circuit Court of Appeals for appealable patent issues. The Federal Circuit should exercise its birthright here and review the Director's March 26, 2025 "Workload" Memo to determine if it is "an action by the [Director] beyond [her] statutory limits."[35]

## IV.    PROPOSED ISSUES TO RESOLVE

### A.    *What exactly* can be reviewed in a *procedural* review of the Director's instructions/guidance regarding IPR institution under 35 U.S.C. §§314(a) and 316(a)(2)?

This question is teed up for the court to answer, and is directly related to the issues posed in co-pending cases of *Apple v. Stewart* and *In re SAP*.  The standard of review is *de novo*.[36]

### B.    Should the court re-visit *Apple v. Vidal*, and find that some *substantive* review of the Director's instructions/guidance regarding IPR institution under 35 U.S.C. §314(a) is possible, notwithstanding 35 U.S.C. §314(d)?

This is the overall purpose of this *amicus* brief.  I strongly urge that the parties be allowed to brief this issue.

---

[35] *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2022).

[36] *EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 859 F.3d 1341, 1345 (Fed. Cir. 2017) ("We review the Board's procedures for compliance with the [APA] de novo, under which we must "hold unlawful and set aside agency action … not in accordance with law [or] … without observance of procedure required by law.") (internal citations omitted).

**C.    Was the Director's March 26, 2025 "Workload" Memo providing instructions/guidance for IPR institution under 35 U.S.C. §314(a) permissible agency action under the APA?**

"Can Congress really have intended to shield such shenanigans from judicial scrutiny?" *Cuozzo*, slip op. at p. 13 (J. Alito's concurrence-in-part, dissent-in-part).

<u>**CONCLUSION**</u>

Through the harm of the IPR denial, Motorola has a colorable claim for relief from the Director's instructions/guidance for IPR denial under 35 U.S.C. §314(a) promulgated under 35 U.S.C. §316(a)(2). The metes and bounds of the PTO's authority under 35 U.S.C. §316(a)(2) to promulgate regulations for IPR institution under 35 U.S.C. §314(a) need to be defined for the patentees, the petitioners, the patent bar, and, most of all, for the PTO itself.

Respectfully submitted,

July 30, 2025

By:    */s/ Teodor Holmberg*

Teodor J. Holmberg
tidge@computer.org
8 Gregory Lane
Florence, MA 01062
(401) 225-4538

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-134

**Short Case Caption:** In re Motorola Solutions, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ___4,998___ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/30/2025          Signature:  /s/ Teodor Holmberg

                          Name:       Teodor Holmberg

## **ADDENDUM**

Pertinent sections of relevant statues, rules, and regulations presented below.

## **Patent Laws**

### *35 U.S.C. 2 – Powers and duties.*
(a) IN GENERAL.—…

(b) SPECIFIC POWERS.—The Office—

   …

   (2) may establish regulations, not inconsistent with law, which—

      (A) shall govern the conduct of proceedings in the Office;

      (B) shall be made in accordance with section 553 of title 5;

      …

   ….

… .


### *35 U.S.C. 6 – Patent Trial and Appeal Board.*
(a) IN GENERAL.—There shall be in the Office a Patent Trial and Appeal Board. The Director, the Deputy Director, the Commissioner for Patents, the Commissioner for Trademarks, and the administrative patent judges shall constitute the Patent Trial and Appeal Board. The administrative patent judges shall be persons of competent legal knowledge and scientific ability who are appointed by the Secretary, in consultation with the Director. Any reference in any Federal law, Executive order, rule, regulation, or delegation of authority, or any document of or pertaining to the Board of Patent Appeals and Interferences is deemed to refer to the Patent Trial and Appeal Board.

(b) DUTIES.—The Patent Trial and Appeal Board shall—

   …

   (4) conduct inter partes reviews and post-grant reviews pursuant to chapters 31 and 32.

(c) 3-MEMBER PANELS.—Each appeal, derivation proceeding, post-grant review, and inter partes review shall be heard by at least 3 members of the Patent Trial and Appeal Board, who shall be designated by the Director. Only the Patent Trial and Appeal Board may grant rehearings.

(d) TREATMENT OF PRIOR APPOINTMENTS.— … .

**35 U.S.C. 314 – Institution of inter partes review.**

(a) THRESHOLD.—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

(b) TIMING.— …

(c) NOTICE.— …

(d) NO APPEAL.—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

**35 U.S.C. 316 – Conduct of inter partes review.**

(a) REGULATIONS.—The Director shall prescribe regulations —

(1) …;

(2) setting forth standards for the showing of sufficient grounds to institute a review under section 314(a);

(3) …;

(4) establishing and governing inter partes review under this chapter and the relationship of such review to other proceeding under this title;

…

(b) CONSIDERATIONS.—In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

…

## **Administrative Procedures Act**

### *5 U.S.C. 551– Definitions*

For purposes of this subchapter—

(1) "agency" means each authority of the Government of the United States, …

…

(4) "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services, or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing;

(5) "rule making" means agency process for formulating, amending, or repealing a rule;

(6) "order" means the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing;

(7) "adjudication" means agency process for the formulation of an order;

…

(12) "agency proceeding" means an agency process as defined by paragraphs (5) (7), and (9) of this section;

(13) "agency action" means the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof;

…

### *5 U.S.C. 701– Application; Definitions*

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review;

(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

…

(2) … "rule," "order," …, and "agency action" have the meanings given them by section 551 of this title.

### 5 U.S.C. 702 – *Right of Review*

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. or purposes of this subchapter. … Nothing herein (1) …; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

### 5 U.S.C. 706 – *Scope of review*

(a) To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to 556 and 557 of this title or otherwise reviewed on the record of the agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

(b) In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

# Code of Federal Regulations (for IPRs)

**37 CFR 42.75 – Director Review**

(a) *Director Review generally.* In a proceeding under this part, the Director may review any decision on institution under 35 U.S.C. 135, 314, or 324, any final decision under 35 U.S.C. 135, 318, or 328, any decision granting rehearing of such a decision, or any other decision concluding a proceeding brought under 35 U.S.C. 135, 311, or 321. In the course of reviewing such a decision, the Director may review any interlocutory decision rendered by the Board in reaching that decision. For purposes of this section, the term "final decision" is defined as a "final decision" under 35 U.S.C. 135 as well as a "final written decision" under 35 U.S.C. 318 or 328.

(b) *Sua sponte Director Review.* The Director, on the Director's own initiative, may initiate sua sponte Director review of a decision as provided in paragraph (a) of this section. Absent exceptional circumstances, any sua sponte Director review will be initiated within 21 days after the expiration of the period for filing a request for rehearing pursuant to §42.71(d).

(c) *Requests for Director Review.* A party to a proceeding under this part may file one request for Director Review of a decision as provided in paragraph (a) of this section, instead of filing a request for rehearing of that decision pursuant to §42.71(d), subject to the limitations herein and any further guidance provided by the Director.

> (1) *Timing.* The request must be filed within the time period set forth in §42.71(d) unless an extension is granted by the Director upon a showing of good cause. No response to a Director Review request is permitted absent Director authorization.

> (2) *Format and Length.* A request for Director Review must comply with the format requirements of §42.6(a). Absent Director authorization, the request must comply with the length limitations for motions to the Board provided in §42.24(a)(1)(v).

> (3) *Content.* Absent Director authorization, a request for Director review may not introduce new evidence.

(d) *Final agency decision.* A decision on institution, a final decision, a decision granting rehearing of such decision on institution or final

decision, or any other decision concluding a proceeding brought under 35 U.S.C. 135, 311, or 321 shall become a final agency decision unless:

(1) A party requests rehearing or Director Review within the time provided by §42.71(d) or an extension of time for a request for Director Review is granted pursuant to paragraph (c)(1) of this section; or

(2) The Director initiates sua sponte review as provided by § 42.75(b). Upon denial of a request for Director Review of a final decision, of a decision granting rehearing of a final decision, or of any other decision concluding a proceeding brought under 35 U.S.C. 135, 311, or 321, the Board's decision becomes the final agency decision.

(e) *Process* —

(1) *Effect on underlying proceeding*. Unless the Director orders otherwise, and except as provided in paragraph (e)(3) of this section, a request for Director Review or the initiation of review on the Director's own initiative does not stay the time for the parties to take action in the underlying proceeding.

(2) *Grant and scope*. If the Director grants Director Review, the Director shall issue an order or decision that will be made part of the public record, subject to the limitations of any protective order entered in the proceeding or any other applicable requirements for confidentiality. If the Director grants review and does not subsequently withdraw the grant, the Director Review will conclude with the issuance of a decision or order that provides the reasons for the Director's disposition of the case.

(3) *Appeal*. A party may appeal a Director Review decision of a final decision under 35 U.S.C. 135, 318, or 328, a decision granting rehearing of a final decision under 35 U.S.C. 135, 318, or 328, or any other appealable decision concluding a proceeding brought under 35 U.S.C. 135, 311, or 321 to the United States Court of Appeals for the Federal Circuit using the same procedures for appealing other decisions under 35 U.S.C. 141(c), 141(d), 319. Director Review decisions on decisions on institution are not appealable. A request for Director Review of a final decision, a decision granting rehearing of a final decision, or any other appealable decision concluding a proceeding brought under 35 U.S.C. 135, 311, or 321, or the initiation of a review on the Director's own initiative of such a decision, will be treated as a

request for rehearing under §90.3(b)(1) of this chapter and will reset the time for appeal until after all issues on Director Review in the proceeding are resolved.

(f) *Delegation.* The Director may delegate their review of a decision provided in paragraph (a) of this section, subject to any conditions provided by the Director.

(g) *Ex parte communications.* All communications from a party to the Office concerning a specific Director Review request or proceeding must copy counsel for all parties. Communications from third parties regarding a specific Director Review request or proceeding, aside from authorized amicus briefing, are not permitted and will not be considered.

## 37 CFR 42.108 – Institution of *inter partes* review

(a) When instituting inter partes review, the Board will authorize the review to proceed on all of the challenged claims and on all grounds of unpatentability for each claim.

(b) At any time prior to a decision on institution of *inter partes* review, the Board may deny all grounds for unpatentability for all of the challenged claims. Denial of all grounds is a Board decision not to institute *inter partes* review.

(c) *Inter partes* review shall not be instituted unless the Board decides that the information presented in the petition demonstrates that there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable. The Board's decision will take into account a patent owner preliminary response where such a response is filed, including any testimonial evidence. A petitioner may seek leave to file a reply to the preliminary response in accordance with §§ 42.23 and 42.24(c). Any such request must make a showing of good cause.