# United States Court of Appeals for the Federal Circuit

---

**In Re MOTOROLA SOLUTIONS, INC.,**

*Petitioner*

---

2025-134

---

On Petition for Writ of Mandamus to the United States Patent and Trademark Office in Nos. IPR2024-01205, IPR2024-01206, IPR2024-01207, IPR2024-01208, IPR2024-01284, IPR2024-01285, IPR2024-01313, and IPR2024-01314.

---

## ON PETITION

---

MATTHEW J. SILVEIRA, Jones Day, San Francisco, CA, for petitioner Motorola Solutions, Inc. Also represented by JOHN R. BOULE, III, Los Angeles, CA; THARAN GREGORY LANIER, Palo Alto, CA; JOHN MARLOTT, Chicago, IL..

TIMOTHY EDWARD GROCHOCINSKI, Nelson Bumgardner Conroy PC, Burr Ridge, IL, for respondent Stellar, LLC. Also represented by CHARLES AUSTIN GINNINGS; TIMOTHY DEVLIN, ROBERT DEAN KIDDIE, JR., JAMES MICHAEL LENNON, NADIIA LOIZIDES, Devlin Law Firm LLC, Wilmington, DE.

FAHD H. PATEL, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for respondent John A. Squires. Also represented by NICHOLAS

THEODORE MATICH, IV, ROBERT J. MCMANUS, PETER JOHN
SAWERT; BRADLEY HINSHELWOOD, LAURA MYRON, Environment & Natural Resources Division, United States Department of Justice, Washington, DC.

Before DYK, LINN, and CUNNINGHAM, *Circuit Judges.*

LINN, *Circuit Judge.*

# ORDER

At the request of Motorola Solutions, Inc., the Patent Trial and Appeal Board instituted *inter partes* review (IPR) of Stellar, LLC's patents. But on review, the then-Acting Director of the United States Patent and Trademark Office (PTO)[1] deinstituted the IPRs, concluding such review would not be an efficient use of resources given the ongoing parallel district court proceedings between the parties involving the patents. Motorola now petitions this court for mandamus relief, arguing that the Acting Director violated certain procedural protections guaranteed by the Administrative Procedure Act (APA) and the Due Process Clause of the Fifth Amendment to the Constitution in doing so. We deny the petition.

## I

### A

In chapter 31 of Title 35 of the U.S. Code, Congress established a process for IPR of an issued patent. Given "the likelihood of parallel pending proceedings in the PTO and in the courts," and inefficiencies that could result from both the PTO and the courts deciding overlapping issues at the same time, *Apple Inc. v. Vidal,* 63 F.4th 1, 8 (Fed. Cir. 2023), Congress imposed certain safeguards; among them, a petition must be filed within one year of service of an

---

[1] John A. Squires was confirmed as PTO Director after these actions and petition were filed.

infringement suit brought by the patent owner or real party in interest, 35 U.S.C. § 315(b). "But Congress generally left the two branches to exercise their available discretion to address such issues." *Apple*, 63 F.4th at 8.

The Director, who is tasked with determining whether to institute IPR, *see* 35 U.S.C. § 314(a),[2] addressed this topic in 2019 and 2020 by designating two Board decisions—*NHK Spring Co. v. Intri-Plex Techs., Inc.*, No. IPR2018-00752, 2018 WL 4373643 (PTAB Sept. 12, 2018), and *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020)—as precedential thereby establishing a multi-factor discretionary standard to be used by the agency for determining whether to deny institution of IPR in situations where there are pending parallel proceedings.

These "*Fintiv* factors" include: (1) "whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted"; (2) "proximity of the court's trial date to the Board's projected statutory deadline for a final written decision"; (3) "investment in the parallel proceeding by the court and the parties"; (4) "overlap between issues raised in the petition and in the parallel proceeding"; (5) "whether the petitioner and the defendant in the

---

2    In the past, the Director has generally delegated the responsibility of deciding whether to institute IPR to the Board. *See* 37 C.F.R. § 42.4; *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1028 (Fed. Cir. 2016). On October 17, 2025, however, the Director announced—without any change to 37 C.F.R. § 42.4—that he, in consultation with at least three Board judges, will determine whether to institute IPR. John A. Squires, Open Letter from America's Innovation Agency and Memorandum (Oct. 17, 2025), https://www.uspto.gov/sites/default/files/documents/open-letter-and-memo_20251017.pdf (last visited Oct. 22, 2025).

parallel proceeding are the same party"; and (6) "other circumstances that impact the Board's exercise of discretion, including the merits." 2020 WL 2126495, at *2.

On June 21, 2022, then-Director, Katherine K. Vidal, issued a memorandum announcing interim guidance to the Board on how to apply the *Fintiv* factors while the agency explored potential rulemaking ("Vidal Memorandum"). Under that guidance, the Board would not "discretionarily deny institution in view of parallel district court litigation where a petition presents" a so-called *Sotera* stipulation: "a stipulation not to pursue in a parallel proceeding the same grounds or any grounds that could have reasonably been raised before the [Board]." Appx100–01. That guidance was to "remain in place until further notice." Appx107.

Then, on February 28, 2025, following a change in Presidential administrations, the Acting Director rescinded the Vidal Memorandum. In his March 24, 2025 guidance to the Board on how to implement the recission, Chief Administrative Patent Judge Boalick explained that the recission to the Vidal Memorandum was made because the agency ultimately decided not to propose a rule. Appx110. He further instructed: (1) that the rescission "applies to any case in which the Board has not issued an institution decision, or where a request for rehearing or Director Review of an institution decision was filed and remains pending"; (2) that the Board not consider a *Sotera* stipulation as "dispositive" but rather as "highly relevant"; and (3) that the Board "consider timely requests for additional briefing on the application of the Interim Procedure's recission on a case-by-case basis." Appx111–12. On March 26, 2025, the Acting Director additionally implemented certain processes related to institution decisions, including instructing the Board to permit parties to address all relevant considerations. Appx114.

B

In August 2023, Stellar filed suit against Motorola in district court alleging infringement of claims of eight patents. While that court case was pending, Motorola filed a first set of petitions asking to institute IPR in July 2024 and a second set of petitions in August 2024. Motorola filed a *Sotera* stipulation stating that should IPR be instituted it would not pursue, in the parallel civil litigation, any ground for unpatentability that it raised or reasonably could have raised in the IPRs. Appx116–18; Appx120–21.

The Board initially instituted IPRs on both sets of petitions, prompting Stellar to seek Director Review. In response to the request for such review of the first set of petitions, Motorola argued that institution was consistent with Board precedent. Appx123. But on March 28, 2025, the Acting Director deinstituted the first set of IPRs based on the *Fintiv* factors, concluding that the "Board did not give enough weight to the investment in the parallel proceedings and gave too much weight to Petitioner's *Sotera* stipulation." Appx17. Motorola then moved for reconsideration, arguing that the Acting Director's actions "amount[ed] to improper rulemaking or a change in policy" and the "retroactive[]" application of the recission violated "the APA and [Motorola's] due-process rights." Appx144.

On May 23, 2025, the Acting Director: (1) denied Motorola's motion for reconsideration on the first set of petitions and (2) granted Director Review on the second set of petitions and deinstituted the IPRs, having found it would be an inefficient use of agency resources given the civil action. She explained that the February 2025 guidance on the recission of the Vidal Memorandum was not retroactively applied because no final determination on institution had yet been made. Appx005. The Acting Director further noted that Motorola was given the opportunity to request additional briefing after the interim guidance was announced but elected not to do so. *Id.*

Motorola now seeks mandamus. Motorola primarily challenges the Acting Director's rescission of the Vidal Memorandum and application of that rescission under APA requirements and guarantees. Motorola also argues that the application of that rescission under the circumstances violates its due process rights. As to the specific relief requested, Motorola asks the court to direct the PTO to vacate the Acting Director's rescission of the Vidal Memorandum and to reinstate the Board's institution of its petitions in accordance with that guidance. Pet. at 41.

## II

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). Accordingly, "three conditions must be satisfied before it may issue." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). The petitioner must show a "clear and indisputable" right to relief. *Id.* at 381 (quoting *Kerr*, 426 U.S. at 403). The petitioner must "lack adequate alternative means to obtain the relief" it seeks. *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989); *Cheney*, 542 U.S. at 380. And "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

Given Congress committed institution decisions to the Director's discretion, *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 366 (2018), and protected that exercise of discretion from judicial review by making such determinations "final and nonappealable," 35 U.S.C. § 314(d), mandamus is ordinarily unavailable for review of institution decisions, *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). That general prohibition includes PTO decisions denying institution on reconsideration, *see, e.g., Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1386 (Fed. Cir. 2016), and decisions denying

institution based on application of the *Fintiv* factors, *see Mylan*, 989 F.3d at 1378–79, 1381. We have noted possible exceptions for "colorable constitutional claims," *id.* at 1382, and certain statutory challenges, *see Apple*, 63 F.4th at 12 n.5. But no such claims have been presented here.

### A

The Due Process Clause provides that no person "shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Constitution does not itself define the property rights that are subject to due process. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). For that, a party must draw upon "existing rules or understandings that stem from an independent source." *Id.* An agency regulation and the like can be a source but a necessary condition is that they provide "a legitimate claim of entitlement to" a benefit; not just "an abstract need" or "unilateral expectation" to it. *Roth*, 408 U.S. at 577; *see also Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009) (distinguishing between entitlements to "nondiscretionary, statutorily mandated benefits" and "discretionary benefit[s]").

Motorola does not claim any rights in institution of IPR of the challenged patents itself, nor could it: "[W]hen a statute leaves a benefit to the discretion of a government official, no protected property interest in that benefit can arise." *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003); *see also United States v. Arthrex, Inc.*, 594 U.S. 1, 8–9 (2021) ("Congress has committed the decision to institute inter partes review to the Director's unreviewable discretion."). Nor, for that matter, does Motorola ask for additional process before deprivation of any purported protected interest. *See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 120 (D.C. Cir. 2020) ("A procedural due process claim requires the plaintiff to identify the process that is due." (cleaned up)).

Instead, Motorola's request for relief is premised on the argument that the Vidal Memorandum created a "constitutionally protected interest" in having its petitions considered without regard to the discretionary *Fintiv* factors. Pet. at 34. That is so, Motorola says, because the Vidal Memorandum imposed "substantive limits" on the PTO's "official discretion" to deny an IPR petition based on the existence of parallel litigation so long as a petitioner provides a *Sotera* stipulation. Reply at 14 (emphasis omitted). But this argument runs into at least two obstacles.

First, our precedent distinguishes between applications for discretionary benefits and those for non-discretionary benefits in which a particular outcome is mandated "upon a showing that [the applicant] meets the eligibility requirements set forth in the governing statutes and regulations." *Cushman*, 576 F.3d at 1298. While we have held the latter can involve a property interest protected by the Due Process Clause, *id.*, the Vidal Memorandum did not limit the PTO's discretion in this way. The Vidal Memorandum did not direct the Board to reach any particular outcome on a petition. It merely directed the Board not to rely on certain criteria to deny review, and even then, only until further notice by the PTO.

Second, Motorola has not shown its identified property right—entitlement to "consideration of its petitions on the merits without risking discretionary denial based on parallel district court proceedings," Pet. at 34—is protected under the Due Process Clause. In *Mylan*, we rejected a similar argument that the Board had violated a petitioner's due process rights by denying IPR based on parallel litigation to which the petitioner was not a party. *Mylan*, 989 F.3d at 1383. We concluded that the petitioner had no constitutionally protected "right for its petition to be considered without reference to" that district court litigation "and no right to an IPR." *Id.* We similarly see no "history or tradition" that supports recognizing for these purposes a constitutionally protected right to have the Board consider

Motorola's petitions without regard to the *Fintiv* factors, even if it stipulates to not raising the challenges in parallel district court proceedings. *Id.* (cleaned up).

Nor do we see any meaningful way to distinguish between that purported right and the desired process requested to protect that right. The Supreme Court has long held that "[p]rocess is not an end in itself" and "expectation of receiving [certain] process is not, without more," an "interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 & n.12 (1983); *cf. Mumford v. Godfried*, 52 F.3d 756, 759 (8th Cir. 1995) (noting a contractual right to have procedures followed "does not create a property interest in the procedures themselves" (emphasis omitted)); *Clemente v. United States*, 766 F.2d 1358, 1364 (9th Cir. 1985) ("A mere command to follow certain procedures, however, does not create an underlying property interest, even when the command is derived from the Constitution."). As in those cases, Motorola here relies on nothing more than its own unilateral expectation based on the prior interim procedural guidance—not any separate property interest—to support its due process claim.

We likewise see no due process violation by the Acting Director applying the recission of the Vidal Memorandum to the petitions. To be sure, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). But even if those principles are applicable to this context, Motorola did not experience anything close to the kind of unfair surprise that might raise a due process violation. Motorola was aware of the Board precedent on discretionary denial when it filed its petitions and on notice that the interim guidance about how to apply that precedent in cases where a party provides a *Sotera* stipulation could be modified at any time. Even if Motorola relied on the Vidal Memorandum when it undertook the expense of filing the petitions, Pet. at 2, 35, that "reliance alone is

insufficient to establish a constitutional violation." *United States v. Carlton*, 512 U.S. 26, 33 (1994). Moreover, recission of the interim guidance did not affect Motorola's ability to properly raise its patentability defenses elsewhere as the *Sotera* stipulation only conditioned Motorola's ability to raise its patentability challenges in an IPR.

B

Motorola raises two APA arguments. It first contends that the rescission of the Vidal Memorandum effected a change in law or policy that required notice-and-comment rulemaking. But on that issue, there appears to be no dispute that an APA action in federal district court affords Motorola an available avenue to raise this same challenge. *See* Acting Director's Response at 19–20; Reply at 20; *see also Apple*, 63 F.4th at 14. Motorola nevertheless urges that we take up the issue on mandamus as a means to "vacate the Rescission and the Acting Director's vacatur of the Board decisions instituting IPRs on Motorola's petitions based on the Rescission," because "an independent APA lawsuit untethered from the institution decision would not allow Motorola to obtain meaningful relief." Pet. at 19–21, 25. But that request is nothing but an attempted end run around § 314(d)'s bar on review.

Moreover, *Mylan* forecloses relief on this challenge. Much like Motorola here, the petitioner in that case sought our review of the Board's denial of institution based on the *Fintiv* factors, arguing that the PTO exceeded its authority by failing to implement that standard through notice and comment rulemaking. "Given the limits on our reviewability," we dismissed the appeal and denied mandamus relief, explaining in this respect, that the petitioner's "*ultra vires* argument cannot be a basis for granting the petition for mandamus." *Mylan*, 989 F.3d at 1382–83. We see no basis to reach a different outcome as to Motorola's challenge to the denial of institution decisions at issue here based on the process by which the Acting Director's recission was

issued. *Apple*, upon which Motorola relies in support of review here, is not to the contrary. There, we held that § 314(d) did not preclude a challenge to whether the PTO has complied with APA's notice-and-comment rulemaking requirements "apart from the reviewability of" a specific institution decision. *Apple*, 63 F.4th at 14. In that critical respect, Motorola's situation falls outside the scope of *Apple*.

Motorola next argues that the Acting Director acted arbitrarily and capriciously in applying the recission by, among other things, failing to "offer any reasons for the change" and failing to give proper "consideration of the reliance interests engendered by the June 2022 Memo." Pet. at 30–32 (emphasis omitted). But these arguments are the kinds of arguments that we have said are not reviewable in light of § 314(d) because, at bottom, they challenge "the Director's exercise of [] discretion to deny institution" (the weighing of the relevant factors), *Mylan*, 989 F.3d at 1382, and thus do not fall within the limited category of non-constitutional challenges to the applicable factors appropriate to review on limited mandamus relief.

Accordingly,

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

November 6, 2025
Date

Jarrett B. Perlow
Clerk of Court